UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 0 7 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| Maria Elena Hernandez, | § | |
| Miguel Angel Hernandez, | § | |
| Heather Butler, individually and | § | |
| on behalf of all others similarly | § | |
| situated, | § | |
| Plaintiffs, | § | |
| v. | § | Civil No. B-00-082 |
| | § | |
| CIBA-GEIGY Corp. USA, | § | |
| Novartis Pharmaceuticals Corp. | § | |
| Children and Adults with | § | |
| Attention-Deficit/Hyperactivity | § | |
| Disorder (CHADD), | § | |
| American Psychiatric Association, | § | |
| Defendants. | § | |

**DEFENDANT NOVARTIS PHARMACEUTICALS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

The plaintiffs named above have commenced this action against defendants Ciba-Geigy Corp. USA[1] and Novartis Pharmaceuticals Corp. (collectively "Novartis") and two non-profit corporations, alleging fraud, civil conspiracy, and violation of the New Jersey Consumer Fraud Act (NJCFA). Plaintiffs base their claims on the defendants' alleged conduct concerning the drug Ritalin® and its use in treating the medical conditions Attention Deficit Disorder (ADD) and Attention Deficit Hyperactivity Disorder (ADHD).

---

[1]    CIBA-GEIGY Corp. USA no longer exists. Novartis Pharmaceuticals is the successor to CIBA-GEIGY Corp. USA for all purposes relevant to this lawsuit.

Plaintiffs purport to be acting on behalf of a class of all persons who purchased Ritalin® during the four years preceding the filing of the complaint. Complaint ¶ 44.[2]

At their core, all of plaintiffs' claims rest on allegations of fraud. These allegations of fraud, however, plainly lack the particularity required by Fed. R. Civ. P. 9(b). Most prominently, plaintiffs' complaint does not even make clear whether plaintiffs allege that ADD and ADHD do or do not exist as medical conditions, a fact that is at the very core of their claims. Because plaintiffs have not pled their fraud claims with the required particularity, Novartis now moves this Court to dismiss plaintiffs' complaint.

## ARGUMENT

## THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS BECAUSE PLAINTIFFS HAVE NOT PLED THEIR CLAIMS WITH THE SPECIFICITY REQUIRED BY RULE 9(b).

This Court should dismiss plaintiffs' claims for fraud, conspiracy, and violation of the NJCFA on the ground that plaintiffs have failed to allege the circumstances underlying these fraud-based claims with the particularity required by Rule 9(b). In addition to plaintiffs' refusal to take a position on the existence of ADD and ADHD, plaintiffs have failed to allege the substance of the misrepresentations they attribute to defendants, and to allege the time, place, manner or communicator of these claimed statements. Any one of these deficiencies would justify judicial intervention; together, they demonstrate that plaintiffs' claims are fatally vague and compel dismissal.

---

[2] Plaintiffs' initial pleading was captioned as a "Petition" in state court before removal to this Court. For convenience of reference, this memorandum will refer to that pleading as a "complaint," consistent with the federal rules.

**A.     Rule 9 Requires Plaintiffs to Plead the Circumstances of Their Claims with Particularity.**

Plaintiffs' fraud claims in the present case are governed by Fed. R. Civ. P. 9(b). Although state law[3] will govern plaintiffs' burden of proving at least portions of their claims at trial, Rule 9(b) governs fraud pleadings in federal court. E.g., Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985). Rule 9(b) requires in relevant part:

> **Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Courts have identified three policies underlying Rule 9(b):

> The purposes advanced by [Rule 9(b)'s] requirement [of particularity] are to insure that allegations are specific enough to inform defendant and enable him to prepare an effective response and defense, to eliminate complaints filed in order to find unknown wrongs through discovery, and to protect defendants from unfounded charges that involve moral turpitude.

Sweeney Company of Maryland v. Engineers-Constructors, Inc., 109 F.R.D. 358, 360 (E.D. Va.); see also In re Comm. Oil/Tesoro Petroleum Corp. Securities Litigation, 467 F. Supp. 227, 250 (W.D. Tex. 1979). "A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek to redress a wrong, not to find one." El Conejo Bus Lines, Inc. v. Metropolitan Life Ins. Co., 1999 WL 354237, *2 (N.D. Tex.)(quoting Segal v. Gordon, 467 F.2d 602, 607-08 (2d Cir. 1972)).

In pursuit of these goals, the rule "focuses on identifying the representation of fact itself." Budgetel Inns, Inc. v. Micros Systems, Inc., 8 F. Supp. 2d 1137, 1150 (E.D.

---

[3]   Which state's law will apply is unknown; the laws of all 50 states are candidates.

