United States District Court
Southern District of Texas
FILED

SEP 5 2000

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

Maria Elena Hernandez,
Miguel Angel Hernandez,
Heather Butler, individually and
on behalf of all others similarly
situated,

                Plaintiffs,

v.

CIBA-GEIGY Corp. USA,
Novartis Pharmaceuticals Corp.
Children and Adults with
Attention-Deficit/Hyperactivity
Disorder (CHADD),
American Psychiatric Association,

                Defendants.

Case No. B-00-082

## NOVARTIS'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

This Court should dismiss plaintiffs' claims on the ground that plaintiffs have failed to plead their claims with the particularity required by Rule 9(b). Like plaintiffs' complaint itself, plaintiffs' response to Novartis's motion to dismiss provides virtually no specific information concerning precisely what plaintiffs claim defendants did wrong.

## DISCUSSION

**A.    Plaintiffs Must Plead the Circumstances of Their Claims with Particularity.**

Although plaintiffs concede that they must plead their fraud count with particularity, they argue that their conspiracy and New Jersey Consumer Fraud Act claims do not assert fraud, and therefore are not subject to Rule 9(b)'s particularity requirement. Even a superficial review of those two claims, however, demonstrates that both the language and the

substance of both those counts unmistakably allege fraud. These counts are subject to Rule 9(b), and plaintiffs have failed to meet that rule's requirement.

### 1. Plaintiffs Must Plead Their Conspiracy Claim with Particularity

Plaintiffs' argument that their conspiracy claim does not allege fraud simply cannot be sustained. Civil conspiracy does not exist in the air; it requires underlying wrongful conduct. As one court put it:

> [C]ivil conspiracy is not actionable in and of itself. ... Rather, its purpose is to serve as a device through which vicarious liability for the underlying wrong may be imposed on all who are a party to it, where the requisite agreement exists between them.

<u>Riddell v. Riddell Washington Corp.</u>, 866 F.2d 1480, 1493 (D.C. Cir. 1989) (citation omitted). Here, plaintiffs unquestionably claim that defendants conspired to commit underlying acts of fraud. The conspiracy count explicitly incorporates all the allegations of the fraud count. See Complaint ¶ 28. The conspiracy count itself is also rife with its own allegations of fraud, including accusations that defendants distributed "misleading" information, ¶29(3), "[d]eliberately neglect[ed]" to provide necessary information, ¶ 29(4), and "misrepresent[ed]" the efficacy of Ritalin®, ¶ 29(5), all allegedly to promote the use of Ritalin®. ¶ 31. One must struggle to imagine a more straightforward allegation of fraud.

Notwithstanding this language, plaintiffs' present memorandum tries to recharacterize their conspiracy claim, seeking somehow to divorce it from fraud. In fact, plaintiffs' efforts demonstrate just how dependent on fraud their conspiracy claim is. Plaintiffs' vague assertion that Novartis and the APA engaged in "a self-serving course of conduct with bad results and intended damages," Pl. Memo at 3, does not state a basis for recovery under any cognizable legal theory. Unless plaintiffs claim that Novartis and the APA misrepresented or

2

concealed information in their "creation" of the ADD and ADHD diagnosis, plaintiffs can allege no underlying tort, and thus have no legal ground on which to assert that Novartis and the APA "colluded and conspired" in that creation.

Likewise, plaintiffs' assertion that Novartis "conspired" by engaging in "illegal conduct" by purportedly promoting and advertising of Ritalin® through CHADD, Pl. memo at 3, states no claim by itself. Unless plaintiffs maintain that the alleged promotion was deceptive or fraudulent in some way, these plaintiffs cannot claim damages and have no cause of action. In short, unless it rests on an underlying claim of fraud, plaintiffs' conspiracy count has no substance and does not state a cause of action. Whether they like it or not, plaintiffs' conspiracy claim rests on fraud, and is subject to Rule 9(b).

Moreover, contrary to plaintiffs' argument, plaintiffs must plead the conspiracy claim with particularity as well as the underlying fraud claims. The very cases on which plaintiffs themselves rely require particular pleading of this kind of conspiracy claim. As the Third Circuit noted in Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989), a case on which plaintiffs rely:

> [T]he plaintiffs must plead with particularity the "circumstances" of the alleged wrongdoing in order to place the defendants on notice of the precise misconduct with which they are charged. Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.

Id. at 365 (quoting Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1401 (D. Del. 1984) (citation omitted), aff'd, 769 F.2d 152 (3d Cir. 1985); see also Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 n.4 (2d Cir. 1990) (also cited by plaintiffs, affirming district court's dismissal because plaintiff did not "plead a RICO conspiracy with sufficient particularity").

