26

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 6 2000

Michael N. Milby
Clerk of Court

| | |
|---|---|
| Maria Elena Hernandez,<br>Miguel Angel Hernandez,<br>Heather Butler, individually and,<br>on behalf of all others similarly<br>situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CIBA-GEIGY Corp. USA,<br>Novartis Pharmaceuticals Corp.,<br>Children and Adults with Attention-<br>Deficit/Hyperactivity Disorder (CHADD),<br>American Psychiatric Association,<br><br>    Defendants. | CIVIL ACTION NO. B-00-82 |

**DEFENDANT AMERICAN PSYCHIATRIC ASSOCIATION'S REPLY
IN SUPPORT OF MOTION TO DISMISS UNDER RULE 9(B)**

In their responses to Defendants' motions under Rule 9(b), Plaintiffs do not seriously contend that their complaint contains the requisite specificity ordinarily required to plead fraud and conspiracy. Instead, Plaintiffs argue that their Complaint is immune from Rule 9(b) except for a few paragraphs that actually mention fraud. Even then they argue that Rule 9(b) does not require any degree of specificity because of the length and complexity of the fraud they allege took place.

To the contrary, the opposite is true. This is a baseless lawsuit whose factual allegations amount to, at most, nothing more than a medical debate over the validity of the disorder currently known as ADD/ADHD. At the same time, the conclusory and unsupported allegations of fraud

- 2 -

and conspiracy impugn the integrity of one of the most respected professional associations in the United States and many of its psychiatrist members. Rule 9(b) exists for just such lawsuits as this. Plaintiffs must plead fraud with specificity as to all of the factual underpinnings of the fraud count, and also as to the conspiracy count which depends entirely upon the fraud allegations for its existence. Moreover, Plaintiffs must, if anything, meet a <u>higher</u> standard of Rule 9(b) specificity because they have failed to identify a legally cognizable and plausible motive for the remarkable fraud they allege took place. *See Melder v. Morris*, 27 F.3d 1097, 1102-03 (5th Cir. 1994); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994).

The APA does not believe Plaintiffs can plead a fraud case that will satisfy Rule 9(b)'s requirements because the necessary facts do not exist. In any event, because the Complaint does not set forth how any fraud was actually committed, it is well below even ordinary Rule 9(b) standards and should be dismissed.

I.  **Plaintiffs Wrongly Assert that They Need Only Plead with Specificity as to the Five Paragraphs in the Fraud Count.**

Plaintiffs claim that the requirements of Rule 9(b) should apply only to a certain few allegations in the Complaint and not the whole Complaint. Such an approach would eviscerate Rule 9(b).

First, Plaintiffs' assertion that the conspiracy count is not subject to Rule 9(b) misses the point. The alleged conspiracy count alleges merely that the APA, CHADD, and Novartis conspired together to commit the fraud alleged in the fraud count. If the fraud count cannot be supported under Rule 9(b), the conspiracy count must be dismissed also. Put another way, the

- 3 -

conspiracy count depends for its existence on the allegations of fraud, which must satisfy Rule 9(b).[1] Plaintiffs' conspiracy count thus is untenable unless Plaintiffs otherwise meet the requirements of Rule 9(b) for all the factual allegations supporting both the fraud and conspiracy counts. *See Hecht v. Commerce Clearing House*, 897 F.2d 21, 26 n. 4 (2d Cir. 1990) (fraud allegations underlying conspiracy count must meet Rule 9(b) requirements). Nor are courts willing to accept naked conspiracy allegations that are not supported with some specificity. *See Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) ("Only allegations of conspiracy which are particularized . . . will be deemed sufficient.").

Second, it appears that Plaintiffs may be arguing that the requirements of Rule 9(b) apply only to the specific paragraphs that actually mention or allege fraud, namely the five paragraphs under the heading "IV. Causes of Action – Fraud." *See* Plaintiffs' Response to Defendant APA's Motion to Dismiss at 2-3. Apparently, Plaintiffs believe that the rule thus does not apply to any of the underlying factual premises (¶¶ 7-22) purportedly supporting those five fraud count paragraphs. *See id.* at 3.[2] Plaintiffs cite no cases to support this concept of Rule 9(b), and in fact

---

[1]    Plaintiffs have not alleged that the APA is subject to the New Jersey Consumer Fraud Act. *See* Complaint ¶¶ 32-35.

