50

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

DEC 1 5 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| Maria Elena Hernandez, | ) | |
| Miguel Angel Hernandez, | ) | |
| Heather Butler, individually and, | ) | |
| on behalf of all others similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. B-00-82 |
| v. | ) | |
| | ) | |
| CIBA-GEIGY Corp. USA, | ) | |
| Novartis Pharmaceuticals Corp., | ) | |
| Children and Adults with Attention- | ) | |
| Deficit/Hyperactivity Disorder (CHADD), | ) | |
| American Psychiatric Association, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT AMERICAN PSYCHIATRIC ASSOCIATION'S MOTION**
**AND MEMORANDUM IN SUPPORT OF MOTION TO**
**DISMISS AMENDED COMPLAINT PURSUANT TO RULE 9(b)**

# TABLE OF CONTENTS

STATEMENT OF THE ISSUE.................................................................................1

SUMMARY OF THE ARGUMENT ..................................................................1

BACKGROUND AND STATEMENT OF  NATURE AND STAGE OF
      PROCEEDINGS .......................................................................................3

      A.     Plaintiffs' Initial Complaint ...................................................................4

      B.     The Court's October 17, 2000 Order ....................................................4

      C.     Plaintiffs' Amended Complaint .............................................................6

ARGUMENT .................................................................................................6

I.     The Amended Complaint Should Be Dismissed Because Plaintiffs Have
     Failed to Comply with the Court's October 17 Order. ........................................6

      A.     The Amended Complaint Continues to Allege or Depend Upon the
           Nonexistence of ADHD. ....................................................................7

      B.     The Amended Complaint Does Not Provide the Information on the
           Named Plaintiffs Requested by the Court...............................................8

      C.     Plaintiffs Have Not Particularized the Fraud Pleadings. .......................10

           1.     Plaintiffs Have Not Identified Which DSM Criteria Are
                Overbroad and Why. ..............................................................11

           2.     Plaintiffs Have Not Added Any Appreciable Detail to the
                Fraud-Based Counts................................................................14

II.    Plaintiffs May Not Rely on Discovery and "Information and Belief"
     Pleading to Support a Speculative Fraud Case Under Rule 9(b). .......................15

CONCLUSION.............................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ............................................................................ 11

*Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734 (S.D. Tex. 1998) ............ 10, 12, 13

*Guidry v. Bank of LaPlace*, 740 F. Supp. 1208 (E.D. La. 1990),
    *aff'd and modified*, 954 F.2d 278 (5th Cir. 1992) ............................................................... 11, 16

*In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999) ........................... 11

*In re Urcarco Securities Litigation*, 148 F.R.D. 561 (N.D. Tex. 1993),
    *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) ............................................. 17

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir. 1996) ....................................... 11, 17

*Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) ............................................................. 10, 12, 17

*Tel-Phonic Services, Inc. v. TBS International, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) ............................................................................................... 10

*Tuchman v. DSC Communications*, 14 F.3d 1061 (5th Cir. 1994) .................................................. 3

*Unimobil 84, Inc. v. Spurney*, 797 F.2d 214 (5th Cir. 1986) ............................................... 10, 12

*United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F. 3d 899 (5th Cir. 1997) .......................................................................................... 2, 16, 17

*Waters v. State Farm Mutual Automobile Ins. Co.*,
    158 F.R.D. 107 (S.D. Tex. 1994) ....................................................................................... 2, 16, 17

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997) ..................................... passim


**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... passim

Fed. R. Civ. P. 9(b) ............................................................................................................... passim

Defendant the American Psychiatric Association ("APA") seeks dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to comply with the pleading requirements of Fed. R. Civ. P. 9(b).

### STATEMENT OF THE ISSUE

The APA's motion requires the Court to determine whether the Plaintiffs' Amended Complaint (1) conforms to the requirements of the Court's October 17, 2000 Order requiring Plaintiffs to replead; and (2) otherwise meets the particularity pleading requirements of Fed. R. Civ. P. 9(b). If the Complaint is found insufficient in these respects, it should be dismissed pursuant to Rule 12(b)(6). The supporting authority and standard of review are discussed below.

### SUMMARY OF THE ARGUMENT

On October 17, the Court ordered Plaintiffs to replead their Complaint to comply with the requirements of Fed. R. Civ. P. 9(b). The Order found the original Complaint lacking in at least three major respects: (1) the Complaint's "nonexistence" theory – *i.e.*, that ADHD does not exist as a bona fide diagnosis – must be repled to be consistent with counsel's admission in Court that ADHD does exist but is merely overdiagnosed; (2) the Complaint failed to identify whether the named Plaintiffs' children were properly diagnosed with ADHD or not; and (3) the Complaint was lacking in particularity as to all fraud-based counts, and in particular the specific acts of fraud alleged against each Defendant.

