IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| Maria Elena Hernandez, <br> Miguel Angel Hernandez, <br> Heather Butler, individually and <br> on behalf of all others similarly <br> situated, <br>    Plaintiffs, <br><br> v. <br><br> CIBA-GEIGY Corp. USA, <br> Novartis Pharmaceuticals Corp. <br> Children and Adults with <br> Attention-Deficit/Hyperactivity <br> Disorder (CHADD) <br> American Psychiatric Association, <br><br>    Defendants | Civil Action No. B-00-82 |

## DEFENDANT CHADD'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant CHADD, Inc. (Children & Adults with Attention-Deficit/Hyperactivity Disorder) ("CHADD") respectfully submits this brief in support of its motion to dismiss plaintiffs' First Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs' second attempt to plead its fraud claims against CHADD with the particularity required by Rule 9(b) fares no better than their first. Accordingly, this Court should dismiss the complaint again, this time with prejudice. *See e.g. Williams v. WMX Tech., Inc.* 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 522 U.S. 966 (1997).

In addition, to the extent plaintiffs are attempting to assert claims against CHADD based upon a purported failure to disclose the side effects of Ritalin, those claims must be dismissed as

a matter of law pursuant to Rule 12(b)(6) because plaintiffs do not, and can not, allege that CHADD had any duty to advise the plaintiffs of such side effects.

I.  **PRELIMINARY STATEMENT**

CHADD is a not-for-profit corporation with tax exempt status under Section 501(c)(3) of the Internal Revenue Code. It was founded in 1987, long after ADD and AD/HD were recognized in the medical community as valid mental disorders. CHADD has more than 20,000 members, most of them from families coping with AD/HD. Its mission is to improve the lives of families coping with AD/HD through education, advocacy, and support. To carry out its mission, CHADD engages in a wide range of activities including the publication of magazines and other printed materials, an annual conference, and outreach efforts before government agencies and legislative bodies. CHADD has never taken the position that any drug, including Ritalin, is a panacea for the treatment of AD/HD; instead, it has been a long time proponent of multi-modal treatment of the disorder. Indeed, despite CHADD's long standing public advocacy, and the easy availability of CHADD's publications, the plaintiffs have not identified even one statement on the part of CHADD to the contrary.

The largest part of CHADD's operating income is derived from membership dues and other contributions from its members. While it has received financial contributions from pharmaceutical companies, including Novartis, in the past, those contributions constitute only a small percentage of its operating budget. And, despite the public availability of information concerning the source of CHADD's operating budget, the plaintiffs do not allege otherwise.

Over the last several years, CHADD has become aware that there are people who disagree with the long prevailing medical consensus that AD/HD is a valid mental disorder. CHADD is also aware that there are people of the opinion that methylphenidate should rarely, if ever, be prescribed to children, regardless of the symptoms they exhibit. CHADD does not agree with these opinions, but it recognizes the right of these people to express their opinions and to exercise their first amendment right to engage in public debate on these issues.

In July 2000, however, CHADD's own right and ability to participate in the public debate on these issues (and its continued financial viability) became jeopardized when it was named a defendant in this lawsuit. CHADD found itself accused by the plaintiffs of participating in a conspiracy of fraudulent misrespresentations and omissions designed to bring about the false diagnosis and improper medication of the very people it serves. And, while the July 2000 complaint seemed to contend that the two other defendants, Novartis and APA, had conspired to bring about the medical community's recognition of a non-valid medical disorder, and the words, "fraud, "conspiracy" and "defendants" were freely thrown about, that initial complaint utterly failed to set forth with particularity any allegation that enabled CHADD to discern what purported fraudulent misrepresentations or omissions on its part justified it being named as a defendant in the lawsuit.

At this Court's October 16, 2000 hearing on the defendants' ensuing Rule 9(b) motions, the plaintiffs conceded that they are not contending that AD/HD does not exist as a valid mental disorder or that methylphenidate is not an effective treatment for AD/HD:

> MR SIEGEL: . . . I think the thrust of our case is that we do not deny that there are a small – what we believe to be a smaller or much smaller number of

> children who have a serious problem, a smaller subset of whom can appropriately be treated with methylphenidate.

