

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 2 1 2000

Michael N. Milby
Clerk of Court

| | |
|---|---|
| Maria Elena Hernandez, | ) |
| Miguel Angel Hernandez, | ) |
| Heather Butler, individually and | ) |
| on behalf of all others similarly | ) |
| situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. B-00-82 |
| | ) |
| CIBA-GEIGY Corp. USA, | ) |
| Novartis Pharmaceuticals Corp., | ) |
| Children and Adults with Attention- | ) |
| Deficit/Hyperactivity Disorder (CHADD), | ) |
| American Psychiatric Association, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT AMERICAN PSYCHIATRIC ASSOCIATION'S
MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS AMENDED COMPLAINT UNDER RULE 12(b)(6)**

Defendant the American Psychiatric Association ("APA") seeks dismissal of the Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to allege sufficiently any causal link

between the APA's publication of the *Diagnostic and Statistical Manual* ("DSM") and Plaintiffs'

alleged injury.

## STATEMENT OF THE ISSUE

The APA's motion requires the Court to determine the sufficiency of the Amended

Complaint under Rule 12(b)(6), and in particular whether Plaintiffs have pled sufficient causation.

The Amended Complaint contains no allegations supporting the claim that the allegedly "overbroad"

ADHD criteria in the DSM caused Plaintiffs' claimed injuries, *e.g.,* the "needless" purchase of

Ritalin, or indeed whether the DSM is even responsible for an improper diagnosis of the named

Plaintiffs' children. Because adequate causation is not alleged, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.[1]  The supporting authority and standard of review are discussed below.

## SUMMARY OF THE ARGUMENT

Plaintiffs have now admitted that attention deficit hyperactivity disorder ("ADHD") is a legitimate childhood disorder, and that their lawsuit is only about improperly diagnosed children. This revised theory requires Plaintiffs to distinguish between properly and improperly diagnosed children, especially as to the named Plaintiffs' own children.  To state a claim against the APA, Plaintiffs must allege (with specificity under Rule 9(b)) a causative link between the ADHD criteria in the DSM[2] and a misdiagnosis or improper prescription by a treating psychiatrist or other professional under the circumstances these children presented.

Plaintiffs' Amended Complaint entirely omits this essential causation element.  Plaintiffs have failed to allege that the purportedly "overbroad" criteria in the DSM played any role in their own children's diagnoses.   These children could not have been diagnosed with ADHD and prescribed Ritalin, as the Complaint alleges, unless they were seen by a professional clinician who diagnosed ADHD and/or a licensed physician or psychiatrist who examined them, confirmed the diagnosis, and wrote a prescription for Ritalin.  The most critical element of Plaintiffs' claim – what

---

[1]     The APA has also moved under Rule 9(b) to dismiss the Amended Complaint for failure to plead Plaintiffs' allegations against each Defendant with sufficient specificity. *See* Defendant APA's Motion to Dismiss Amended Complaint Under Rule 9(b) filed Dec. 15, 2000.  Even if the Amended Complaint were sufficient under Rule 9(b), it nevertheless fails to state a claim on which relief can be granted, as set forth herein.

[2]     As reflected in prior pleadings filed with this Court, the DSM is the APA's classification of mental disorders, published in various editions since 1952 (DSM in 1952, DSM-II in 1968, DSM-III in 1980, DSM-III-R in 1987, DSM-IV in 1994).

these professionals did – is totally missing from the Amended Complaint. The complaint does not allege that the prescribing physicians used or relied on the DSM for their determinations to prescribe Ritalin; how the DSM affected their decision; or whether any particular "overbroad" criteria formed the basis for any alleged misdiagnosis of the children. Even more fundamentally, Plaintiffs have not even alleged that the prescribing physicians made an improper diagnosis, only that the parents themselves would have *rejected the diagosis* if they had known of the APA's "financial relationships" and the nature of the criteria.

Plaintiffs have thus failed to allege the critical causal link between the APA's alleged "fraud" or "misrepresentation" – the purported fraudulent publication of "overbroad" ADHD criteria in the DSM – and the Plaintiffs' injuries. Without linking up the allegedly "overbroad" ADHD criteria in the DSM to the application of those criteria by medical professionals in a manner that resulted in a misdiagnosis and the purchase of "non-medically necessary" Ritalin by particular individuals, Plaintiffs fail to plead facts to support proximate causation of their injury – an essential element, the absence of which is fatal to Plaintiffs' claim. *See, e.g., Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995), *appeal on other grounds after remand*, 115 F.3d 294 (5th Cir. 1997).

