66

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 6 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| Maria Elena Hernandez,<br>Miguel Angel Hernandez,<br>Heather Butler, individually and<br>on behalf of all others similarly<br>situated,<br>　　　　　Plaintiffs,<br><br>v.<br><br>CIBA-GEIGY Corp. USA,<br>Novartis Pharmaceuticals Corp.<br>Children and Adults with<br>Attention-Deficit/Hyperactivity<br>Disorder (CHADD)<br>American Psychiatric Association,<br><br>　　　　　Defendants | Civil Action No. B-00-82 |

### DEFENDANT CHADD'S REPLY BRIEF IN FURTHER SUPPORT OF ITS RENEWED MOTION TO DISMISS

Defendant CHADD, Inc. (Children & Adults with Attention-Deficit/Hyperactivity Disorder) ("CHADD") respectfully submits this reply brief in further support of its Renewed Motion to Dismiss the First Amended Complaint pursuant to Rules 9(b) and 12(b)(6). Plaintiffs' opposition brief utterly fails to demonstrate that the First Amended Complaint pleads a viable claim against CHADD. And, plaintiffs' third bite at the apple (the proposed Second Amended Complaint) still fails to provide any basis for this Court to allow plaintiffs to proceed further against CHADD. Accordingly, CHADD's motion should be granted.

### I.　　PRELIMINARY STATEMENT

This lawsuit is one of three that have been filed in the last year by an overlapping group of counsel on behalf of purported classes of individuals who are claimed to have

suffered some unspecified injury because they have taken the drug Ritalin (a Novartis brand name for methylphenidate) as a treatment for Attention Deficit/Hyperactivity Disorder.[1]   The history of these three lawsuits makes it clear that the litigation thus far has been a "cause" that has been clumsily searching for a cause of action.   And, importantly, for purposes of the Court's resolution of this motion, it is clear that CHADD was chosen as a target in this litigation long before plaintiffs' counsel had even settled upon the theory for their lawsuits, let alone a legitimate basis for asserting a claim against CHADD.

The decision to name CHADD as a defendant in this litigation has been questionable from the start.   The original complaint in this lawsuit contended that Attention Deficit Disorder ("ADD") and Attention Deficit/Hyperactivity Disorder ("AD/HD") are not valid mental disorders and that their recognition as such was the result of a conspiracy between Novartis and the American Psychiatric Association ("APA").   Yet, there was nothing in that original complaint that even remotely suggested why CHADD, a support group for families coping with ADD and/or AD/HD diagnoses, was named as a defendant in the lawsuit.

In response to this Court's dismissal of the original complaint pursuant to Rule 9(b), the plaintiffs changed the entire nature of the conspiracy alleged.   In the First Amended Complaint, it is now alleged that the plaintiffs have been injured as the result of a conspiracy on the part of Novartis and the APA to improperly broaden the criteria listed in the Diagnostic and Statistical Manual of Mental Disorders ("DSM") for diagnosing ADD and AD/HD, thereby resulting in the prescription of Ritalin to children who do not need it.

---

[1]      The others are: *Hernandez v. Ciba-Geigy* (Southern District of Texas) and *Dawson v. Ciba-Geigy* (District of New Jersey).

As Novartis and the APA amply demonstrate in the motions they have simultaneously filed in this Court, the plaintiffs have not advanced much more in support of this different conspiracy beyond wild and implausible speculation. From CHADD's perspective, however, the remarkable thing about this new conspiracy theory is that CHADD continues to be named as a defendant in this and the related lawsuits even though plaintiffs do not -- and cannot -- allege that CHADD participated in this alleged conspiracy or even had the remotest inkling of its existence. Indeed, as CHADD stated in its opening brief, and as we discuss further below, the few disparate allegations in the First Amended Complaint that actually refer to CHADD still fall woefully short of satisfying the requirements of Rules 9(b) and 12(b)(6). Indeed, it is telling that plaintiffs' defense of the sufficiency of the First Amended Complaint is half-hearted at best. Notably, plaintiffs' opposition brief barely even addresses the sufficiency of the fraud allegations asserted against CHADD in the First Amended Complaint. Instead, plaintiffs effectively concede that they are already prepared to abandon their First Amended Complaint in favor of a proposed Second Amended Complaint. And, while the sufficiency of the proposed Second Amended Complaint is not technically at issue here, it also fails to set forth a claim against CHADD that withstands scrutiny under Rules 9(b) and 12(b)(6).