3

Wisc. 1998). The rule requires the plaintiff "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements are fraudulent." Williams v. WMX Tech., Inc., 112 F.3d 175, 177 (5th Cir.), cert. denied, 522 U.S. 966 (1997). "At a minimum, Rule 9(b) requires that a plaintiff set forth must plead the 'who, what, when, where, and how' of the alleged fraud." United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997) (quoting Williams); see also Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1068 (5th Cir. 1994).

Rule 9(b)'s requirements apply to plaintiffs' fraud-based conspiracy and NJCFA claims as well as to the count formally labeled as "Fraud." See, e.g., United States ex rel. Johnson v. Shell Oil Co., 183 F.R.D. 204, 208 (E.D. Tex. 1998)(applying Rule 9(b) requirements to conspiracy claim under False Claims Act); Huang v. Shiu, 124 F.R.D. 175, 176 (N.D. Ill. 1988)(applying Rule 9(b) requirements to statutory claim under RICO).

In the present case, Plaintiffs' complaint fails to adequately allege the "who, what, when and where" with respect to any of their three counts. In addition, plaintiffs here have omitted a crucial fifth "W": "whether" they allege that ADD and ADHD do not exist.

**B.    Plaintiffs' Complaint Fails to Make Clear and Consistent Factual Allegations on the Crucial Issues of the Existence of ADD and ADHD and the Efficacy of Ritalin®**

At the most fundamental level, plaintiffs' complaint fails to take a clear or consistent position on the factual issue that necessarily lies at the core of their case:

4

Whether the mental disorders ADD and ADHD actually exist. At some points in their complaint, plaintiffs appear to allege that Novartis and the APA worked together to create phantom diagnoses and that ADD and ADHD are completely fictional. For example, plaintiffs allege:

> 11. Ciba/Novartis, in combination with the defendant doctors[4] and the American Psychiatric Association (APA), planned, conspired, and colluded to create, develop, promote, and confirm the diagnoses of [ADD and ADHD] in a highly successful effort to increase the market for its product Ritalin. Due to the concerted efforts of these parties, [ADD] was first listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM) in 1980. The DSM recognized ADHD as a "diagnosis" in 1987.

See also ¶ 13 (alleging Novartis's "actions and involvement with the creation of the ADD and ADHD diagnoses"); ¶ 17-18 (alleging that Novartis's contributions to and relationship with the APA caused the APA "to make every effort possible to support and confirm a new medical 'diagnosis'"). Plaintiffs' complaint also repeatedly inserts quotation marks around the words "diagnosis" and "disease," clearly implying that plaintiffs view ADD and ADHD as diseases in name only. E.g., ¶¶ 11, 12, 13(1), 17, 18, 19, 22, 29(1), 31. The complaint also hints (but never actually alleges) that Ritalin® is not effective in treating ADD and ADHD. E.g., ¶ 16 (claiming Novartis failed to advise "that Ritalin usage would not improve academic performance and/or have any long term effect on the symptoms associated with ADD and ADHD"); ¶ 49 (seeking remedy "enjoining defendants from failing to provide all known information concerning the lack of long-term efficacy of Ritalin"). This allegation is also implicit in plaintiffs' requested remedy; it would make no sense to seek "[r]efund of all monies paid to purchase Ritalin

---

[4] This reference is a mystery. No doctors are named as defendants in this case.

5

within the four years preceding the filing of this action," ¶ 46, if some of those monies had actually paid for an effective treatment for an actual mental disorder.

In contrast, other passages in plaintiffs' complaint appear to acknowledge both that ADD and ADHD exist and that Ritalin® is an appropriate medication for the disorders, but suggest that the conditions have been overdiagnosed and/or that Ritalin® has been overprescribed. See, e.g., ¶ 35 (claiming defendants suppressed their knowledge of "the lack of need for [Ritalin®'s] use in many cases" (emphasis added)); ¶ 38 (asserting as a common issue of fact "the lack of need for [Ritalin®'s] prescription in most cases" (emphasis added)). These two sets of allegations are irreconcilably inconsistent, and their contradictory implications violate both the letter and the spirit of Rule 9(b). If plaintiffs truly contend that ADD and ADHD do not exist and that every tablet of Ritalin® made in the 50-year history of the pharmaceutical was useless and unsafe, they must say so. Defendants will then be able to prepare the appropriate Daubert and other motions to attack this remarkable proposition. Conversely, if plaintiffs concede that ADD and ADHD exist but claim that the conditions are overdiagnosed, plaintiffs must state *that* allegation (although such a position would fatally undercut the premise of plaintiffs' class allegations, i.e., that all purchasers of Ritalin® were defrauded, and would raise obvious defenses under the learned intermediary doctrine). Instead of taking either position, however, plaintiffs have elected (for whatever reason) to straddle the fence.[5] Rule 9(b) does not permit such evasiveness in fraud claims, and this Court should reject plaintiffs' chameleon-like pleading and dismiss the action.