3

In the present case, plaintiffs have failed to plead either the circumstances of the underlying fraud or the circumstances of the conspiracy itself. Under Rule 9(b), this Court should dismiss plaintiffs' conspiracy claim. See Emcore Corp. v. Price Waterhouse Coopers LLP, 102 F. Supp. 2d 237, 264 (D.N.J. 2000) (cited by plaintiffs, holding that plaintiffs alleging RICO conspiracy must set forth allegations that identify, inter alia, the purported period and object of the conspiracy, certain acts of the conspirators taken to achieve that purpose, and an agreement to commit those acts).

2. **Plaintiffs Must Plead Their New Jersey Consumer Fraud Act Claim with Particularity**

Amazingly, plaintiffs try to argue that their New Jersey Consumer Fraud Act[1] claim does not in fact assert a claim of fraud. Again, however, plaintiffs' own words in pleading this count fatally undercuts their argument. Under this count, plaintiffs claim that defendants "suppressed and concealed" knowledge concerning dangers and efficacy of Ritalin®; intended plaintiffs to "rely on [defendants'] fraudulent misrepresentations;" and continued to sell Ritalin® while plaintiffs relied on these "omissions and misrepresentations." Complaint

---

[1] Although the choice-of-law issue is not determinative of the present motion (which is governed by federal procedural law), Novartis strenuously disputes plaintiffs' assertion that New Jersey law or the New Jersey Consumer Fraud Act applies (or can constitutionally be applied) to the claims of either the named or the putative class members, other than perhaps those putative class members who actually live in New Jersey. Plaintiffs' Memorandum simply misstates Texas choice-of-law rules. According to plaintiffs' own authority, Texas law holds that "the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue," Mitchell v. Loan Star Ammunition, Inc., 913 F.2d 242, 249 (5th Cir. 1990) (quoting Duncan v. Cessna Air Craft Co., 665 S.W.2d 414, 421 (Tex. 1984)), and not, as plaintiffs assert in their footnote 2, "the law of the state of the allegedly tortious conduct."

4

¶ 35. Again, as with conspiracy, Novartis is hard-pressed to imagine language that more plainly asserts fraud.[2]

Notwithstanding the language of their own complaint, plaintiffs seek to evade Rule 9(b) by asserting that they are not claiming "deception and fraud" under the New Jersey statute, and that their claim falls instead under the statute's prohibition on "the knowing concealment, suppression, or omission of any material fact." Pl. memo at 2-3 (citing N.J.S.A. § 56:8-13-301; correct cite is §56:8-2). Although Novartis appreciates knowing that plaintiffs do not claim (notwithstanding the language of ¶ 35) that any of the defendants made any affirmative misrepresentations under the New Jersey Act, that concession hardly concludes the analysis or excuses plaintiffs from compliance with Rule 9(b).

Rule 9(b)'s particular pleading requirement applies to claims of fraud by omission as well as fraud by misrepresentation. Courts describing Rule 9(b)'s requirement have unambiguously included fraudulent omissions within the rule:

> Rule 9(b) requires that allegations of fraud be pleaded with particularity. Thus we have explained that when a complaint charges fraud, it must (1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.

Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted).

As a consequence, courts have repeatedly dismissed complaints that fail to plead fraud by omission with particularity. See, e.g., Bowman v. Hartig, 334 F. Supp. 1323, 1327

---

[2] Under plaintiffs' own analysis, the very name of the New Jersey Consumer Fraud Act demonstrates that the Act's whole purpose is to address fraud. Just as plaintiffs note that claims under the False Claims Act "involve, by definition, false statements," Pl. memo at 3, so do claims brought under the New Jersey Consumer Fraud Act involve, by definition, claims of fraud. Such a conclusion is compelled, under plaintiffs' own analysis, by "[t]he very name of this statute." Id.

5

(S.D.N.Y. 1971) (dismissing claim of non-disclosure of a material self-interest, "tantamount to fraud," for noncompliance with Rule 9(b)); Leeming v. Dean Witter Reynolds, Inc., 676 F. Supp. 541, 546 (S.D.N.Y. 1988) (dismissing claim based on defendants' alleged concealment of third party's fraud for noncompliance with Rule 9(b)); Peoria Union Stock Yards Co. v. Penn Mutual Life Ins. Co., 518 F. Supp. 1302, 1309 (C.D. Ill 1981); see also Russell-Stanley Corp. v. Plant Industries, Inc., 250 N.J. Super. 478, 595 A.2d 534, 549 n.15 (N.J. 1991) (finding analogous New Jersey Rule 4:5-8, requiring pleading with particularity, applicable to allegation of "passive misrepresentation").