[2]    Several portions of Plaintiffs response indicate that their narrow view of Rule 9(b) would exclude all factual allegations supporting the fraud count. As an example of an allegation not subject to Rule 9(b), Plaintiffs refer to the allegation that Novartis and defendant APA "colluded and conspired to create the diagnoses of Attention Deficit Disorder (ADD) and Attention Deficit Hyperactivity Disorder (ADHD)" (*see id.* at 2). This allegation not only directly relates to the fraud claim, it appears in the Complaint in the factual allegations (at ¶ 11) that presumably support the fraud count and are incorporated by reference into the fraud count. *See* Complaint ¶¶ 11, 23. Plaintiffs also state that "many, indeed most, of plaintiffs' claims do not involve allegations of fraud" (Response to APA Motion at 2) and are therefore exempt from Rule 9(b), implying that they are referring to individual, factual paragraphs rather than the three counts of the Complaint.

- 4 -

this approach makes no sense. If applied, it would eliminate the need for any factual specificity in fraud cases. Numerous Fifth Circuit and Southern District of Texas cases have required plaintiffs to allege, with specificity, factual paragraphs supporting the fraud count, not merely the few paragraph setting forth the elements of the count. *See, e.g., Williams*, 112 F.3d at 178-80 (requiring significant specificity throughout the complaint as to newspaper articles, statements of company representatives, and company prospectus); *Shushany*, 992 F.2d at 522-24 (same as to financial transactions and whistleblower allegations); *Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 734, 743 (S.D. Tex. 1998) (complaint failed to discuss conduct of insurance agents and purported fraudulent statements).

Third, if Plaintiffs were not required to include specific factual allegations to support the fraud and conspiracy claims, there would be nothing in the Complaint to direct Defendants as to how to defend themselves. To support the counts in their Complaint, Plaintiffs at a minimum would have to prove (1) that the ADD/ADHD disorder is scientifically unsupportable; (2) that its inclusion in one or more of the DSM[3] publications is the result not just of a scientific dispute, but

---

[3] The DSM is the *Diagnostic and Statistical Manual of Mental Disorders*, the classification of mental disorders first published by the APA in 1952 and subsequently revised in 1968 (DSM-II), 1980 (DSM-III), 1987 (DSM-III-R), and 1994 (DSM-IV). The DSM relies on empirical studies, scientific literature, and the professional experience of leaders in psychiatry, psychology, and related disciplines to compile and classify the panoply of mental disorders for use by practitioners in the United States and internationally. Variations of the condition known today as Attention-Deficit/Hyperactivity Disorder have appeared in the DSM since DSM-II in 1968 (identified in that volume as "hyperkinetic reaction of childhhood"); is recognized in the "International Classification of Diseases" (ICD) ("hyperkinetic syndrome of childhood"), the official classification of diseases and mental disorders published by the World Health Organization (*see, e.g.,* ICD-9, 1978, classification 314 "hyperkinetic syndrome of childhood"); and has been officially adopted by the United States government in its adaptations of the ICD (*see, e.g.,* "International Classification of Diseases, 9th Revision, Clinical Modification, Oct.

(continued...)

- 5 -

of an actual deception and fraudulent scheme by currently unidentified persons; and (3) that some additional set of currently unidentified persons from all three Defendants had meetings, discussions, etc. in which they conspired to foist ADD/ADHD on the world to sell more Ritalin. Presently, the Complaint has few, if any, facts to support any of these three propositions. Defendants do not know when, during the forty-plus year history of this disorder and DSM publications, the supposed fraud and conspiracy took place; in what context; by what participants; whether the conspiracy includes the government and every psychiatrist/clinician who has prescribed Ritalin; how the fraud affected the inclusion of ADD/ADHD or its earlier variants in the DSM; or even why the DSM classification was supposedly not scientifically based or a legitimate classification of a mental disorder. It is not possible to make discovery decisions under or prepare a defense against such a vague and internally inconsistent set of allegations.

The Complaint's underlying factual allegations are all presumably in support of the purported fraud, which in turn is the basis for the entire lawsuit. Far from being exempt under Rule 9(b), those inadequate factual allegations are at the heart of the Complaint's insufficiency.