Plaintiffs have now had opportunity to revise their complaint. The Amended Complaint, however, looks largely like the first one and fails to address the critical deficiencies identified in the Court's October 17 Order. To be sure, Plaintiffs have attempted to revise their theory by including references to overdiagnosis and overbroad criteria. Other allegations, however, including the critical class definition and description of the children, have not been revised as required and remain consistent only with Plaintiffs' earlier theory – which they abandoned in

open court at the October 16 hearing – that ADHD does not and has never existed. Like the original, the new complaint does not particularize the fraud allegations with anything other than more conclusory allegations. In fact, the particularity of the fraud, conspiracy, and New Jersey counts (¶¶ 35-47) is materially unchanged.

Most critically, now that the Plaintiffs are pursuing a lawsuit based on the more complex proposition that the ADHD criteria in the DSM are overbroad (rather than made up in their entirety), it is imperative that Plaintiffs plead which criteria are overbroad, why they are overbroad, and why the APA should have known this. The Amended Complaint addresses none of these important threshold issues. Indeed, Plaintiffs have once again failed to include a single reference to the five versions of DSM diagnostic classifications of ADHD or its predecessors or any of the criteria specified therein. We do not even know who diagnosed these children and what overbroad criteria supposedly led to any misdiagnosis. The Amended Complaint is in many respects even more deficient than the first.

The most telling commentary on the state of Plaintiffs' Amended Complaint is their open admission that they are unable to plead this case with the requisite specificity without taking discovery first:

> Since merits discovery in this case has not taken place, plaintiffs are unable to recite in this complaint the particulars of every misstatement, misrepresentation of [*sic*] omission made by defendants. Plaintiffs expect to be able to offer substantial proof on these matters after discovery has concluded.

Amended Complaint ¶ 20. This is not how Rule 9(b) functions. It is not permissible to invent a fraud lawsuit and then rely on discovery to plead it properly. *See United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp*, 125 F. 3d 899, 903 (5th Cir. 1997); *Waters v. State Farm Mutual Automobile Ins. Co.*, 158 F.R.D. 107, 108 (S.D. Tex. 1994).

CMPDF - www.fasiio.com

Finally, the substantive pleading deficiencies that remain unaddressed under the October 17 Order take on even greater importance in light of the First Amendment concerns raised by Plaintiffs' Amended Complaint. At bottom, this lawsuit is an unjustified and highly damaging attack on the APA's right to engage in protected, First Amendment-protected scientific debate over mental health diagnoses and the classification of mental health disorders.[1] Plaintiffs want to require this Court to make complex medical diagnostic decisions, ordinarily left to professionals in this field and to competent government agencies such as the Food and Drug Administration and Drug Enforcement Agency. Yet even as the Plaintiffs ask the Court to determine which children require psychiatric medication and which do not, Plaintiffs still have not given the Court a complaint that explains even the basic parameters of their fraud claim. This is precisely the type of complaint that Rule 9(b) is intended to prevent – a vague and unsubstantiated fraud lawsuit, filed as a pretext for the discovery of unknown wrongs, that defames Defendants and burdens the Court. *See Tuchman v. DSC Communications,* 14 F.3d 1061, 1067 (5th Cir. 1994).

Accordingly, the APA renews its Rule 9(b) motion, this time with the request that the Court dismiss the case under Fed. R. Civ. P. 12(b)(6) for failure to particularize the fraud allegations.

## BACKGROUND AND STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

We provide below a review of the procedural history relevant to this motion, including a brief overview of the Court's prior ruling and the pertinent portions of Plaintiffs' Amended Complaint.

---

[1]    In the California action similar to this one, Defendants have filed motions under California's anti-SLAPP statute to strike the complaint on the grounds that it attacks protected First Amendment speech.