[Transcript of October 16, 2000 hearing, at 38-39]. The Court thereafter granted defendants' Rule 9(b) motions, but gave plaintiffs leave to try to cure the deficiencies in their allegations of fraud in an amended complaint. In granting leave, however, this Court made it clear to the plaintiffs that they could not merely make generalized allegations of fraud against the "defendants," but must make particularized allegations as to each individual defendant separately. [October 17, 2000 *Order* at 3-4, 7-8, and n.2].

The First Amended Complaint was filed on November 17, 2000. This new complaint, however, comes no closer to pleading fraud claims against CHADD with the requisite particularity. To be sure, there are a few cosmetic changes, such as the addition of new sections purporting to assert claims against each of the defendants separately. But, as to the allegations of fraud, the amended complaint still utterly fails to set out the who, what, when, and where of any alleged fraudulent misrepresentation or omission on the part of CHADD. Indeed, just like the initial complaint, the First Amended Complaint fails to put CHADD on notice of any misstatements or omissions on its part that could conceivably justify it being a defendant in this lawsuit.

Plaintiffs' continued failure to plead their allegations of fraud with anything like the level of particularity required by Rule 9(b) is not surprising. While the disagreement over the proper criteria for the diagnosis of AD/HD and the overuse of methylphenidate may well be a suitable subject for public debate, it is not appropriate fodder for a fraud lawsuit. The plaintiffs are free to express their opinions concerning AD/HD in the public forum, but they should not be

4

permitted to use this Court as a forum for the airing of their opinions unless and until they can substantiate their loose allegations of fraud and conspiracy with the particularity required by Rule 9(b).

## II. THE COMPLAINT ALLEGATIONS AGAINST CHADD

The First Amended Complaint contains sixty three paragraphs of allegations spanning twenty-one pages. The vast majority of them do not even refer to CHADD either directly or indirectly. Indeed, much of the complaint focuses upon an alleged conspiracy between Novartis and APA to bring about a purportedly improper widening of the criteria used to diagnose AD/HD. The plaintiffs do not contend that CHADD had any role in determining the criteria used to reach the a diagnosis of ADD/ADHD. [*See e.g.* Complaint ¶¶ 16, 21].[1] Nor could they – CHADD came into existence long after ADD/ADHD was recognized in the medical community as a valid mental disorder.

The First Amended complaint also alleges that Novartis failed to warn of "the serious side effects associated with Ritalin, and has similarly failed to disclose the lack of any proof that Ritalin improves long term scholastic performance [Complaint ¶19, 38]." It does not contain

---

[1] The plaintiffs apparently no longer contend that AD/HD is not a valid mental disorder. Instead, the First Amended Complaint proclaims that this lawsuit is now about "the criteria used to reach a diagnosis of ADD/ADHD, the failure to warn of serious side effects associated with Ritalin use, and the failure to acknowledge and disclose that Ritalin does not improve long term scholastic performance." [Complaint ¶ 13]. While the First Amended Complaint now accuses Novartis and APA of conspiring to bring about the adoption of overbroad criteria for the diagnosis of AD/HD, it does not allege what the proper criteria are, it fails to allege that the diagnoses of Miguel Hernandez or Dakota Butler would have been any different under what the plaintiffs deem to be proper criteria, that the doctors of these children improperly prescribed Ritalin to treat their AD/HD, or that Ritalin was not effective in their treatment.

5

even one specific allegation that CHADD failed to make such disclosures. It does contain some generalized allegations that the "defendants" failed to warn of the potential side effects of Ritalin [*See e.g.* Complaint ¶ 24, 25,and 43]. Notably, however, the First Amended Complaint is devoid of any allegation that CHADD had a duty to make these disclosures to the purported class.

The scant allegations in the complaint that actually mention CHADD are more notable for what they fail to allege rather than for what they do allege. For example, the most pointed allegation in the First Amended Complaint involving CHADD appears in Paragraph 11. There, it is alleged that the parents of Miguel Hernandez "considered the representations" made in "literature published by CHADD and paid for by defendant Novartis" in "accepting" their son's diagnosis and Ritalin prescription. [Complaint ¶ 11].[2] Notably, the complaint does not attempt to describe the purported "literature" "considered" by the Hernandez family in any respect.[3] It fails to identify even the general nature or subject matter of the literature. In addition, the complaint does not identify -- even in the most general terms -- the subject matter of the CHADD "representations" that were purportedly "considered."