The APA believes Plaintiffs' failure to include the critical causation element is not an oversight or mistake. Plaintiffs wish to portray the DSM criteria for ADHD as monolithic standard that dictates diagnostic decisions. In fact, however, the diagnostic criteria are intended as a guide, to be applied and interpreted under the independent medical judgment of trained practioners, and not as a mechanical checklist. The independent role of these diagnosing and prescribing professionals undercuts Plaintiffs' lawsuit, and especially their possible class action. By ignoring the essential role of these professionals, however, Plaintiffs are left with a fundamentally flawed complaint that does

not state a claim against the APA.  The APA therefore moves for dismissal of the lawsuit under Fed. R. Civ. P. 12(b)(6).

## NATURE AND STAGE OF PROCEEDINGS

The status of this case is set forth in the APA's motion to dismiss under Fed. R. Civ. P. 9(b), filed on December 15, 2000.  The Court has decided to resolve the Rule 9(b) issues before proceeding to Defendants' motions to bifurcate discovery and the case management plan.  *See* Order, October 17, 2000, at 11.  This instant motion under Rule 12(b)(6) similarly seeks dismissal of the Amended Complaint, but on different grounds.  The APA has provided, in prior pleadings to this Court, background information regarding the APA, the DSM, and the process by which the diagnostic criteria for ADHD were developed.[3]  The limited background necessary for this Motion is as follows:

The Amended Complaint contains numerous *general* allegations that the APA "planned, conspired, and colluded to create, develop, promote, and confirm the diagnoses of [ADD] and [ADHD], by vastly and needlessly overbroad diagnostic criteria, in a highly successful effort to increase the market for its product Ritalin."  Amended Complaint ¶ 21; *see also* ¶¶ 16, 18, 27-29, 43.  Plaintiffs allege that "[i]n so doing, . . . [the APA] aided, abetted and promoted the concept of Ritalin therapy for treatment of the vast numbers of children who began to be diagnosed with ADD and ADHD, pursuant to the APA's recommendations and support for the diagnosis"  *Id.* ¶ 28.  Similarly, Plaintiffs generally claim that they "needlessly" purchased the drug Ritalin and "would

---

[3]     *See* APA's July 11, 2000 Motion to Dismiss Under Rule 9(b); September 5, 2000 Reply in Support of Motion to Dismiss Under Rule 9(b); October 2, 2000 Supplemental Submission in Support of Defendant's Proposed Discovery/Case Management Plan.

4

not have accepted the diagnosis [of ADHD] . . . nor . . . permitted the prescription and drugging" of

their children had they "known the financial relationships and connections" among the Defendants

and of the "extremely subjective and broad nature of [the DSM's ADHD] criteria." *Id.* ¶¶ 11, 12.

Ritalin, the trade name for a pharmacological substance known as methylphenidate, is a Class

II, or Schedule II, controlled substance under the Controlled Substances Act. 21 U.S.C. § 812; 21

C.F.R. § 1308.12; Amended Complaint ¶ 7. As a matter of law, APA is not authorized to

"manufacture, distribute, or dispense" controlled substances, and therefore is prohibited from selling

Ritalin. 21 U.S.C. § 841(a). Prescriptions of Ritalin are controlled by federal and state law, and the

drug can only be prescribed by a licensed physician or psychiatrist after an independent diagnosis

that the prescription is medically appropriate. 21 U.S.C. § 829(a); 21 C.F.R. § 1306.04; Tex. Health

& Safety Code Ann. §§ 481.061, 481.063, 481.074.

Apart from the Plaintiffs' general allegations described above, the Amended Complaint does

not contain any specific allegations relating the actions of the APA to the children of the two named

Plaintiffs. Plaintiffs do not allege that they purchased Ritalin from the APA or that they read the

DSM and made their own diagnoses of their children (nor could they). Nor do they allege that the

clinicians who diagnosed ADHD or the physicians who prescribed Ritalin relied on the allegedly

"overbroad" criteria when they made their determinations regarding these Plaintiffs. Indeed,

Plaintiffs make no mention whatsoever of their children's physicians and never allege even that the

diagnosis of ADHD and prescription of Ritalin in their cases were not medically indicated.