At this point, plaintiffs' persistence in pursuing claims against CHADD, even though they have not pled even one fact connecting CHADD with any fraudulent acts or wrongdoing, defies logic and raises the legitimate question of whether plaintiffs' counsel has satisfied it Rule 11 obligations in certifying to the Court that the claims against CHADD have evidentiary support. *See* Fed. R. Civ. P. 11(b)(3); *Carona v. Falcon Services Co.*, 72 F.

3

Supp. 2d 731, 733 (S.D. Tex. 1999). Plaintiffs have now taken three stabs at drafting a

complaint that pleads a viable claim against CHADD and have failed to do so. Accordingly,

even in the unlikely event this Court determines that the plaintiffs should be permitted to

proceed further with their claims against the other defendants, this Court should dismiss the

claims against CHADD.

## II.   ARGUMENT

### A.   Plaintiffs Have Still Failed to Satisfy the Pleading Requirements of Rule 9(b).

As this Court recognized when it dismissed plaintiffs' original complaint, Fifth Circuit

law is clear: Rule 9(b) requires the plaintiffs to state with some level of particularity the

"time, place and contents of the false representations" alleged. *Williams v. WMX Tech., Inc.*

112 F.3d 175, 177 (5th Cir. 1997). A complaint that lacks such basic information does not

"inform a defendant of the act of which plaintiff complains" (*In re Commonwealth Oil*, 467 F.

Supp. 227, 250 (W.D. Tex. 1979)) or otherwise provide the defendant "adequate notice" of

the fraud allegedly committed. *See Memorandum Opinion and Order* at 9.

Plaintiffs effectively concede that their First Amended Complaint fails to provide this

information by trying to take refuge in the proposition that Rule 9(b) does not require them to

"recite 'the particulars of every misstatement, misrepresentation or omission made by

[CHADD].'" [Opposition Brief at 4]. This unremarkable proposition, which CHADD does

not dispute, certainly does not mean that plaintiffs can satisfy Rule 9(b) without alleging **even**

**one** misstatement, misrepresentation, or omission on the part of CHADD, or the time and

place thereof.

4

In our opening brief, we pointed out the woeful insufficiency of the one new substantive allegation concerning CHADD that is contained in the First Amended Complaint – that the parents of one of the two plaintiffs had "considered the representations" made in "literature published by CHADD and paid for by defendant Novartis" in "accepting" their son's diagnosis.   CHADD noted that plaintiffs had failed to identify, even in the vaguest sense, even one misstatement, misrepresentation, or omission contained in that literature. Plaintiffs' opposition brief does not even address this point.   That silence speaks volumes. Plaintiffs are clearly unable to do so.

Plaintiffs' claim that they have "amplified and clarified their allegations against each defendant" in the First Amended Complaint  [Opposition Brief at 4] is hollow.   In fact, while the First Amended Complaint is now divided into separate sections, the substance of the claims against CHADD was changed only minimally, and even then not in any way that has to do with the sufficiency of the claims under Rules 9(b) and 12(b)(6).   Equally hollow is plaintiffs' claim that Paragraph 31 of the First Amended Complaint "sets out detailed factual allegations of motive and action against CHADD."   Plaintiffs' studious choice of the words "motive and action" are no mistake.   Plaintiffs do not and cannot claim that Paragraph 31 actually contains allegations  concerning fraudulent misstatements, misrepresentations, or omissions on the part of CHADD.[2]   The reality is that the purported "motive and action" on