---

[5] Plaintiffs cannot justify their fence-straddling under the alternative pleading allowed by Rule 8(e)(2). Although this Rule permits fraud claims, like other claims, to be pled in the alternative, see, e.g., Hirschfield v. Briskin, 447 F.2d 694, 697 (7th Cir. 1971), "Rule 8(e)(2) creates no exception to the principle that a charge of fraud must be clear and specific."

6

## C. Plaintiffs' Complaint Fails to Allege with Particularity the Substance of Defendants' Supposed Misrepresentations

Not only do plaintiffs fail to take a position on the existence of ADD and ADHD, their complaint never identifies any misrepresentations that the defendants have supposedly made about the two disorders. Although their pleading is peppered with references to misrepresentations and concealment, plaintiffs never actually allege that any defendant made any specific statement about ADD or ADHD or the treatment of those conditions with Ritalin®.[6]

Instead, the complaint uses vague and conclusory language to suggest that misrepresentations have occurred without ever identifying those misrepresentations' supposed substance. E.g., ¶ 14 ("Defendants willfully failed to address or provide adequate information"); ¶ 16 "Ciba-Geigy/Novartis continuously misrepresented . . . the efficacy of the drug Ritalin"); ¶ 29(3) & (5) ("Distributing misleading sales and

---

Merchant v. Davies, 244 F.2d 347, 348 (D.C. Cir. 1957). Plaintiffs' complaint does not plead (and does not purport to plead) the existence or nonexistence of ADD and ADHD in the alternative. On the contrary, the whole problem with the complaint is that, with respect to this crucial fact, plaintiffs have not "clearly and specifically" pled anything at all. Plaintiffs have merely alleged vague facts with inconsistent and contradictory implications, inconsistencies that justify dismissal. See, e.g., CEO Marketing Promotions Co. v. Heartland Promotions, Inc., 739 F. Supp. 1150, 1152 (N.D. Ill. 1990)(dismissing count containing internally inconsistent factual allegations because plaintiffs did not plead alternative theories of recovery).

[6] Plaintiffs' only attribution of any specific language to any defendant appears in paragraph 10, in which plaintiffs allege:
> [Ritalin®] was promoted, beginning in the 1960's, by Ciba as an antidepressant "which brightens moods and improves performance." Defendant also claimed effectiveness for depression, chronic fatigue and psychoneurosis.

These fragments plainly are not specific allegations of fraudulent misrepresentations. Even if they were, however, this paragraph provides no support for plaintiffs' claims here, which involve ADD and ADHD and which arise from the time period from 1996 to 2000.

7

promotional literature," "Misrepresenting . . . the efficacy of the drug Ritalin"). Perhaps the best example of this is plaintiffs' entire fraud count (¶¶ 23-27), which merely parrots of the elements of fraud and contains virtually no substance whatsoever. Although plaintiffs are relentless in the rote repetition of their accusations, such repetition does not equate with substance. As one court noted:

> [M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.

Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985)

Without knowing what representations it is claimed to have made, Novartis cannot prepare to defend this case. Novartis cannot ascertain whether it actually made the representation in question, cannot evaluate whether the representation was true, and cannot determine the context of the representation or the reliance of plaintiffs on it. To comply with Rule 9(b), a complaint must allege "what misrepresentations (or omissions) of material fact [defendants] made to the plaintiffs that they reasonably relied upon to their detriment." Bender v. Southland Corporation, 749 F.2d 1205, 1216 (6th Cir. 1984). Plaintiffs here have failed to identify with particularity the supposed misrepresentations or omissions on which all their claims rest, and the Court should dismiss their complaint.

**D.  Plaintiffs' Complaint Fails to Allege with Particularity the Time and Location of and the Participants in Defendants' Supposed Misrepresentations**

In addition to the substance of the misrepresentation, Rule 9(b) requires that the complaint set forth the time and place of, and the identities of the parties participating in,

8

the fraud. E.g., <u>United States ex rel Roby v. Boeing Company</u>, 184 F.R.D. 110-111 (S.D. Ohio 1998). The identity of the parties is particularly important. As one court noted:

> The identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants are "lumped together" and in which no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given, nor the situs and circumstances of the conversation, nor . . . the date of the utterance.