As a quintessential fraud claim, plaintiffs' New Jersey Consumer Fraud Act claim must be pled with the particularity required by Rule 9(b). Plaintiffs have failed to do so, and this Court should dismiss plaintiffs' New Jersey Consumer Fraud Act claim.

B.  **Plaintiffs' Complaint Fails to Allege with Particularity the Substance, Time and Location of, and the Participants in, Defendants' Supposed Misrepresentations**

Plaintiffs' defense of the sufficiency of their fraud allegations consists primarily of a series of general descriptions of factors that may affect the level of particularity required of a fraud pleading in a specific case, and pays little attention to actually applying those factors to this case. Plaintiffs do not discuss or try to defend the allegations actually contained in their complaint. In fact, plaintiffs present their entire defense of their fraud pleading, Pl. memo at 7-9, without once quoting from or citing to their own complaint.

To address first the factors supposedly affecting the level of required particularity, plaintiffs correctly note that the rules permit them to plead fraud in the alternative. The option of pleading in the alternative, however, does not provide plaintiffs with an excuse for

their complete failure to tell defendants what defendants purportedly did wrong. Despite plaintiffs' lengthy discussion of alternative pleading, Pl. memo at 5-7, they never actually allege that their complaint in point of fact pleads in the alternative, and never describe the substance of any possible alternative theories (much less describe them with the required particularity). Do plaintiffs claim that ADD and ADHD do not exist, and claim in the alternative that they do exist but are overdiagnosed? Neither plaintiffs' complaint nor their memorandum ever says. Rule 9(b) requires a plaintiff to plead with particularity the circumstances constituting an alternative theory of fraud, just like any other theory of fraud. Plaintiffs here have failed to do so. They have instead pled an internally inconsistent amalgam of vague allegations, leaving the Court and the defendants to guess at what plaintiffs claims, alternative or not, really are.

Plaintiffs also argue that several case-specific variables, including duration of conduct and the relationship of the parties, may affect the amount of detail and number of specific circumstances that a fraud claimant must allege. Although the circumstances of a given fraud claim may affect the particularity required in pleading that claim, nothing in any of the cases or authorities plaintiffs cite suggests that a plaintiff may completely ignore Rule 9(b)'s requirement of particular pleading, as plaintiffs have done here.

Plaintiffs have failed to allege with particularity the subject matter, the content, the method, the time, or the location of, or the participants in, <u>any</u> of the claimed misrepresentations or omissions on which their claims rest. This is not a situation where third parties have been defrauded; plaintiffs themselves presumably received the offending communications and were themselves misled. Plaintiffs should certainly be able to allege at least the particular circumstances of their own experiences. The complaint's complete lack

7

of particularity fully justifies dismissal, notwithstanding the purported scope and duration of defendants' alleged conduct.  See, e.g., Paugh v. R. J. Reynolds Tobacco Co., 834 F. Supp. 228, 229, 232 (N.D. Ohio) (dismissing fraud claim in tobacco case because complaint "does not allege any specific instance of fraud by setting forth the time, place and contents of the misrepresentation," notwithstanding that the conduct at issue took place over 50 years).

Not surprisingly, plaintiffs' discussion of their actual allegations is virtually nonexistent.  Plaintiffs claim that they have "pled the nature of the communication they attack," Pl. memo at 8, but they never describe the nature of the communication and never direct the Court to any passage in their complaint where such a description may be found.

Likewise, plaintiffs' memorandum smugly asserts, "Defendant certainly knows what it is being sued for," Pl. memo at 9, without actually describing the specific grounds for plaintiffs' suit.  As a matter of fact, Novartis does not know what it is being sued for.  That uncertainty is what prompted this motion.  The company and its attorneys have been over plaintiffs' complaint innumerable times and cannot get a clear idea of what plaintiffs believe Novartis has done wrong and in what way plaintiffs claim that conduct has affected plaintiffs or the putative class members.  The company only knows that it has been accused of fraud and conspiracy, and that the vagueness of those charges has left the company with little way to fight those accusations.  This is just the circumstance that Rule 9(b) was intended to prevent.  This Court should dismiss plaintiffs' claims.

C.  **Plaintiffs' Claims are Frivolous.**

Finally, plaintiffs appear to take Novartis to task for not pointing out to the Court that their claims are frivolous.  Pl. memo. at 9.  Novartis did not include this fact in its initial

papers because it did not directly bear on the instant motion; after all, under Rule 9(b), even frivolous claims of fraud must be pled with particularity.