---

(...continued)

    1991, at 247 ("hyperkinetic syndrome of childhood") (Eighth Revision of ICD, Adopted for Use in the United States" ("hyperactive child"), published by the United States Department of HHS. Attention deficit disorder and the use of Ritalin to address the disorder has also been recognized and approved by the Food and Drug Administration (*see* Physician's Desk Reference at 2040-41 (2000) (excpert attached as Exh. B).

## II.     Plaintiffs Should Be Held, If Anything, to a More Rigorous Rule 9(b) Standard.

Plaintiffs claim that the length of time of and the number of entities involved in the alleged fraud/conspiracy justify their barebones pleading and excuses any requirement to specify the who, what, when, where, and how of fraud as required under *Williams v. WMX Technologies.* *See* Response to Motion to Dismiss, pp. 4-6. To the contrary, the breadth of Plaintiffs' implausible allegations, coupled with the extensive information available to Plaintiffs, heightens the need for more specificity, not less.

To begin with, Plaintiffs' allegation of a long-running fraud involving hundreds of people and a highly publicized mental disorder should and does require greater specificity of factual pleading because of the sheer amount of information available to Plaintiffs. In their Response, Plaintiffs now assert that the alleged conspiracy to invent a mental disorder involved not only the APA, Novartis, and CHADD, but also the United States and foreign governments and unnamed (and presumably numerous) "doctors, academics, . . . and members of the media" (Plaintiffs' Response to Defendant Novartis Pharmaceutical Corporation's Motion to Dismiss at 9). Further, Plaintiffs now claim that the purported conspiracy extends not just to 1975, as alleged previously, but all the way back to the 1950s (*see id.* at 9 and n. 4), making it no doubt one of the longest-running conspiracies in American history. Yet despite the fact that libraries could be filled with the amount of material published and publicly available on the development of the DSM and ADD/ADHD,[4] Plaintiffs have not identified a single fact regarding when and how any

---

    4     Those publications include the DSM editions themselves; numerous published drafts of the versions of the DSM; extensive companion publications and commentaries on the DSM; published literature on the field trials associated with the ADD/ADHD disorders;

(continued...)

- 7 -

fraudulent activity actually took place. Where Plaintiffs have access to substantial information on the activities involved, they must plead the fraud with more specificity, not less. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 522-23 (5th Cir. 1993) (dismissing complaint for failure to include facts within reach of plaintiffs).

Moreover, the nature of Plaintiffs' alleged fraud mandates a higher standard of pleading, not a lower one. In arguing for a lower standard, Plaintiffs ignore controlling Fifth Circuit case law that imposes a higher standard when Plaintiffs posit an implausible fraud for which no motive is readily apparent and that runs contrary to the ordinary and natural motives of the participants. *See Melder v. Morris*, 27 F.3d 1097, 1103-04 (5th Cir. 1994) (court refused to "indulge irrational inferences" of fraudulent intent by accounting firm and securities underwriter whose reputations were at stake). In such instances, the "inferred" intent of condition of mind under Rule 9(b) is displaced by an obligation to plead facts with specificity, under a "tougher" and "more stringent" standard, necessary to support an inference of intent. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068-69 (5th Cir. 1994) (applying a "more stringent standard" for intent where intent cannot be inferred); *Melder*, 27 F.3d at 1102-03 (plaintiffs "face a tougher standard" under Rule 9(b) in alleging facts supporting unlikely fraudulent intent).

Plaintiffs' allegations here would require the Court and/or jury to believe that an eminent body of leading psychiatrists and other clinicians fraudulently invented a non-existent mental disorder and then perpetrated its existence for over forty years. Both the professional reputations

---

(...continued)
> dozens if not hundreds of articles on ADD/ADHD or its predecessor disorders; and international and governmental literature on the disorder contained in World Health Organization, NIMH, HEW, and other publications.