## A.    Plaintiffs' Initial Complaint

Plaintiffs originally filed this lawsuit in May 2000, alleging fraud in the creation and marketing of the childhood mental disorder ADHD and promotion of Ritalin as a treatment for that disorder.  The allegations in the first Complaint were remarkable (1) because of their inconsistency with extensive and well-documented scientific studies and medical consensus that ADHD does in fact exist and requires competent diagnosis and treatment, and (2) because they contained no particulars to support the broad fraud and conspiracy allegations.  For example, the original complaint provided almost no information on the two named Plaintiffs, including whether their children had ADHD or not and how they had been misled or misdiagnosed.  *See* Complaint ¶¶ 2, 40.  As to the alleged fraud in the DSM, the Complaint stated only that the inclusion of ADD in 1980 and ADHD in 1987 in the DSM was fraudulent, but did not quote any language from the DSM, cite any specific fraudulent or incorrect criteria, reference the specific editions of the DSM affected by the fraud, or cite to any scientific authority for the proposition that ADHD is a fraud.

## B.    The Court's October 17, 2000 Order

Because of the lack of any particularity to support the fraud allegations, and the uncertainty as to whether Plaintiffs intended to claim in fact that ADHD does not legitimately exist in any children, Defendants filed motions under Fed. R. Civ. P. 9(b) in July seeking to dismiss the case if Plaintiffs could not plead with sufficient particularity and coherence.  At the hearing, the Court questioned Plaintiffs' counsel as to whether in fact Plaintiffs intended to claim that ADHD does not exist at all:

> So, are the allegations that this was a totally made-up diagnosis – I mean, you said something about in the alternative.  Well, if you're talking about fraud and making something up versus fraud and overgeneralizing, I think that's what's going to be a totally different animal.

Plaintiffs' counsel responded by abandoning the theory that ADHD does not exist:

> I think, your honor, we accept the opportunity to replead and if our allegations are causing confusion, we will hopefully plead more clearly next time. I think the thrust of our case is that we do not deny that there are a small – what we believe to be a smaller or much smaller number of children who have a serious problem, a smaller subset of whom can be appropriately treated with methylphenidate.

Transcript of October 16, 2000 Hearing at 38:16 to 39:2.

Following the hearing on October 16, the Court granted Defendants' Rule 9(b) motions, holding that Plaintiffs' fraud, conspiracy, and New Jersey Consumer Fraud Act counts all sounded in fraud[2] and must be repled to meet the particularity requirements of Rule 9(b). Order at 4-8, 11. The Order also set forth in some detail the steps Plaintiffs needed to take to bring the Complaint into compliance, including:

(1)    amending the Complaint "to coincide with their assertions" that the case is about overdiagnosis (*see* Order at 3-4);

(2)    clarifying whether the named Plaintiffs were misdiagnosed and in fact did not have ADHD at all, or in the alternative whether they were properly diagnosed but were not warned of side effects (*id.* at 4);

(3)    pleading the fraud, conspiracy, and New Jersey Consumer Fraud Act counts with greater particularity (*id.* at 4-7, 11);

(4)    specifying the claims made as to each individual Defendant, rather than referring to "Defendants" as a group (*id.* at 3-4 and n. 2); and

(5)    clarifying whether Plaintiffs intended to allege a violation of the New Jersey Consumer Fraud Act that does <u>not</u> sound in fraud (*id.* at 6).

The Court also discussed case law identifying the core requirements of Rule 9(b) pleading, including the nature of the fraud and supporting details, how the scheme operated, when and

---

[2]    The only matter in the Complaint not sounding in fraud was the alleged violation of Article 10 of the United Nations Convention on Psychotropic Substances. *See* Order at 6. This conclusory allegation is not pled as a separate count but appears to have been added as purported support for the fraud theory.

CHMPDF - www.hsiao.com

where it occurred, the participants, and why the statements were fraudulent. Order at 8-9. The

Court noted that pleading on information and belief is permissible *only if* the facts necessary for

pleading are within the defendants' control *and* plaintiff can otherwise provide adequate support

for the allegations. *Id.* at 9-10.

### C.   Plaintiffs' Amended Complaint

Out of the fifty-two paragraphs in the original Complaint, Plaintiffs Amended Complaint

contains roughly a dozen altered substantive allegations. Those new allegations relate primarily

to the named plaintiffs' use of Ritalin (Amended Complaint ¶¶ 11-12), the extent of Ritalin use

nationally (*id.* ¶ 10), the overbreadth of the ADHD criteria (*id.* ¶¶ 13-16, 27, 36, 43(6)), and an

unsubtantiated accusation that Novartis helped write unspecified DSM criteria (*id.* ¶¶ 18, 27, 28).

Much of the original complaint, however, including the fraud, conspiracy, and New Jersey

Consumer Fraud counts themselves, remains materially unchanged. Plaintiffs deferred until

discovery their obligation to plead any additional facts or circumstances not included in their

Amended Complaint (¶ 20). The specific insufficiencies as to the Amended Complaint are

addressed in the context of each argument below.