And, since the complaint does not even allege that the "literature" contained any misrepresentations at all, it is not surprising that it fails to identify any specific misrepresentation

---

[2]  Plaintiffs assert no factual basis for being able to allege in good faith that Novartis "paid for" the CHADD literature purportedly "considered" by the parents of Miguel Hernandez. The fact that CHADD received some donations from Novartis -- a matter of public record -- is simply not enough to justify such an allegation.

[3]  Plaintiffs' inability to identify the CHADD literature "considered" by the Hernandez plaintiffs with any level of specificity is surprising giving the limited universe of CHADD publications and their easy availability. Of course, if plaintiffs had actually identified a particular publication, CHADD would then have had the ability to challenge them to identify a specific misrepresentation or omission.

or omission. Finally, and significantly, while the complaint alleges that the Hernandez family "considered" the CHADD "literature" in "accepting" their son's diagnosis, the complaint fails to allege that they **relied** on any misrepresentation or omission in accepting their son's diagnosis. As for the other family named in the complaint, Heather Butler concedes that she did **not** even review any CHADD literature at all. [Complaint ¶12].

The only other specific allegations in the First Amended Complaint that are directed specifically at CHADD are contained in the section entitled "Allegations Against Defendant CHADD." [Complaint ¶30-34]. There, plaintiffs allege that (1) CHADD petitioned the government for a reclassification of methylphenidate, purportedly at the behest of Novartis, (2) that CHADD has received financial contributions from Novartis, and (3) that CHADD purportedly used the trade name Ritalin, rather than the generic term methylphenidate, in some unspecified literature at some unspecified date. While these allegations, the first two of which have been a matter of public record for years, might be adequate to qualify as "background" contentions in a complaint, they do nothing to explain why the plaintiffs should be allowed to pursue claims for fraud and conspiracy against CHADD.[4]

## III.  ARGUMENT

All of claims asserted against CHADD in the First Amended Complaint rest on

---

[4]  To the extent plaintiffs seek to use these allegations to show evidence of a conspiracy, plaintiffs must first show that the conspiracy is based on an underlying tort. *See Memorandum Opinion and Order* at 7 (October 17, 2000) (*citing Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)).

7

allegations of fraud.[5] Just as was the case with the original complaint, these allegations lack the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Moreover, to the extent the plaintiffs are attempting to assert a claim against CHADD for purported failures to disclose side effects of Ritalin, they fail to state a claim for which relief can be granted because CHADD has no duty to advise the plaintiffs of side effects as a matter of law.

Each of these arguments is addressed in turn.

### A. Plaintiffs' Amended Complaint Fails to Satisfy the Requirements of Rule 9(b) and this Court's October 17, 2000 Order

CHADD and its co-defendants previously briefed this court on the parameters of Rule 9(b). The case law cited in defendants' earlier briefs is incorporated by reference and will not be repeated here. This brief focuses on those cases particularly apposite to the deficiencies in the First Amended Complaint.

The particularity requirement of Rule 9(b) are intended to "ensure[] that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense." *In re Commonwealth Oil*, 467 F. Supp. 227, 250 (W.D. Tex. 1979). A plaintiff must plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what

---

[5] In an apparent attempt to avoid having the requirements of Rule 9(b) applied to their entire complaint, the plaintiffs now call their fraud claim "Fraud and Negligent Failure to Warn." Even if Rule 9(b) could be avoided in fashion, this re-christening is of no moment to CHADD's motion because: (1) the "negligent failure to warn" claim is asserted only against defendant Novartis. [Complaint ¶ 38] and (2) CHADD has no duty to warn of the side effects of a prescription medication. In addition, while plaintiffs use the generalized term "defendants" in their New Jersey statutory claim, they have no basis for asserting a claim against CHADD pursuant to that statute.

the person obtained thereby." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Stated more plainly, "the who, what, when, and where must be laid out before access to the discovery process is granted." *Williams*, 112 F.3d at 178. A complaint that lacks such basic information does not "inform a defendant of the act of which plaintiff complains." *In re Commonwealth Oil*, 467 F. Supp. at 250 and does not meet the particularity requirement of Rule 9(b).