Likewise, the Amended Complaint does not contain any allegation that there is any

connection between Defendants' alleged financial relationships and their children's diagnoses, or

relationship between Plaintiffs and the APA which would give rise to a "duty of disclosure" with

respect to either APA's financial relationship or the process by which diagnoses are developed and included in the DSM.

## ARGUMENT

**THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST THE APA FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

### A.    Fraud-Based Complaints that Fail to Allege Essential Causation Facts Are Subject to Dismissal Under Rule 12(b)(6).

Plaintiffs have pled three causes of action in the Amended Complaint, common law fraud,[4] common law conspiracy (based on the fraud), and violations of the New Jersey Consumer Fraud Act. Each of these counts requires a nexus between the alleged fraudulent activity and the claimed injury to the plaintiffs. *See Oppenheimer v. Prudential Securities*, 94 F.3d 189, 194 (5th Cir. 1996) (elements of fraud include misrepresentation which was acted and relied upon and caused injury), citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990)); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (conspiracy requires damages "as the proximate result" of the alleged conspiratorial acts); *Feinberg v. Red Bank Volvo*, 752 A.2d 720, 723 (N.J. Super. Ct. App. Div. 2000) (Consumer Fraud Act requires proof that the "unlawful consumer fraud caused [plaintiff's] loss"), quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454 (N.J. 1994)).

Rule 12(b)(6) requires dismissal of claims when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Although courts considering a motion to dismiss must "construe the complaint

---

[4]      The Amended Complaint has added "negligent failure to warn" to the title of the fraud count, but this added count applies only to Novartis. *See* Amended Complaint ¶¶ 38.

6

liberally in the plaintiff's favor and accept all factual allegations in the complaint as true," *Kennedy v. Tangipahoa Parish Lib. Bd. of Control*, 224 F.3d 359, 365 (5th Cir. 2000), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent . . . dismiss[al]" under the Rule, *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Beanal v. Freeport-McMoran, Inc.*, 197 F.3d at 168 (dismissing complaint "saturated with conclusory allegations devoid of any underlying facts to support [Plaintiffs'] claim," as "facially insufficient to withstand a motion to dismiss under Rule 12(b)"); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997) (recognizing same principle).

This is particularly the case when facts essential to an element of plaintiffs' claim, such as causation, are not pled. *See, e.g., Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) ("While [plaintiff] has pled the conclusory allegation that the defendants here 'conspired,' nowhere does he allege facts implying any agreement to commit predicate acts of racketeering. Therefore, [his] claim . . . must . . . fail."), *appeal on other grounds after remand*, 115 F.3d 294 (5th Cir. 1997); *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995) (affirming dismissal of § 1983 suit against City of Houston where plaintiff "failed to allege facts supporting a § 1983 claim against the City"); *Fernandez-Montes*, 987 F.2d at 285 (dismissing plaintiff's claim because he "failed to demonstrate 'just cause,' an essential element of [his] claim"). Likewise, when it is clear, as a matter of law, that the facts as pled cannot support a claim against a party, that claim must be dismissed. *See, e.g., Crocker v. Mallinckrodt Med., Inc.*, No. G-96-245, 1996 WL 498188 (S.D. Tex. June 17, 1996) (dismissing plaintiff's federal employment discrimination claim pursuant to Rule 12(b)(6) where defendants were not alleged to be plaintiff's employer and, thus, not liable under the applicable statute, citing *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir. 1994)).

7

Because Plaintiffs have failed to allege essential facts that would causally connect the APA's alleged wrongdoing to Plaintiffs' alleged "needless purchases of Ritalin," the Amended Complaint must be dismissed pursuant to Rule 12(b)(6).