---

[2]      Paragraph 32 of the First Amended Complaint also contains a direct allegation against CHADD -- that its "literature has used the brand name Ritalin, as opposed to the generic name methylphenidate, in seeking to persuade parents of the benefits of psychostimulant medication.  This of course, is not an allegation of a misrepresentation, misstatement, or omission on the part of CHADD, and, accordingly, does not help plaintiffs' satisfy the requirements of Rule 9(b).  Indeed, plaintiffs do not even contend in their opposition brief that it does.  It is worth noting that plaintiffs' have failed to identify any such literature in

5

the part of CHADD is completely consistent with non-fraudulent conduct and is meaningless in the analysis of the complaint's satisfaction of the requirements of Rule 9(b).

Plaintiffs' suggestion that the one sentence particularization example contained in Form 13 of the Federal Rule of Civil Procedure's Appendix of Forms somehow demonstrates the adequacy of their First Amended Complaint is silly. Of course, the test of 9(b) sufficiency adequacy has to do with substance, not volume. While plaintiffs' First Amended Complaint may be long, it does not mention one CHADD publication, statement or representation that plaintiffs allege to be fraudulent. It is not the number of sentences that is important; it is the information contained in the sentences.

Finally, while CHADD opposes the notion that this Court should grant plaintiffs leave to file their proposed Second Amended Complaint, there is nothing in that third attempt that helps plaintiffs meet their burden to plead their fraud claims against CHADD with particularity. The only new information contained in the Second Amended Complaint is a reference to CHADD's website and the fact that the website does not reveal that CHADD received money from Novartis from the period of 1991 to 1994. [Second Amended Complaint ¶ 50-51]. Significantly, plaintiffs do not allege that CHADD has failed to publicly disclose the financial support it has received from pharmaceutical companies such as Novartis.

---

their First Amended Compaint, their opposition brief, or their proposed Second Amended Complaint. It is also worth noting that plaintiffs could not have done much of an investigation concerning the DEA "press release" referred to in Paragraph 32. If they had, they would have learned that the support for the referenced statement relied upon by the author of the DEA report (not press release) was a "sample letter for members of CHADD to send to members of Congress" that contained only one reference to Ritalin: "methylphenidate, which is commonly referred to by its trade name Ritalin." This hardly supports the allegation that CHADD has used the brand name Ritalin to persuade parents of the benefits of pyschostimulant medication.

6

Instead, plaintiffs allege only that this information is nowhere revealed on [CHADD's] website. [Second Amended Complaint ¶ 51]. The reality, of course, is that plaintiffs could not, in good faith, allege that CHADD does not otherwise publicly disclose the support it receives from pharmaceutical companies. The very contributions referred to in Paragraph 51 have been a matter of public record for years. Specifically, CHADD has publicly disclosed the sources of it funding in annual reports it sends to its members. Those annual reports also make it clear that plaintiff could not have made a good faith Rule 11 investigation before alleging that the contributions from Novartis were "life sustaining." [*Id*]. The funds received from those grants was but a small percentage of CHADD's overall funding.

Plaintiffs aver that their "suit concerns the criteria used to reach a diagnosis of ADD/ADHD, the failure to warn of serious side effects associated with Ritalin use, and the failure to acknowledge and disclose that Ritalin does not improve long-term scholastic performance." [First and Second Amended Complaints ¶ 13]. The fact that CHADD's website, in the year 2001, does not reveal a funding source from six years ago is evidence of nothing pertaining to this lawsuit. The new information in the Second Amended Complaint puts CHADD on notice that plaintiffs desire to control CHADD's speech, but it does not put CHADD on notice of any alleged fraud. *See Memorandum Opinion and Order* at 9.