<u>McKee v. Pope Ballard Shepard & Fowle, Ltd.</u>, 604 F. Supp. 927, 931 (N.D. Ill. 1985).

Here, plaintiffs' complaint fails to identify any of the people that supposedly made the representations at issue. The complaint does not name a single officer, agent or representative of any of the defendants anywhere in the pleading. Frequently, the complaint does not even attribute representations to a particular corporate defendant, but simply to "Defendants" as a group. E.g., ¶¶ 14, 15, 24, 25, 26, 29, 30, 35. This vague approach to identifying culpable parties does not comply with Rule 9(b). <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

Plaintiffs' complaint is also silent on when, where, and in what manner defendants' claimed misrepresentations took place. Although the complaint sometimes alludes to ranges of years in reciting plaintiffs' version of the history of Ritalin® (notably in ¶¶ 10, 11, and 20), it never suggests *when* the alleged misrepresentations took place with any particularity whatever. E.g., ¶ 24 ("For many years, Defendants have made fraudulent misrepresentations..."). The complaint likewise leaves the method(s) of the supposed misrepresentations unacceptably obscure. Most paragraphs allege only "statements" or "misrepresentations," without suggesting whether the statements were

9

oral, broadcast, written in correspondence, product literature, advertisements, or scholarly journals, or communicated by some other means. Even where the complaint does allude to a medium, as it does to "misleading sales and promotional literature" in ¶¶ 13(4), 14, and 29(3), it gives no further description and identifies no specific documents.

Collectively, these omissions prove fatal to plaintiffs' complaint. As the federal district court for the Northern District of Illinois noted in dismissing a fraud claim for failure to comply with Rule 9(b):

> Suffice it to say that the complaint does not distinguish the activities of the individual defendants, identify the dates or places of the alleged misrepresentations, or identify the documents or statements which contained the alleged misrepresentations.

Huang v. Shiu, 124 F.R.D. 175, 177 (N.D. Ill. 1988). This Court should follow the Huang court's lead and dismiss plaintiffs' complaint here.

### E. Dismissal of Plaintiffs' Complaint Would Serve All of the Underlying Purposes of Rule 9(b)

The Court's dismissal of plaintiffs' complaint here will clearly further the three goals of Rule 9(b). See Sweeney Company of Maryland v. Engineers-Constructors, Inc., 109 F.R.D. 358, 360 (E.D. Va.). Dismissal will eliminate a set of claims so vague and inconsistent that Novartis and the other defendants cannot reasonably be expected to defend against them. The dismissal will prevent plaintiffs' discovery fishing expedition, a project that plaintiffs have already commenced with the service of extensive discovery requests with their summons and complaint. See Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 ("a plaintiff pleading fraud must set forth 'the who, what, when, and where...before access to the discovery process is granted,'" quoting Williams v. WMX Tech., Inc., 112 F.3d 175, 178 (5th Cir.), cert. denied, 522 U.S. 966 (1997)). Finally, dismissal will

protect, from unfounded allegations of moral turpitude and corruption, two respected nonprofit organizations working for the public good and a drug company that produces a drug that each year helps, by plaintiffs' own count, millions of children with ADD and ADHD.

Rule 9(b) is "designed to prohibit a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Plaintiffs' vague, inconsistent, and conclusory allegations in no way justify imposing such costs here, and this Court should dismiss plaintiffs' complaint.

## CONCLUSION

For the reasons discussed above, Novartis urges this Court to grant its motion and to dismiss plaintiffs' complaint for failure to comply with the requirements of Rule 9(b). In the alternative, Novartis urges the Court to require plaintiffs to remedy the deficiencies in their complaint noted above and to serve on the defendants and file with the Court an amended complaint setting forth plaintiffs' fraud claims and fraud-based conspiracy and New Jersey Consumer Fraud Act claims with the particularity required by the rule.

Dated July 7, 2000

Respectfully submitted,

*[signature]*

Eduardo Roberto Rodriguez
State Bar No. 17144000
Federal Admissions No. 1944
attorney-in-charge
Mitchell C. Chaney
State Bar No. 04107500
Federal Admissions No. 1918
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170


James A. O'Neal
Minnesota Bar No. 8248X
Joseph M. Price
Minnesota Bar No. 88201
Bruce Jones
Minnesota Bar No. 179553
Faegre & Benson LLP
2200 Norwest Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
(612) 336-3000
Fax (612) 336-3026

Earl B. Austin
State Bar No. 1437300
Baker Botts LLP
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6542
Fax (214) 953-6503

**Attorneys for Defendants Ciba-Geigy Corp. USA and Novartis Pharmaceuticals Corp**.