Inasmuch as plaintiffs have brought up the issue, however, the Court should be in no doubt that Novartis regards plaintiffs' entire action to be frivolous in the extreme. The American medical community has long recognized ADHD as an identifiable disease justifying treatment (including medication), and respected medical authorities have established detailed criteria for the condition's diagnosis. See, e.g., National Institutes of Health, Diagnosis and Treatment of Attention Deficit Hyperactivity Disorder (ADHD), 16 NIH Consensus Statement No. 2 (Nov. 18, 1998); Office of the Surgeon General, Attention Deficit/Hyperactivity Disorder, Mental Health: A Report of the Surgeon General, ch. 3, § 4 (http://www.surgeongeneral.gov/library/mentalhealth/chapter3/sec4.html) (8/29/2000); American Academy of Pediatrics Committee on Quality Improvement, Subcommittee on Attention Deficit/Hyperactivity Disorder, Clinical Practice Guideline: Diagnosis and Evaluation of the Child With Attention Deficit/Hyperactivity Disorder, 105 Pediatrics 1158 (May 2000); American Academy of Pediatrics Committee on Children with Disabilities and Committee on Drugs, Medication for Children with Attentional Disorders, 98 Pediatrics 301 (Aug. 1996) (copies attached). Indeed, Attention Deficit/Hyperactivity Disorder is among the most studied of all mental disorders, and Ritalin® has been recognized for decades as an effective treatment for the disorder.

In the face of this authority, plaintiffs' apparent claim that purchasers have wasted every cent ever spent on Ritalin® can only be regarded as patently absurd. Novartis has every confidence that, should the Court permit this case to go forward, the facts will

irrefutably bear out the complete lack of substance in plaintiffs' reckless and irresponsible allegations.

## CONCLUSION

For the reasons stated above and in Novartis's original memorandum, defendant Novartis urges this Court to grant its motion and to dismiss plaintiffs' complaint for failure to comply with Rule 9(b). Novartis defers to the Court's discretion whether to allow plaintiffs to replead their purported claims against Novartis and try to correct the problems discussed above.

Dated: 9/5/ , 2000

Respectfully submitted,

Eduardo Roberto Rodriguez
State Bar No. 17144000
Federal Admissions No. 1944
attorney-in-charge
Mitchell C. Chaney
State Bar No. 04107500
Federal Admissions No. 1918
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

James A. O'Neal
Minnesota Bar No. 8248X
Joseph M. Price
Minnesota Bar No. 88201
Bruce Jones
Minnesota Bar No. 179553
Faegre & Benson LLP
2200 Norwest Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
(612) 336-3000
Fax (612) 336-3026

Earl B. Austin
State Bar No. 1437300
Baker Botts LLP
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6542
Fax (214) 953-6503
Attorneys for Defendants Ciba-Geigy Corp. USA and Novartis Pharmaceuticals Corp.

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing document was served by United States mail, via certified service, return receipt requested, to counsel of record as follows:

Frank Costilla
Law Offices of Frank Costilla
5 East Elizabeth
Brownsville, Texas 78520
Attorneys for Plaintiffs

C. Andrew Waters
Peter Kraus
Waters & Kraus
4807 West Lovers Lane
Dallas, Texas 75209
Attorneys for Plaintiffs

Charles S. Siegel
Law Office of Charles S. Siegel
3402 McFarlin, Suite 200
Dallas, Texas 75205
Attorneys for Plaintiffs

Robert P. Charrow
Crowell & Moring
1001 Pennsylvania Ave., NW
Washington, DC 20004
Attorneys for American Psychiatric Association

Andrew C. Schirrmeister III
George R. Diaz-Arrastia
Schirrmeister Ajamie, LLP
Pennzoil Place-South Tower
711 Louisiana, 21st Floor
Houston, Texas 77002
Attorneys for American Psychiatric Association

11

Gerald Zingone
Arent & Fox
1050 Connecticut Ave. NW
Washington, DC 20036

Attorneys for Children and Adults with Attention

Deficit/Hyperactivity Disorder (CHADD)

Tom A. Lockhart
Adams & Graham, L.L.P.
222 East Van Buren, West Tower
Harlingen, Texas 78550

Attorneys for Children and Adults with Attention

Deficit/Hyperactivity Disorder (CHADD)

On this <u>5th</u> day of September, 2000

                                                                        R. Patrick Rodriguez