of the individuals who served the various committees, task forces, and work groups involved in the development of the DSM, as well as the credibility of the APA itself, depend on the scientific integrity of the representations reflected in the DSM. The alleged fraud thus runs completely counter to the natural motivations of the individuals and organization involved. The only allegation in the complaint that even relates to a motive for such a bizarre event is a monetary one – that the APA benefited financially from unspecified pharmaceutical company contributions. As the Fifth Circuit has held, however, an allegation of a possible monetary reward, by itself, cannot form the basis for pleading fraudulent intent or motive under Rule 9(b). If the mere allegation of financial gain were enough, Rule 9(b) would be stripped of its intent element as to any entity that depended on income, salary, earnings, or profit – i.e., most of the western world. *Melder v. Morris*, 27 F.3d 1097, 1102-03 (5th Cir. 1994) (mere allegation of financial motive of corporate officers would "eliminate the state of mind requirement [under Rule 9(b)] as to all corporate officers and directors" and constitute a "nihilistic approach to Rule 9(b)" because all corporate officers function under a profit motive); *Tuchman*, 14 F.3d at 1069 (5th Cir. 1994) (dismissing complaint under Rule 9(b) because allegation of financial incentive for corporate officers "can hardly be the basis on which an allegation of fraud is predicated") (citation omitted). Under this controlling law, Plaintiffs cannot infer intent to defraud from the mere receipt of pharmaceutical company funding for unspecified APA activities.

Stripped of the conclusory allegations, the Complaint falls far short even of ordinary Rule 9(b) standards, much less the more stringent standard that applies here. The few "facts" in the Complaint allege at most a debate among professionals over the legitimacy of the ADD/ADHD

- 10-

Respectfully submitted,

SCHIRRMEISTER AJAMIE, L.L.P.

By: _____
Andrew C. Schirrmeister III, Esq.
State Bar No. 17750650
Southern District of Texas Bar No. 5546
George R. Diaz-Arrastia, Esq.
State Bar No. 05805600
Southern District of Texas Bar No. 12
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
(713) 860-1600
(713) 860-1699 [Fax]

CROWELL & MORING, L.L.P.

JoAnn E. Macbeth, Esq.
District of Columbia Bar No. 371264
Laurel Pyke Malson, Esq.
District of Columbia Bar No. 317776
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500
(202) 628-5116 [Fax]

Attorneys for Defendant
American Psychiatric Association

<u>Certificate of Service</u>

I hereby certify that a true and correct copy of Defendant American Psychiatric Association's Reply in Support of Motion to Dismiss Under Rule 9(B) has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure, on this 5th day of September 2000.

_____
Andrew C. Schirrmeister III

diagnosis.[5] When "the context strongly suggests that claimed "fraud" walks close to non-actionable expression of opinion, [Rule] 9(b) takes on especial force." *Williams v. WMX Technologies*, 112 F.3d 175, 178 (5th Cir. 1997). For multiple reasons, that "especial force" must be applied here.

### Conclusion

Plaintiffs have not provided any basis in their response to justify the lack of factual specificity in their Complaint. Rule 9(b) is the vehicle by which federal courts prevent frivolous lawsuits such as this one from proceeding into expensive class and discovery matters, and that result is appropriate here. The lawsuit should be dismissed.

---

[5] In actuality, for many years the debates over ADHD have related not to the existence of the disorder, which is heavily researched and well-recognized, but to issues such as the proper treatment for ADHD, determining the continuum of childhood behaviors between children with ADHD and those without the disorder, and the co-existence of ADHD with other conditions. *See* NIH Consensus Statement, "Diagnosis and Treatment of Attention Deficit Hyperactivity Disorder (ADHD)," Nov. 16-18, 1998 (located at http://consensus.nih.gov). Indeed, nowhere in the entire NIMH Consensus Statement is there any hint of fraud or conspiracy or other irregularities in the identification of this well-recognized disorder. *See also* Agency for Health Care Policy and Research, "Diagnosis of Attention-Deficit/Hyperactivity Disorder," Technical Review No. 3 (Oct. 1999) (located at http://www.ahrq. gov/clinic/adhdsutr.htm). For a considerably older review reflecting the lack of debate over the existence of the disorder (and lack of any assertions of fraud), see Office of Child Development and the Office of the Assistant Secretary for Health and Scientific Affairs, Department of Health, Education, and Welfare, "Report of the Conference on the Use of Stimulant Drugs in the Treatment of Behaviorally Disturbed Young School Children," Jan. 11-12, 1971 (attached as Exh. A).