### ARGUMENT

Plaintiffs have made a minimal attempt to revise their complaint, but the Amended

Complaint still falls well short of the Court's October 17 Order and well-established Rule 9(b)

standards. In fact, the Amended Complaint has in many ways made things worse.

### I.   The Amended Complaint Should Be Dismissed Because Plaintiffs Have Failed to Comply with the Court's October 17 Order.

The Amended Complaint does not meet either the spirit or the letter of the Court's

Order in at least three key respects: (1) it fails to reflect fully the Plaintiffs' new theory,

leaving the Court and Defendants with a confused amalgam that makes less sense than

the original; (2) it fails to allege whether the named Plaintiffs have ADHD or not; and (3) it fails to include the particularity required by the Order.  We discuss each deficiency in turn.

> **A.    The Amended Complaint Continues to Allege
> or Depend Upon the Nonexistence of ADHD.**

Despite the direction of the Court at both the hearing and in its October 17 Order, the Amended Complaint only partially corrects the mispled theory of the case.  At the hearing Plaintiffs explicitly jettisoned their reliance on a theory that ADHD does not exist, as stated in the original Complaint, and instead admitted that at least some children were properly diagnosed. The Court agreed to allow Plaintiffs to replead to correct their theory and clarify exactly what they believe is wrong with the APA's diagnostic criteria.

Given this opportunity, one would have expected at a minimum that Plaintiffs would substantially revise the Complaint, under the particularity required by Rule 9(b), (1) to restate their theory as one of overdiagnosis; (2) to identify what is a proper diagnosis versus an improper one, (3) to specify which criteria in which version of the DSM are overbroad and why; and (4) to revise the class definition to reflect the notion that not all Ritalin users are part of the class.  The Amended Complaint, however, addresses only the first of these and then only partially.

Plaintiffs have revised a few paragraphs to reflect the new theory regarding overbreadth of the DSM criteria.  *See* Amended Complaint ¶¶ 13-16, 27, 36, 43(6).  The amendments, however, have only served to confuse the issue because  Plaintiffs continue to allege also that ADHD was fraudulently "created" (*id.* ¶ 21), and to refer to the publication and promotion of ADHD as a novel "diagnosis" and "disease" (in quotations), implying that the entire diagnosis does not exist (*id.* ¶¶ 21, 22, 23, 42, 43(6)).  Illustrating the Plaintiffs' ambivalence, for example, is paragraph 43(6), which states that all defendants conspired, combined and colluded to

dramatically increase sales of Ritalin by "facilitating *the creation of new diagnoses in the DSM,* made by reference to *overbroad and overly subjective* criteria" (emphasis added). This allegation, which could serve as a summary of the Plaintiffs' attempt to amend the Complaint, is internally inconsistent and does not comply with the Court's Order.

Most importantly, the class definition is unchanged. The definition continues to include "*all persons* in the United States and its territories who have purchased Ritalin." Amended Complaint ¶ 55. This definition is premised on the theory that all ADHD diagnoses are fraudulent; it has not been limited to plaintiffs who fit the new theory of the case – overdiagnosis. The failure to narrow the class is not a mere drafting oversight, because Plaintiffs have *increased* the number of class members in the Amended Complaint, from five million to six million. *Compare* Amended Complaint ¶ 48 *with* Complaint ¶ 37. The class definition in the Amended Complaint is thus fundamentally in conflict with the position Plaintiffs advocated before the Court, and which the Court ordered Plaintiffs to incorporate into their amendments.

Defendants believe the half-hearted attempt to amend the theory of the case reflects more than just sloppy drafting. The ambiguity points out the difficulty Plaintiffs have in pleading this case under Rule 9(b) and their unwillingness to take a position.

**B.      The Amended Complaint Does Not Provide the Information on the Named Plaintiffs Requested by the Court.**

Consistent with the instruction to clarify the theory of the case, the Court also ordered Plaintiffs to state explicitly "whether the named Plaintiffs allege that their children were prescribed Ritalin when they had no medical need for the drug, or whether there was a legitimate medical need for the prescription" but the children were not properly warned. Order at 4. The Amended Complaint does not do so, once again leaving both the Court and Defendants unclear as to the actual theory of Plaintiffs' case.