Here, as the above explication of the complaint allegations against CHADD amply demonstrates, plaintiffs have not identified a single alleged misrepresentation or omission on the part of CHADD. The First Amended Complaint's allusions to CHADD "representations" that were "considered" by the parents of Miguel Hernandez simply do not satisfy Rule 9(b). Indeed, since the plaintiffs have not given any indication as to the nature of the CHADD representations allegedly "considered" by plaintiffs, this Court can not rule out that the possibility that the "representations" made by CHADD were to the same effect as the above quoted statement made by Mr. Seigel at the October 16, 2000 hearing – that there are some people who are properly diagnosed with ADHD and that some of them can be effectively treated with methylphenidate. It is abundantly clear that if the plaintiffs could be permitted to go forward with their fraud claim with a pleading that does not rule out the possibility that the "representations" "considered" by the plaintiffs are not substantively different from statements their counsel concede to be true, the particularity requirement of Rule 9(b) is meaningless.[6] This is exactly why a general reference to

---

[6] To state a claim for common law fraud, the plaintiffs must have relied on the alleged fraudulent representations. *See Williams*, 112 F.3d at 177. "Consideration" of allegedly fraudulent material does not rise to the level of reliance. Particularly relevant here is the fact that

9

purportedly fraudulent "literature," without any specification as to why the content of the literature is fraudulent, or without identification of any particular misrepresentation or omission, simply does not satisfy the requirements of Rule 9(b). *See Williams*, 123 F.3d at 177.

The law is also clear that, where a plaintiff has sued multiple defendants, the plaintiff must plead in the particular as to each defendant. *Zuckerman v. Foxmeyer Health Corp.*, 4 F. Supp. 2d 618, 622 (N.D. Tex. 1998). Pleading with particularity as to each defendant serves to "enlighten each defendant as to his or her part in the alleged fraud." *Id. See also, In re Urcarco Sec. Litigation*, 148 F.R.D. 561, 569 (N.D. Tex. 1993.)

This Court found that plaintiffs' initial complaint did not plead with particularity as to each defendant and order plaintiffs to do so in their amended complaint. [*October 17, 2000 Order* at 3-4, 7-8, n.2]. Despite this court's directive, the First Amended Complaint still fails to plead with particularity the alleged fraudulent misrepresentations and/or omissions of each defendant separately. For example, the First Amended Complaint contains several generalized allegations concerning omissions on the part of the "defendants" ("Defendants willfully or negligently failed to warn," "Defendants in all respects failed to advise," and "Defendants have made fraudulent misrepresentations." Amended Complaint ¶¶ 24, 25, 36). Of course, such allegations cannot "enlighten each defendant as to his or her part in the alleged fraud" and simply do not satisfy the requirements of Rule 9(b). *See Zuckerman*, 4 F. Supp. 2d at 622. [7]

---

only a doctor, not CHADD, can prescribe Ritalin7 or some other form of methylphenidate.

[7] The generalized allegations asserted against the "defendants" in paragraph 36 amply illustrate this point. There, plaintiffs claim that "for many years, all Defendants have made fraudulent misrepresentations to the public, the scientific community and the media concerning the scope and extent of ADD and ADHD." [Amended Complaint ¶ 36]. Plaintiffs make no

10

Plaintiffs do make a superficial attempt to comply with this Court's directive to plead specifically as to each defendants by creating new sections in their First Amended Complaint containing specific allegations regarding each defendant. *See* Amended Complaint ¶¶ 21-34. Yet, as noted above, while the First Amended Complaint's Section 7 contains specific allegations *about* CHADD, it does not contain any allegations concerning the alleged misrepresentations or omissions on the part of CHADD. Indeed, the specific allegations contained in the CHADD section do not even refer to any misrepresentations or omissions at all.

Finally, plaintiffs cannot avoid the requirements of Rule 9(b) by stating –

> Since discovery in this case has not taken place, plaintiffs are unable to recite in this complaint the particulars of every misstatement, misrepresentation of [sic] omission made by plaintiffs.

[Amended Complaint ¶ 20.] Rule 9(b) prohibits a plaintiff from going forward with a lawsuit for fraud on the theory that sooner or later discovery may reveal a misrepresentation or omission. *See e.g. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.2d 899, 903 (5th Cir. 1997). On this point, it is worth noting that it strains credulity for the plaintiffs to claim, as they do, that Maria and Miguel Herndandez "considered" CHADD literature in "accepting" the diagnosis of a physician, but they need discovery to find out what the misrepresentations or omissions were made by CHADD.

In sum, the First Amended Complaint does not plead fraud claims against CHADD with any more particularity than the initial complaint. It falls woefully short of satisfying the

---

attempt to elucidate each defendant's role the alleged grandiose fraud. And, CHADD is given absolutely no indication as to what statements it made to defraud "the media," or the "scientific community."