**B.      The Diagnosis of ADHD and Prescription of Ritalin Require More than the Mere Publication of the DSM.**

Plaintiffs' Amended Complaint fails to recognize the necessary and independent role of the professionals who diagnose ADHD and prescribe Ritalin.[5]  A diagnosis of ADHD and development of a treatment plan requires a series of events that can only *begin* with the DSM, to the extent the DSM is involved at all.  The DSM itself functions as a guide, like any medical textbook, which must be applied and used along with numerous other diagnostic tools, interpreted and applied through the independent judgment of a trained clinician.  *See* DSM-IV at xxv (Intro.) ("Making a DSM-IV diagnosis is only the first step in a comprehensive evaluation.  To formulate an adequate treatment plan, the clinician will invariably require considerable additional information about the person being evaluated beyond that required to make a DSM-IV diagnosis.").  The DSM in fact *specifically cautions* that "[t]he proper use of these criteria requires specialized clinical training that provides both a body of knowledge and clinical skills."  *Id.* at xxvii (Cautionary Statement).[6]  The  DSM

---

[5]      The DSM's ADHD criteria are designed to be used for diagnostic purposes by properly trained child clinicians, including psychiatrists, psychologists, social workers, and pediatric physicians.  *See* DSM-IV at xxiii (Intro.)  ("It is important that DSM-IV not be applied mechanically by untrained individuals.")  Medication such as Ritalin, however, can only be prescribed by licensed physicians, including psychiatrists.  *See supra* discussion at p.5.  Physicians can thus both diagnose and prescribe, whereas other, non-physician clinicians may diagnose and develop treatment plans but must refer the child to a psychiatrist or other physician for appropriate medication.

[6]      Physicians in fact would ordinarily utilize additional tools for diagnosis, including, for instance, the well-known *Physicians' Desk Reference*, which reproduces the FDA-approved description of Ritalin, including its indications, adverse side effects, and

(continued...)

8

criteria for ADHD are undoubtedly widely used because they reflect the most comprehensive, expert review of published literature on the subject, but *whether and how* the DSM criteria are used in the circumstances of a particular child remains a highly individualized process that can vary based on the practices and judgment of the diagnosing professionals.

In addition, even after a diagnosis is made, the prescription of Ritalin remains a further step in the process that requires evaluation and judgment by a prescribing psychiatrist or other physician. Although Ritalin has been shown through many studies to be a highly effective treatment for ADHD, it is not the only form of treatment and may not be appropriate in all circumstances. When it is appropriate, it can be prescribed only by a licensed physician. More particularly, as Plaintiffs assert, Ritalin is a "Schedule II" psychostimulant drug under the Controlled Substances Act. 21 U.S.C. § 812; 21 C.F.R. 1308.12; Amended Complaint ¶ 7. As such, under federal and state statutes, including the Texas Controlled Substances Act, Ritalin may not be purchased without a prescription from a licensed health practitioner. *See* 21 U.S.C. § 829(a); 21 C.F.R. § 1306.04; Tex. Health & Safety Code Ann. §§ 481.061, 481.063, 481.074.

It is the clinician's task to diagnose the patient and – in light of a thorough evaluation and guided by the medical literature – to recommend an appropriate course of treatment. It is the clinician's experience and knowledge – some (or none) of which may come from the DSM – that determines the clinician's diagnosis and prescribed medication, if any. Without the role of these

───────────────

(...continued)

appropriate warnings, along with an independent description of ADHD symptoms in children *See Physicians' Desk Reference* at 2040-41 (2000), attached as Exhibit B to APA's September 5, 2000 Reply in Support of Motion to Dismiss under Rule 9(b).

clinical intermediaries, the patient cannot purchase the drug.  The mere publication by the APA of diagnostic criteria for ADHD cannot, as a matter of law, proximately cause the injury alleged. Books, or other medical literature, do not practice medicine, diagnose patients, or write prescriptions.

### C.   The Amended Complaint Fails to Allege Any Causal Link Between Actions of the APA and the Alleged Injury to the Named Plaintiffs.

Plaintiffs' Amended Complaint is fatally flawed because it fails to allege any link between the purported "overbroad" criteria in the DSM and any inappropriate diagnosis and treatment of their children.  Plaintiffs allege *generally* that the APA fraudulently broadened the diagnostic criteria for ADHD and made unspecified misrepresentations to promote the diagnosis of ADHD.  Amended Complaint ¶¶ 27, 28, 36, 39, 40.  These general allegations, however, are insufficient to prove causation unless Plaintiffs can link those general allegations with a specific injury to them or their children.  The Amended Complaint fails to do so in several key respects:

(1)  *Plaintiffs do not allege any reliance on the DSM by the diagnosing and prescribing professionals.*  Plaintiffs never allege the first essential causal link, namely, that the children's diagnostician relied on the DSM to reach a wrong diagnosis.  There are no allegations that anyone used the DSM criteria to diagnose these children, or that the misdiagnosis was the result of any overbroad criteria in the DSM such that the diagnosis would not have occcurred otherwise. [7]

---

[7]   It is not surprising that Plaintiffs have failed to plead this element of their claim, given their position, as stated in the October 16, 2000 hearing before this Court, that only *some* Ritalin is improperly prescribed and purchased, and the consequent burden of having to identify which purchases are the subject of the Complaint.  Moreover, pleading this element will pose fundamental problems at the class certification stage, since the Plaintiffs will have been prescribed Ritalin by various different doctors, relying on different pieces of information and making different clinical judgments, all of which will raise a multitude of individual fact issues which would undermine their bid for class certification.

Inexplicably, the Amended Complaint does not even identify who the diagnosing professionals were or describe their actions in any way.  This gap in any causal connection between the APA's activity and the children for whom Ritalin was allegedly "needlessly" purchased is sufficient for dismissal in and of itself.

(2)    *Plaintiffs do not allege any improper prescription of Ritalin.*  In addition to failing to allege any reliance on the DSM for diagnostic purposes, Plaintiffs also do not address the next link in the causal sequence, an improper prescription of Ritalin that was caused by fraudulently "overbroad" DSM criteria.  Once again, the prescribing professional is not even identified, nor does the Amended Complaint state anywhere the reasons the prescribing physician chose Ritalin to treat these children.  Nor have Plaintiffs alleged that had the criteria been "narrower" in some unspecified way, these physicians would have prescribed a *different* medication – or none at all.  There are thus no allegations linking any DSM criteria with the decision to provide Ritalin to these particular children.

(3)    *Plaintiffs do not allege that their children were misdiagnosed.*  As a further flaw, the Amended Complaint does not even allege that the named Plaintiffs' children do not actually have ADHD.  Plaintiffs have admitted that ADHD does exist, and that at least some children are properly diagnosed with ADHD and properly treated with Ritalin.  Thus, it is critical for the Plaintiffs to allege and prove that these children are among the purported group that does *not* have ADHD and for whom Ritalin was entirely ineffective.  Plaintiffs allege obliquely that their purchases of Ritalin were "unnecessary" but never explain why.  Instead, the parents state only that they would have "not have accepted" the diagnosis given to them if they had known of the financial relationships among the Defendants and the "subjectivity" and "overbreadth" of the DSM criteria.  Amended

11

Compliant ¶¶ 10, 11. They do *not* allege that the purchases were unnecessary because their children do not have, and never had, ADHD and were thus misdiagnosed. The Amended Complaint can be fairly read as alleging that the children may have ADHD, and indeed that Ritalin was correctly prescribed, but the parents would have refused to recognize the diagnosis or allow them to be properly treated. This is not sufficient causation for a claim against the APA.

(4)     *Plaintiffs do not allege any direct injury attributable to the APA.* Because of the absence of any links between any alleged overbroad DSM criteria and these children, coupled with the absence of an allegation that the children were misdiagnosed, Plaintiffs have failed to allege that they have suffered any injury from the APA's actions. The children's usage of Ritalin, based on the allegations, may well have been beneficial. In fact, at least one and perhaps both of the children continued to take Ritalin until and even after the original complaint was filed.[8] The parents may feel their purchases were "unnecessary"[9] because they distrust the APA, but they are not legally injured by that mistrust.

It is not sufficient for Plaintiffs to allege, as they have here, that *they* relied on Defendants' misrepresentations regarding the "scope and extent of ADD and ADHD" and "warn[ings of] the side effects of Ritalin, and its lack of efficacy."[10] Amended Complaint ¶¶ 36-38. Plaintiffs cannot

---

[8]     *See* Amended Complaint ¶¶ 11, 12 (Hernandez took Ritalin taken "until June, 2000" and Butler "until May, 2000;" original complaint filed in May 2000).

[9]     The purchases could also have been "unnecessary" because Ritalin was not the proper treatment regime for these two children, even though they legitimately have ADHD. The DSM does not recommend Ritalin or other treatment regimes and could not be responsible if Ritalin was an ineffective prescription for properly diagnosed ADHD. The Amended Complaint does not state a claim against the APA because it does not allege that the Ritalin prescription was ineffective because of misdiagnosis based on fraudulently overbroad DSM criteria.