**2.    Plaintiffs' Complaint Fails to State a Failure to Warn of Side Effects Claim Against CHADD as a Matter of Law.**

In response to CHADD's argument that it, as a non-profit support group, has no duty to warn people of the side effects of methylphenidate, a drug they cannot obtain without the prescription of a doctor, who has a duty to warn of side effects, plaintiffs advance two legally

7

deficient arguments: (1) that they have pleaded that CHADD is an "agent" of Novartis, and

(2) that CHADD assumed such a duty as a learned intermediary. Both arguments are

meritless.

Turning first to plaintiffs' agency argument, it is worth noting first that the plaintiffs

have failed to site even one case holding that a party can assume a duty to warn of the side

effects of a drug controlled by the FDA as an "agent" of a pharmaceutical company. Second,

it is worth noting that while plaintiffs' suggest that they have pled in their complaint that

CHADD is an agent for Novartis that has assumed such a duty, this is simply not the case.

The allegation of CHADD's purported "agency" that is actually asserted in both the First and

proposed Second Amended Complaints does not even remotely refer to either party's duty to

warn plaintiffs of side effects:

> CHADD's activities nationwide have led to a significant increase in the amount
> of Ritalin taken by school children and have directly resulted in enormous
> profits to Ciba/Novartis. In so doing, CHADD has damaged the class by over
> promoting a drug where none was needed. In so doing, CHADD acted as an
> agent of, and/or has aided and abetted Ciba/Novartis in its efforts to increase
> sales and earn additional profits from the sale of Ritalin.

[First Amended Complaint at ¶ 34; Second Amended Complaint at ¶53]. This conclusory

assertion of CHADD's purported agency does not even come close to setting forth a valid

claim of agency for any purpose, let alone for the purposes of providing warnings concerning

a prescription drug.

Under Texas law, "[a]gency will not be presumed, and the party asserting the

relationship has the burden of proving it." *Schultz v. Rural/Metro Corp.*, 956 S.W.2d 757,

760 (Tex. Ct. App. 1997). The party seeking to prove the existence of an agency relationship

8

must show that the "principal has the right (1) to assign the agent's task, and (2) to control the means and details of the process by which the agent will accomplish the assigned task." *Id.* Without proof that the principal had the right to control the alleged agent, no agency relationship exists. *Id.* Plaintiffs do not, and cannot, allege that Novartis assigned to CHADD its obligations to warn of the potential side effects of Ritalin. In fact, Plaintiffs' complaint does not contain one allegation which, if true, would make CHADD an agent of Novartis.

Equally unavailing is plaintiffs' attempt to try to shoehorn CHADD into the category of a "learned intermediary" for the purpose of imposing on CHADD "a duty to warn of the possible serious side effect of Ritalin." [Plaintiffs' Response Brief 8-9]. Of course, there is nothing in any one of plaintiffs' three versions of the complaint that comes close to alleging facts that could support a finding that CHADD is a learned intermediary. And, even if plaintiffs had made such an allegation in the complaint, it is clear that it would be insufficient as a matter of law. *See* 63A Am. Jur. 2d *Product Liability* §§1200-07 (1997); *Morgan v. Wal-Mart Stores, Inc.*, N0. 03-99-00700, 2000 Tex. App. LEXIS 5282 (Tex. Ct. App. August 10, 2000); *Nichols v. Central Merchandise, Inc.*, 817 P.2d 1131 (Kan. Ct. App 1991); *McKee v. American Home Products Corp.*, 782 P.2d 1045 (Wash. 1989); *Leesly v. West*, 518 N.E.2d 758 (Ill. App. Ct. 1988); *Ingram v. Hook's Drugs, Inc.*, 476 N.E.2d 881 (Ind. Ct. App. 1985); *Kinney v. Hutchison*, 449 So. 2d 696 (La. Ct. App. 1984). The Texas Court of Appeals has provided the following definition of the learned intermediary doctrine:

According to this doctrine, the manufacturer of a prescription drug has a duty to adequately warn the prescribing physician of the drug's dangers. The physician, *relying on his medical training, experience, and knowledge of the individual patient,* then chooses the type and quantity of drug to be prescribed. [citations omitted] The physician assumes the duty to warn the patient of dangers associated with a particular prescribed drug.