It is a simple matter for the Plaintiffs to state whether or not these children have ADHD. Instead of doing this, the paragraphs on the two families have been amended to identify when each child was diagnosed with ADHD and the time period in which the children took Ritalin, but neither paragraph states whether the children actually have ADHD or not. The parents claim that they "would not have accepted the diagnosis" had they known of the "financial relationships and connections" among Defendants and of "the extremely subjective and broad nature of its criteria." Amended Complaint ¶¶ 11, 12. But the new paragraphs never tell us, as the Court ordered, whether the children were improperly diagnosed, or alternatively, whether Ritalin was a correct prescription for a correct diagnosis that the parents simply disagreed with or distrusted.[3] Most confusing is the fact that one or both of these children apparently continued to take Ritalin up to and even *after* they filed their original Complaint. *See* Amended Complaint ¶¶ 11, 12 (Ritalin taken "until" May and June, respectively; original complaint filed in May). If they were in fact misdiagnosed, this continued use is hard to explain.

These paragraphs, along with the rest of the Amended Complaint, thus do not comply with the Order or with the need to clarify the Plaintiffs' theory of the case. If anything, the partial amendments have turned what the Court previously believed to be a straightforward theory (based on nonexistence of ADHD) into a muddled one that will make class certification and numerous other issues difficult to pursue.

---

[3]     Indeed, since the rejection would have been based on criteria that existed *regardless* of whether the children were properly diagnosed – *i.e.*, the financial relationships among Defendants and the scope of the DSM criteria – that rejection would apparently have taken place *whether or not the original diagnosis was legitimate.*

### C.    Plaintiffs Have Not Particularized the Fraud Pleadings.

In addition to requiring Plaintiffs to clarify their theory, the Order required Plaintiffs to plead their fraud allegations with more particularity. Order at 4-8, 10-11. That repleading requirement applied to all allegations except those involving the treaty violation.[4] Under Fifth Circuit case law,[5] including the cases cited in the Order, Plaintiffs should be required to identify specific statements and specific acts that support the inference of fraud. *See, e.g., Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) ("The plaintiffs must set forth *specific facts* supporting an inference of fraud."); *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). It is not enough to refer generally to a document or published statement in which the fraud allegedly occurred, but instead plaintiffs must identify which statements are in fact fraudulent and why they are fraudulent. *See Williams*, 112 F.3d at 177 (stating that plaintiffs must "explain why the statements were fraudulent"); *Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (same); *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217

---

[4]    The Court ruled that the New Jersey Consumer Fraud count, as stated in the Complaint, sounded in fraud and must be repled under Rule 9(b). Order at 5-6. The Court required Plaintiffs to amend this count if they intended to plead an action under the Act that did not sound in fraud. *Id.* The Amended Complaint New Jersey count is entirely unchanged (Amended Complaint ¶¶ 44-47), from which it is now clear that Plaintiffs are not alleging any violations of that Act that do not sound in fraud.

[5]    The Court's Order notes that Fifth Circuit law dealing with securities and RICO cases provide applicable general principles but may not apply to the facts of every case. Order at 10. With that guidance, we have cited Fifth Circuit law, including securities and RICO cases, for general propositions and have focused, to the extent possible, for specific facts on cases from other contexts (in particular, *Waters, Thompson* and *Frith*). The APA does not agree, however, that Fifth Circuit securities and RICO cases are not applicable to other types of claims, and in fact several of those cases specifically state or imply the opposite. *See, e.g., Williams*, 112 F.3d at 177 (finding "no principled reason why the state claims of fraud should escape the pleading requirements of the federal rules"); *Tel-Phonic Services, Inc. v. TBS International, Inc.*, 975 F.2d 1134, 1142 (5th Cir. 1992) (applying same Rule 9(b) analysis of RICO counts to Texas state common law fraud).

(5th Cir. 1986) (same). The handful of allegations Plaintiffs have added do not begin to comport with the requirements of Rule 9(b).

1.   **Plaintiffs Have Not Identified Which DSM
Criteria Are Overbroad and Why.**

In their revised complaint, Plaintiffs have attempted, in part, to allege that the DSM criteria are overbroad and have been expanded fraudulently over time to include more and more normal children. With the focus now on the criteria themselves, it becomes even more critical that the Amended Complaint identify the fraudulent "statements" contained therein, in other words, what criteria are wrong and why. *See, e.g., Guidry v. Bank of LaPlace*, 740 F. Supp. 1208, 1216 (E.D. La. 1990), *aff'd and modified*, 954 F.2d 278, 288 (5th Cir. 1992) (plaintiff must specify "precisely what statements were made in what documents or oral representations"). Rule 9(b) requires more than the unadorned statement that the criteria are overbroad.