11

requirements of Rule 9(b), and should be dismissed.

**B.     Plaintiffs' Complaint Fails to State a Claim for Which Relief Can be Granted**

To the extent the plaintiffs are purporting to assert a claim against CHADD (*See* Amended Complaint ¶¶ 24, 25 and 35) for failing to disclose the potential side effects of Ritalin, those claims are inadequate as a matter of law and must be dismissed.

Under Texas law, in order to prevail upon a fraud claim based upon a defendant's failure to disclose, the plaintiff must establish that the defendant had a duty to disclose the information. *Gibraltar Savings v. LDBrinkman Corp.*, 860 F.2d 1275, 1298 (5th Cir. 1988); *Chemetron Corp. v. Business Funds Inc.*, 682 F.2d 1149, 1171-72, *vacated on other grounds*, 460 U.S. 1007 (1983).

Here, the plaintiffs do not even plead that CHADD has a duty to plaintiffs to disclose the side effects of Ritalin®. Nor could they. The law is clear: while drug manufacturers have certain duties to warn of the side effects of its medications, and doctors have duties to their patients to warn of side effects of medications, CHADD -- which is neither the manufacturer nor the prescribing doctor to the plaintiffs, had no duty to warn them of the potential side effects of Ritalin. *See Morgan v. Wal-Mart Stores, Inc.*, N0. 03-99-00700, 2000 Tex. App. LEXIS 5282, at *19 (Tex. Ct. App. August 10, 2000). As the Court in that case held, a drug manufacturer has a duty to warn a physician of the drug's dangers, while the physician "relying on his medical training, experience, and knowledge of the individual patient . . . assumes the duty to warn the patient of dangers associated with a particular prescribed drug." *Morgan*, 2000 Tex. App. LEXIS 5282, at *19. Indeed, as a general rule, even the drug manufacturer's duty extends only to the

physician; it does not extend to consumers. *Swayze v. McNeil Laboratories, Inc.*, 807 F.2d 464, 470 (5th Cir. 1987). In *Morgan*, the Court held that imposing a duty to warn on pharmacists would impose an undue burden on the doctor/patient relationship. That being the case, there is no basis in law or logic to believe a Texas Court would extend such a duty to warn to CHADD.

13

## IV. CONCLUSION

For the foregoing reasons, plaintiffs First Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

Tom A. Lockhart          Federal I.D.#2257
Adams & Graham, LLP
222 East Van Buren, West Tower
Harlingen, TX 78550
Telephone: (956) 428-7495
Facsimile:  (956) 428-2954

Gerald Zingone     SB# 396604
Marcus Meeks
Arent Fox Kintner Plotkin & Kahn PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
Telephone: (202) 857-6000
Facsimile:  (202) 857-6395

Dated: December 15, 2000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing instrument was forwarded to all attorneys of record, on this the 15th day of December, 2000.

Mr. Charles S. Siegel
**LAW OFFICE OF CHARLES S. SIEGEL**
3219 McFarlin, Suite 200
Dallas, Texas  75205
**Via CMRRR# 7000 1670 0000 5045 3497**

Mr. C. Andrew Waters
Mr. Peter Kraus
**WATERS & KRAUS**
4807 West Lovers Lane
Dallas, Texas  75209

Mr. Frank Costilla
**LAW OFFICES OF FRANK COSTILLA**
5 East Elizabeth Street
Brownsville, Texas  78520

Mr. Earl B. Austin
**BAKER & BOTTS, L.L.P.**
2001 Ross Avenue
Dallas, Texas  75201-2980

Mr. James A. O'Neal
Mr. Joseph M. Price
**FAEGRE & BENSON, L.L.P.**
2200 Norwest Center
90 South Seventh Street
Minneapolis, MN  5504-3901

Mr. Eduardo Roberto Rodriguez
**RODRIGUEZ, COLVIN & CHANEY, L.L.P.**
1201 East Van Buren
Brownsville, Texas  78522

Mr. Robert P. Charrow
**CROWELL & MORING**
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004

Mr. Andrew C. Schirrmeister, III
**SCHIRRMEISTER AJAMIE, L.L.P.**
Pennzoil Place-South Tower
711 Louisiana, 21st Floor
Houston, Texas  77002

_____
TOM LOCKHART