[10]     It is not at all clear from the Amended Complaint whether these allegations regarding the
(continued...)

legally diagnose ADHD or prescribe Ritalin for their own children. Similarly, publications like the DSM, or other alleged statements by the APA, cannot diagnose ADHD. Only a misdiagnosis by the treating professionals involved could have caused injury, and this is not alleged.

For the same reason, allegations regarding the financial relationships among Defendants are not enough to fill in the causation and injury gaps in the Amended Complaint. Plaintiffs have not alleged any causal link between the APA's alleged failure to disclose information regarding its "financial relationship[s]"[11] and any possible injury arising from a misdiagnosis or wrong prescription. For the reasons identified above with respect to APA's publication of the DSM, the Plaintiffs own lack of knowledge regarding the APA's finances cannot *cause*, in any practical or legal sense, an improper diagnosis of ADHD or prescription of Ritalin by a treating professional.

Plaintiffs have constructed their Amended Complaint, read generously, to allege that the DSM *may* have furnished one of several indirect conditions on which the supposed injury (i.e., "unnecessary" use of Ritalin) is based. This is not enough. *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (dismissing fraud claim against accounting firm whose audit could only have formed the condition that made the plaintiff's injury possible) (*citing Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995) ("Legal cause is not established if the defendant's conduct or product *does no more than furnish the condition that makes the plaintiff's injury possible.*") (emphasis

---

(...continued)
side effects and "lack of efficacy" of Ritalin are even directed to the APA. To the extent that Plaintiffs intend to challenge any representation by the APA regarding the side effects and efficacy of Ritalin, they have not identified any such statements or alleged that such statements deviated from FDA-approved labeling for the indications and side effects of Ritalin.

[11] Nor have Plaintiffs pled facts to support a relationship between Plaintiffs and the APA which would give rise to a legal duty to disclose such information.

supplied)).  Absent the necessary allegations linking the DSM directly to the children's diagnosis

and prescription, the Amended Complaint does not state a claim against the APA.

## CONCLUSION

Even taken as true, Plaintiffs Amended Complaint does not allege an entire series of critical

causal allegations.  For the reasons discussed above, the APA requests that the Amended Complaint

be dismissed with prejudice.

Respectfully submitted,

By: _____

Andrew C. Schirrmeister, III, Esq.
State Bar No. 17750650
Southern District of Texas Bar No. 5546

Attorney-in-Charge for
American Psychiatric Association

**OF COUNSEL:**
George R. Diaz-Arrastia, Esq.
State Bar No. 05805600
Southern District of Texas Bar No. 12
Schirrmeister Ajamie LLP
Pennzoil Place-South Tower
711 Louisiana, Suite 2150
Houston, TX  77002
(713) 860-1600 Telephone
(713) 860-1699 Facsimile

JoAnn E. MacBeth, Esq.
District of Columbia Bar No. 371264
Laurel Pyke Malson, Esq.
District of Columbia Bar No. 317776
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
(202) 624-2500 Telephone
(202) 628-5116 Facsimile

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by certified mail, return receipt requested in accordance with the Federal Rules of Civil Procedure, on this _20th_ day of December, 2000.

Frank Costilla
Law Offices of Frank Costilla
5 East Elizabeth Street
Brownsville, Texas 78520

Andrew Waters/Peter Kraus
Waters & Kraus
4807 West Lovers Lane
Dallas, Texas 75209

Charles S. Siegel
Law Office of Charles S. Siegel
3219 McKinney Avenue, Suite 2000
Dallas, Texas 75204

William Anderson/Laurel Pyke Malson
Crowell & Moring, L.L.P.
1001 PennsylvaniaAvenue, N.W.
Washington, DC 20004-2595

Eduardo Rodriguez
Rodriguez, Colvin & Chaney
1201 East Van Buren Street
P.O. Box 2155
Brownsville, Texas 78520

James A. O'Neal/Joseph M. Price
Faegre & Benson, L.L.P.
2200 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402-3901

Tom A. Lockhart
Adams & Graham, L.L.P.
222 E. Van Buren, W. Twr.
Harlingen, Texas 78550

Andrew C. Schirrmeister III