*Morgan,* 2000 Tex. App. LEXIS 5282, at *19 (emphasis added).  Plaintiffs present no case law, nor any facts,[3] that would allow this or any Court to conclude that the employees and volunteers  – many of whom are parents of children with AD/HD – could be found to have assumed a similar duty.  Indeed, while plaintiffs claim that "there is no basis in law or logic" [Plaintiffs Response Brief 8] for CHADD's conclusion that it has no duty to warn the plaintiffs of the side effects of Ritalin as a matter of law, it is the plaintiffs who have provided no "basis in law or logic" for extending such a duty to CHADD.

## IV.   CONCLUSION

Plaintiffs know that CHADD has received funds from Novartis, a fact that CHADD has never attempted to hide.  Beyond this, they have nothing to connect CHADD to their serious allegations of fraud and conspiracy.  Since plaintiffs have had three tries to plead a viable claim against CHADD, but have failed to do so, this Court should dismiss with prejudice plaintiffs' claims against CHADD pursuant to Rules 9(b) and 12(b)(6).

---

[3]  Plaintiffs claim that "[u]nder the facts as pleaded by plaintiffs . . . CHADD was clearly an intermediary between Novartis and consumers of Ritalin . . . ." [Plaintiffs' Response Brief 9]. Yet, as shown already, plaintiffs have plead *no specific facts* regarding any CHADD publications, literature or statements, nor have they sufficiently pled that CHADD is an agent of Novartis.

Respectfully submitted,

Tom A. Lockhart
State Bar No. 12473500
Federal I.D. No. 2257
ADAMS & GRAHAM, L.L.P.
222 East Van Buren, West Tower
Harlingen, Texas 78550
Telephone: (956) 428-7495
Facsimile: (956) 428-2954

and

Gerald Zingone
State Bar No. 396604
ARENT FOX KINTNER PLOTKIN &
KAHN, PLLC
J. Marcus Meeks
Virginia State Bar No. 45652
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

Attorneys for Defendant CHADD, Inc. (Children
& Adults with Attention Deficit/Hyperactivity
Disorder).

Dated: February 16, 2001

11

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing instrument was forwarded to all attorneys of record, on this the 16th day of February, 2001.

Mr. Charles S. Siegel
**LAW OFFICE OF CHARLES S. SIEGEL**
3219 McFarlin, Suite 200
Dallas, Texas  75205
**Via CMRRR# 7000 1670 0005 2561 8208**

Mr. C. Andrew Waters
Mr. Peter Kraus
**WATERS & KRAUS**
4807 West Lovers Lane
Dallas, Texas  75209

Mr. Frank Costilla
**LAW OFFICES OF FRANK COSTILLA**
5 East Elizabeth Street
Brownsville, Texas  78520

Mr. Earl B. Austin
**BAKER & BOTTS,L.L.P.**
2001 Ross Avenue
Dallas, Texas  75201-2980

Mr. James A. O'Neal
Mr. Joseph M. Price
**FAEGRE & BENSON, L.L.P.**
2200 Norwest Center
90 South Seventh Street
Minneapolis, MN  5504-3901

Mr. Eduardo Roberto Rodriguez
**RODRIGUEZ, COLVIN & CHANEY, L.L.P.**
1201 East Van Buren
Brownsville, Texas  78522

Mr. Robert P. Charrow
**CROWELL & MORING**
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004

Mr. Andrew C. Schirrmeister, III
**SCHIRRMEISTER AJAMIE, L.L.P.**
Pennzoil Place-South Tower
711 Louisiana, 21st Floor
Houston, Texas  77002


TOM LOCKHART

13