The DSM ADHD "criteria" actually consist of different variations of diagnostic descriptions first published in DSM-II in 1968, and revised in DSM-III in 1980, DSM-III-R in 1987, and DSM-IV in 1994.[6] Through the course of these revisions, based on continuing research and field studies, the nature of the subcategories changed to some degree, and the precise wording, grouping, and cutoffs for the diagnostic criteria shifted according to the medical evidence available to the working groups for each edition. In the final edition, for instance,

---

[6]     Relevant excerpts, including the diagnostic criteria, from the various versions of the DSM are submitted with this motion. Because the Amended Complaint specifically refers to the DSM (¶¶ 15-16), it may properly be considered by the Court in ruling upon a motion directed to the pleadings, such as this one. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (courts may consider "documents either attached to or incorporated in the complaint" in deciding motion to dismiss); *see also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

DSM-IV – the one most likely used in regards to the diagnoses of the named Plaintiffs – the criteria are backed up by the five volume *Source Book* and its extensive bibliography. *See* DSM-IV at xx (describing contents of *Source Book*). That set of criteria requires for diagnosis identification of six of nine inattention behaviors, or six of nine hyperactivity/impulsivity behaviors, appearing in two or more settings (e.g., school and home) with "clear evidence of clinically significant impairment in social, academic, or occupational functioning." DSM-IV at 83-84.

A great deal of information about the criteria (including all versions of the DSM) is available to Plaintiffs, yet they have failed to specify which criteria, in which version(s), are fraudulent. In fact, the Amended Complaint, like its predecessor, does not contain a single reference to any specific DSM or any criteria. This is patently insufficient under Rule 9(b). *See Williams,* 112 F.3d at 179 (finding that plaintiffs' failure to specify "which portion [of a prospectus] is false and why prevents this portion of the complaint from meeting" Rule 9(b) pleading standards); *Melder,* 27 F.3d at 1102; *Frith,* 9 F. Supp. 2d at 743 (complaint insufficient under Rule 9(b) because it "fail[ed] to describe how the statements and explanations allegedly made by [defendant's] agent were fraudulent or deceptive"); *Unimobil,* 797 F.2d at 217. The APA cannot frame a response to an allegation that some criteria somewhere in thirty-plus years of DSM activity are fraudulently overbroad.

Even more critical is the continuing and complete absence of any explanation as to *why* any of the criteria are overbroad and fraudulent, a violation of one of the minimal requirements of Rule 9(b). *See Williams,* 112 F.3d at 177; *Frith,* 9 F. Supp. 2d at 742; Order at 9. The APA is

entitled to know, based on medical and scientific data,[7] why it should have realized that the

criteria in DSM-II, III, III-R, and/or IV were fraudulently overbroad.  *See Williams,* 112 F.3d at

177-78 *(citing and adopting Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993));

*Frith,* 9 F. Supp. 2d at 742; Order at 9.  To illustrate why Plaintiffs' failure to focus on the actual

criteria is so unacceptable, paragraph 27 of the Amended Complaint alleges a growing expansion

of criteria such that "the criteria are now so numerous, and so subjective, that virtually any

normal child could be diagnosed with ADHD."  Yet the number of criteria and their general

nature have changed only around the margins between DSM-III in 1980 and DSM-IV in 1994

(DSM-III contained 16 behavioral criteria; DSM-III-R had less (14), and DSM-IV has 18).

Plaintiffs' conclusory allegations are actually contradicted by the specifics in the documents they

cite.

Plaintiffs included a bare handful of allegations in the Amended Complaint referring to

the expanding use of Ritalin (¶¶ 10, 14) and the NIH Consensus Statement (¶ 15), but these

allegations are far from sufficient under Rule 9(b).  The expanding sales are not connected in the

Amended Complaint with any change in DSM criteria, and in any event could just as well mean

that Ritalin is a <u>good</u> medication that is helping more and more people.[8]  Likewise, the

---

[7]     Supporting research for DSM-IV, for instance, is published in the five-volume *Source Book* compiling all of the studies relied on for each classification.  The ADHD sections in the *Source Book* contain not only the published literature on ADHD but also reports on the field trials conducted to test the criteria used for ADHD in DSM-IV.  *See* American Psychiatric Association, *DSM-IV Source Book* (Vol. 4 1998) at 627-57 (describing field trials for ADHD) and 446-48 (listing references).

[8]     It would be untenable if a fraud claim could be built merely on the fact that a diagnosis and medication are increasing in usage.  The same rationale could subject any successful and useful product to a fraud claim.  In fact, the opposite implication – that the increase is due to the beneficial value of ADHD diagnosis and treatment – is far more rational, considering the long time span, many studies, and many professionals involved.

Consensus Statement only points to the need for more study of the criteria – which the APA fully supports – not to any fraudulent overbreadth or unsavory activity.[9]

Plaintiffs cannot bring a fraud case about overbroad and expanding ADHD criteria and refuse to set forth why and how the criteria are wrong and fraudulent.

### 2.    Plaintiffs Have Not Added Any Appreciable Detail to the Fraud-Based Counts.

The Court ordered the Plaintiffs to replead the fraud, conspiracy and New Jersey Consumer Fraud counts to include more particularity in line with Rule 9(b).  The Amended Complaint, however, continues to lack any appreciable detail to support the fraud theories generally.  As in the original, this version still does not identify any persons supposedly responsible for the fraud; any time frame during which the fraud took place; any particular meetings, publications, drafts, or other events that contributed to the fraud; any explanation of the role of the hundreds of consultants and numerous government organizations involved; or any clarification as to how the Plaintiffs only now have supposedly discovered this fraud and conspiracy.  The original Complaint lacked this specificity, and the Amended Complaint has not improved.

The Order also required Plaintiffs to specify the role of each Defendant.  Order at 3 and n.2.  Some paragraphs in the Amended Complaint are now more clear, but many continue to allege generally that all defendants engaged blanketly in fraudulent misrepresentations and similar activity.  *See* Amended Complaint, ¶¶ 24, 25, 36, 42, 47.  These allegations in particular

---

[9]    *See* National Institutes of Health, *Diagnosis and Treatment of Attention Deficit Hyperactivity Disorder (ADHD)*, 16 NIH Consensus Statement No. 2 (11/18/98) (submitted with Novartis's Reply Memorandum in Support of Motion to Dismiss (filed 9/5/00)) at 2 ("[T]here is evidence supporting the validity of the disorder.  Further research is needed on the dimensional aspects of ADHD").

should be based on information available to Plaintiffs as they all involve public statements. Yet not a single statement, advertisement, or other pronouncement is cited, and Defendants' individual roles in these activities are not described in any way.

This startling lack of detail is in sharp contrast to the mountain of information available to Plaintiffs from the hundreds of DSM and ADHD studies, publicly available information, government hearings, and the like covering forty years of DSM and ADHD history. The *Williams* Court pointed out that a wide-ranging fraud – in that case, a national garbage conspiracy – should be accompanied by a wealth, not a dearth, of citable information. *See Williams*, 112 F.3d at 180. The "nature and facts of the case" (*see* Order at 9) thus do not excuse Plaintiffs from Rule 9(b)'s particularity requirement – they justify full adherence instead.

The Amended Complaint has thus not reached any level of specificity that would pass muster under Fifth Circuit case law or comply with the Court's Order.

## II.    Plaintiffs May Not Rely on Discovery and "Information and Belief" Pleading to Support a Speculative Fraud Case Under Rule 9(b).

Plaintiffs have conceded that they are unable to provide any specificity as to the alleged fraud – apparently including any names, dates, places, events, or even specific DSM criteria – because they need discovery to obtain this information. *See* Amended Complaint ¶ 20; *see also id.* ¶ 18 (support for speculation that Novartis drafted part of the criteria is available only through discovery). Plaintiffs' attempt to seek discovery to explain their speculative and conclusory fraud allegations is not proper under Rule 9(b) and does not save their complaint.

Because Rule 9(b) is intended to prevent abusive discovery, the rule stands as a bar to discovery until the particularity requirement is met:

> [R]eady access to the discovery engine all the while has been held back for certain types of claims. An allegation of fraud is one. Rule 9(b) demands a larger role for pleading in the pre-trial defining of such claims. . . . Directly put, the who, what, when, and where must be laid out *before* access to the discovery process is granted.

- 15 -

*Williams v. WMX Technologies*, 112 F.3d 175, 178 (5th Cir. 1997) (emphasis in original). Plaintiffs are not entitled to discovery *in order to* meet Rule 9(b)'s requirements; instead, they must meet the requirements of the rule to be entitled to discovery.[10]

Plaintiffs also admit that they will need discovery to back up the only significant new allegation in the Amended Complaint – that Novartis helped draft ADHD criteria. *See* Amended Complaint ¶¶ 18, 27-28. This allegation is pure speculation.[11] It is pled entirely on "information and belief," and Plaintiffs have not cited a single fact or circumstance to support it. The Fifth Circuit has prohibited the use of "information and belief" pleading as a "license to base claims of fraud on speculation and conclusory allegations," and has required that "information and belief" pleadings be backed up with facts justifying the inference. *Thompson*, 125 F.3d at 903; *see also Waters*, 158 F.R.D. at 109; *Guidry*, 740 F. Supp. at 1216.

In *Waters*, plaintiff supported his claim against a particular defendant by stating that "the evidence will show that Mr. Wallace did make materials representations . . . ." 158 F.R.D. at 109. The court rejected this as an "unsubtantiated claim[] and speculation . . . ." *Id.* Likewise, in *Thompson,* a False Claims Act complaint alleged that "in reasonable probability, based on statistical studies performed by the Government and others,' approximately 40 percent of claims submitted by defendants for services" were in violation of an anti-kickback statute. 125 F.3d at

---

[10]   Plaintiffs' counsel argued for the exact opposite at the October 16 hearing, contending that Plaintiffs should be allowed discovery before pleading their complaint sufficiently under Rule 9(b). *See* Transcript of October 16, 2000 Hearing at 28-29, 36-38. Neither the case law nor Rule 9(b)'s purposes support such an approach.

[11]   Paragraph 18 is peppered with phrases that reveal the entirely speculative nature of this allegation: "Only the internal files of Novartis and APA can fully show their cooperation . . . .;" "based on information and belief, plaintiffs expect to show . . . .;" "[p]laintiffs also will show . . . ." Plaintiffs hope to obtain discovery to support the very allegations they need to plead to survive Rule 9(b). This is inappropriate. *See Williams*, 112 F.3d at 178.

- 16 -

903. The complaint did not identify any basis for this statement, or name any physicians who referred patients for unnecessary services or any specific fraudulent claims. *Id.* The Court rejected these pleadings under Rule 9(b). *See also In re Urcarco Sec. Litig.*, 148 F.R.D. 561, 566 (N.D. Tex. 1993), *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) (United States Supreme Court has discouraged lawsuits based on hypothetical rather than real facts designed to "lay siege to a group of defendants through discovery and just see which side lasts longer . . . ."). Both *Waters* and *Thompson* are non-securities cases, and their specificity requirement for pleading "information and belief" should apply here.

The circumstances of this case, if anything, should require Plaintiffs to support their alleged fraud and conspiracy with considerable degree of specificity before subjecting the APA to the burdens of discovery covering a thirty-year period. The Fifth Circuit has admonished that "when . . . the context strongly suggests that claimed 'fraud' walks close to non-actionable expression of opinion, 9(b) takes on especial force." *Williams*, 112 F.3d at 178. The First Amendment issues arising from this attack on the APA's medical determinations about the ADHD diagnosis certainly qualify for *Williams'* heightened standard and require that Plaintiffs support their case before pursuing an abusive litigation.

Plaintiffs had full notice of the deficiencies of their Complaint and full opportunity to replead. Their failure to comply with the Court's Order justifies dismissal under Rule 12(b)(6). *See Lovelace,* 78 F.3d at 1017, 1021 (dismissal under Rule 12(b)(6) is appropriate mechanism for failure to plead particularity under Rule 9(b)); *Williams*, 112 F.3d at 180 (dismissal after two attempts); *Waters*, 158 F.R.D. at 109-110 (dismissal after one attempt); *Melder*, 27 F.3d at 1102 (plaintiffs do not merit a third attempt).

## CONCLUSION

Plaintiffs were put on notice, both by the Court's Order and Defendants' briefing, of the deficiencies of the Complaint and the specificity required. They failed to make more than a half-hearted effort to rectify the Complaint's deficiencies. Fifth Circuit law supports dismissal, and Defendants therefore request that the Complaint be dismissed under Rule 12(b)(6).

By: _____

Andrew C. Schirrmeister, III, Esq.
State Bar No. 17750650
Southern District of Texas Bar No. 5546
George R. Diaz-Arrastia, Esq.
State Bar No. 05805600
Southern District of Texas Bar No. 12
**Schirrmeister Ajamie LLP**
Pennzoil Place-South Tower
711 Louisiana, 21st Floor
Houston, TX 77002
(713) 860-1600 Telephone
(713) 860-1699 Facsimile

JoAnn E. MacBeth, Esq.
District of Columbia Bar No. 371264
Laurel Pyke Malson, Esq.
District of Columbia Bar No. 317776
**Crowell & Moring LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500 Telephone
(202) 628-5116 Facsimile

Attorneys for
American Psychiatric Association

Dated: December 15, 2000

1768190

- 18 -