68

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 2 0 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| Maria Elena Hernandez, Miguel Angel Hernandez, Heather Butler, individually and On behalf of all others similarly situated Plaintiffs, | § § § § § § § § | |
| Ciba-Geigy Corporation, U.S.A., Novartis Pharmaceuticals Corporation, Children and Adults with Attention, Hyperactivity Deficit Disorder (CHADD), American Psychiatric Association (APA), Defendants. | § § § § § § § | No. B-00-082 |

### DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTIONS TO DISMISS

*"The more things change, the more they remain the same."*
                                    Alphonse Karr, Les Guêpes (1849)

Despite serving a second and now a proposed third version of their complaint, plaintiffs have done nothing to cure the deficiencies that this Court noted in its October 17, 2000 Order. Neither document pleads plaintiffs' allegations of fraud with the particularity required by Rule 9(b), and Novartis respectfully requests that the Court dismiss plaintiffs' claims, this time with prejudice, on that basis. The Court should also dismiss plaintiffs' claims against Novartis based on plaintiffs' failure to state a claim on which relief may be granted under common law fraud and conspiracy, the New Jersey Consumer Fraud Act, or the United Nations Convention on Psychotropic Substances.

## ARGUMENT

For the record, Novartis objects to plaintiffs' belated request to amend their complaint for a second time.[1] Regardless of which complaint the Court considers, however, Novartis is still entitled to dismissal. None of plaintiffs' complaints pleads their allegations of fraud with the particularity required by Rule 9(b), and none states a cause of action against Novartis. For that reason, and in the interest of avoiding yet another round of Rule 9(b) and 12(b)(6) motions, Novartis will address both the Amended Complaint and the proposed Second Amended Complaint in this reply memorandum.

### A. Neither of Plaintiffs' Complaints Pleads Plaintiffs' Fraud Claims With the Particularity Required by Rule 9(b).

Neither the Amended Complaint nor the proposed Second Amended Complaint cures the lack of particularity this Court noted in its October 17, 2000 Order. Admittedly, plaintiffs' claims in this action have been something of a moving target. Plaintiffs first alleged that ADD/ADHD does not exist, Complaint ¶ 11, then admitted the disorder's existence but blamed supposed misrepresentations in the DSM for its overdiagnosis, Oct. 15, 2000 transcript at 38:16–39:13, and now disavow any claim that any statement in the DSM is false. Pl. memo. at 6. Throughout all these shifts in position, however, one feature of plaintiffs' complaint has remained constant: Plaintiffs

---

[1] A copy of a proposed Second Amended Complaint accompanied the service of Plaintiffs' Response to Defendants' Renewed Motions to Dismiss, and the Response asks that, should the Court find that the Amended Complaint does not plead the fraud claims with sufficient particularity, plaintiffs be allowed to replead again with this third version. Pl. Memo at 9-10. In offering this new complaint, plaintiffs offer no adequate explanation of why they could and should not have made these new allegations by the Court's November 17, 2000 deadline for amendment. Plaintiffs' suggestion that they gleaned additional information from "extensive formal discovery" in a similar California case (p. 10) is mistaken; <u>no</u> formal discovery has taken place in that action, pending resolution of defendants' Rule 9(b), Rule 12(b)(6), and anti-SLAPP motions in that case.

have never identified what representations by defendants supposedly constitute the fraud on which plaintiffs' claims rely.

Plaintiffs' response to defendants' renewed Rule 9(b) motions speculates about defendants' financial interests and supposed motives, Pl. Memo. at 4-5, but once again fails to address the core of plaintiffs' claims: the supposed misrepresentations themselves. As discussed at length in defendants' previous submissions, Rule 9(b) requires a plaintiff "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Williams v. WMX Tech., Inc., 112 F.3d 175, 177 (5th Cir. 1997). Making this specification should not be difficult, if the facts supporting a claim of fraud actually exist. As both the Court and plaintiffs have noted, one may state a particularized claim of fraud in a few sentences or even a single sentence. Such a sentence, however, must still contain the "who, what, when, where and how" of the alleged fraud (e.g., "On July 10, 2000, at 12 Elm Street, Brownsville, Texas, Smith falsely told Jones that the house had no termite damage."). See Williams v. WMX Tech., Inc., 112 F.3d 175, 177 (5th Cir. 1997).

Plaintiffs' complaints here do not contain these elements. Neither the Amended Complaint nor the proposed Second Amended Complaint in any way identifies:

1. The substance of any supposed misrepresentation by Novartis;
2. Who made that misrepresentation;
3. To whom the misrepresentation was made;
4. When and by what means the misrepresentation occurred; or
5. In what way the representation was false.

Plaintiffs' memorandum does not argue that their complaints provide any of this information, and in fact does not acknowledge this legal standard.[2] Even plaintiffs' general allegation that the DSM criteria result in the overdiagnosis of ADD/ADHD does not specify what information Novartis supposedly contributed to the DSM, when, where, and in what manner that contribution occurred, or why any such contribution was false. (On the contrary, plaintiffs do not even allege that any statements in the DSM are false. Pl. Memo. at 6). Instead, plaintiffs simply assert that Rule 9(b)'s criteria have been met, without citation to a single case approving the sort of nonspecific allegations of fraud plaintiffs make here. Pl. Memo. at 4-5. Plaintiffs' complaints meet neither the letter nor the spirit of Rule 9(b).

Contrary to plaintiffs' implication, Novartis has never asked the Court to require plaintiffs to recite "the particulars of every misstatement, misrepresentation or omission made by defendants." Pl. Memo at 4 (quoting Amended Complaint pp. 7-8). However, inasmuch as the supposed misrepresentations occurred in a "widely used and disseminated" public document[3] over a span of decades[4] and allegedly induced the

---

[2] Plaintiffs' complaints allege that the Hernandez plaintiffs reviewed literature published by CHADD and "paid for" by Novartis in connection with their son's diagnosis with ADD/ADHD. Amended Complaint ¶ 4, proposed Second Amended Complaint ¶ 11. Neither complaint, however, identifies the literature, describes what representations the literature contained, alleges that any representation was false, or claims that the diagnosing physician relied on the literature in any way. Indeed, plaintiffs do not even allege that they relied on the literature themselves, merely that they "considered the representations contained therein." Pl. Memo. at 7 (quoting Amended Complaint at 4).

[3] Amended Complaint ¶ __; proposed Second Amended Complaint ¶ 16.

[4] Amended Complaint ¶¶ 8, 9, 21; proposed Second Amended Complaint ¶¶ 8, 9, 14, 24.

reliance of "millions" of people,[5] including plaintiffs themselves, Novartis respectfully submits that Rule 9(b) requires plaintiffs to describe with particularity at least some of those alleged misrepresentations. These are not the type of allegations as to which plaintiffs require discovery to identify facts "within the defendant's knowledge and control," see October 17, 2000 Order at 9-10. On the contrary, only plaintiffs themselves know the substance and circumstances of the representations on which they supposedly relied.

With their latest proposed Second Amended Complaint, plaintiffs have now had three chances to state with the required particularity the alleged fraud on which they base their claims against defendants. This new complaint represents plaintiffs' final attempt to comply with Rule 9(b); plaintiffs have assured the Court that they will make "[n]o further requests for leave to amend." Pl. Memo. at 10. Based on this assurance, and because none of plaintiffs' complaints pleads plaintiffs' fraud claims with the particularity required by Rule 9(b), Novartis urges this Court to dismiss plaintiffs' claims against it with prejudice.

### B. Plaintiffs Amended Complaints Fail to State a Claim on Which Relief May Be Granted.

The Court should also dismiss plaintiffs' fraud claims for failure to state a claim on which relief may be granted. In several respects, plaintiffs have failed to make crucial allegations linking plaintiffs' alleged injuries to the claimed fraud of defendants.

---

[5] Amended Complaint ¶ 48; proposed Second Amended Complaint ¶ 66.

1.  **Plaintiffs' Amended Complaints Do Not Claim Plaintiffs' Children Were Misdiagnosed or That Their Treatment was Ineffective.**

Like their complaints, plaintiffs' response to defendants' Rule 12(b)(6) motions refuses to take a position on the crucial issue of whether plaintiffs' children were or were not correctly diagnosed with ADD/ADHD and were or were not effectively treated with Ritalin®. Plaintiffs admit that ADD/ADHD exists and that methylphenidate (Ritalin®) can effectively treat it. See Oct. 15, 2000 transcript at 38:16–39:13. In acknowledging these facts, plaintiffs also necessarily acknowledge that some appropriate criteria must exist for identifying the disorder and for measuring the effectiveness of treatment. Obviously, plaintiffs believe that the DSM does not provide that appropriate criteria. If, however, plaintiffs' children would nevertheless have been diagnosed with ADD/ADHD under whatever "appropriate criteria" plaintiffs would adopt, just as the children were under the DSM criteria,[6] then the use of the DSM criteria could not possibly have caused plaintiffs' children any injury. As a result, plaintiffs as a matter of law have no claim based on the DSM criteria.

Put another way, plaintiffs' fraud claims require the allegation of a _material_ misrepresentation. E.g., <u>Oppenheimer v. Prudential Securities Inc.</u>, 94 F.3d 189, 194 (5th Cir. 1996). In the context of plaintiffs' allegations, the claimed overbreadth of the DSM can be material <u>only</u> if plaintiffs' children did <u>not</u> in fact have ADD/ADHD. If the children <u>did</u> have the disorder, the breadth of the criteria by which that disorder was identified is of necessity immaterial. The children were properly diagnosed and properly

---

[6] This assumes for the sake of argument that plaintiffs' children were in fact diagnosed with ADD/ADHD based on the DSM criteria. As discussed in the following section, none of plaintiffs' complaints actually makes such an allegation.

treated with Ritalin® and the parent plaintiffs received what they paid for, effective treatment for their children.

In sum, plaintiffs cannot as a matter of law establish the elements of causation or injury if they do not allege that use of the DSM criteria resulted in a misdiagnosis of their children with ADD/ADHD or in ineffective Ritalin® treatment. Because plaintiffs are either unable or unwilling to make such allegations, their causes of action fail, and this Court should dismiss their complaint.

### 2. Plaintiffs' Amended Complaints Do Not Claim That Plaintiffs Relied on, or Even Knew About, the DSM Criteria.

Plaintiffs also fail to state a claim on which relief can be granted because they do not allege reliance on any representation by defendants (including the DSM). As a result, plaintiffs cannot establish causation, and their claims must fail.

Plaintiffs assert that "the amended complaint . . . makes clear that these parents, including Plaintiff Butler, rely on the diagnostic conclusion invited by the DSM." Plaintiffs' Response at 7. This painfully careful wording echoes the attempt in all of plaintiffs' complaints to avoid acknowledging that doctors, independent medical professionals, made the actual diagnoses of plaintiffs' children with ADD/ADHD and prescribed Ritalin® as treatment. Plaintiffs' complaints acknowledge that a child with ADD/ADHD must see a doctor once a month for a prescription renewal, proposed Second Amended Complaint ¶ 31, meaning that the plaintiffs' children consulted their own doctors about the specific ADD/ADHD condition at issue here at least 40 to 60 times. Cf. Amended Complaint and proposed Second Amended Complaint ¶¶ 11-12 (children took Ritalin® for 4 and 6 years). Yet plaintiffs' complaints use passive language to describe the diagnosis and treatment of their children without ever

mentioning that doctors were in any way involved. See Amended Complaint and proposed Second Amended Complaint ¶¶ 11-12.

This clearly deliberate omission is critical. The claim that plaintiffs "relied on a diagnostic conclusion invited by the DSM" (in other words, that plaintiffs relied on a doctor's independent judgment) is not at all the same thing as a claim that plaintiffs relied on a representation in the DSM. To maintain their fraud-based claims, plaintiffs must allege reliance on a false representation. <u>Oppenheimer v. Prudential Securities Inc.</u>, 94 F.3d 189, 194 (5th Cir. 1996); <u>Erit v. Judge, Inc.</u>, 961 F. Supp. 774, 781 (D.N.J. 1997) (noting causation requirement under NJCFA). Plaintiffs' response neither cites authority nor provides analysis suggesting that reliance on a non-party's independent medical judgment can serve as a substitute for such reliance.

Plaintiffs' complaint does not in fact allege that they relied on the DSM. First, plaintiffs nowhere claim that they were even aware of the nature of the criteria used at the time of their children's diagnoses. On the contrary, the only reasonable inference from plaintiffs' allegations in ¶¶ 11 and 12 of the Amended and proposed Second Amended Complaint is that the plaintiffs' doctors did <u>not</u> tell them the nature of the criteria used. As a result, plaintiffs could not have relied on any alleged misrepresentation in or about those criteria in connection with their children's diagnosis and treatment.

Second, plaintiffs' complaint does not allege that the doctors who diagnosed the plaintiffs' children with ADHD even based those diagnoses on the DSM criteria. Obviously, if the children's doctors did not use the DSM criteria, plaintiffs cannot base any fraud claim on those criteria.

Finally, once the ADD/ADHD diagnosis was made, plaintiffs do not allege that the DSM played any role whatever in their children's doctors' decisions to prescribe

Novartis's product Ritalin for the children, as opposed to some other medication or form of treatment. Indeed, plaintiffs cannot make any such allegation. As noted in the Amended Complaint and discussed in detail in the APA's memoranda, the DSM is purely a <u>diagnostic</u> tool. The DSM does not recommend particular treatments, and does not even describe the possible methods (pharmaceutical or otherwise) of treating the various disorders the DSM identifies. Plaintiffs do not claim otherwise. See proposed Second Amended Complaint ¶¶ 16-18.

In sum, plaintiffs have failed to allege any causal connection between any representation by any defendant (including the DSM) and any injury that any of the plaintiffs allegedly suffered.[7] Absent the claim of such a causal relationship, plaintiffs do not state a cause of action under any of their theories. <u>See, e.g., Oppenheimer</u>, 94 F.3d at 194; <u>Gross v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.</u>, 303 N.J. Super. 336, 345, 696 A.2d 793, 797 (Law Div. 1997) (to state a claim under the NJCFA, "there must be a 'causal relationship' between the unlawful conduct and the 'ascertainable loss' sustained by plaintiff," quoting <u>Ramanadham v. N.J. Mfrs. Ins. Co.</u>, 188 N.J. Super. 30, 33, 455 A.2d 1134 (App. Div. 1982)).

### 3. Plaintiffs Do Not Claim that Any Statements in the DSM are False.

In their response, plaintiffs make the remarkable statement that "[p]laintiffs do not allege that statements in the DSM are 'false.'" Pl. Memo. at 6. A claim of false representation is the core element of any fraud claim, <u>see, e.g., Oppenheimer</u>, 94 F.3d at 194, and plaintiffs' disavowal of falsity effectively concedes that they cannot establish

---

[7] As to the allegations of "reliance" on CHADD literature in ¶ 11 of the Amended and proposed Second Amended Complaints, see footnote 2 above.

their cause of action. Novartis therefore urges the Court to dismiss all plaintiffs' claims based on the DSM for failure to state a claim on which relief may be granted.

    **4.    Plaintiffs Do Not Oppose Novartis's Motion to Dismiss Their Claims Based on Novartis's Alleged Failure to Warn of Ritalin®'s Side Effects.**

In addition to the DSM-based claims discussed above, plaintiffs' complaints also assert fraud and negligence claims against Novartis, claiming that Novartis failed to advise or warn about claimed side effects of Ritalin®. E.g., proposed Second Amended Complaint ¶¶ 13, 23, 27, 29, 57, 65. In its 12(b)(6) motion, Novartis moved the Court to dismiss those warning claims because plaintiffs do not claim that any of their children actually suffered any of the alleged side effects about which Novartis allegedly failed to warn. See Novartis Memorandum in Support of Renewed Motions at 16; 2 D. Dobbs, The Law of Torts, § 367, p. 1018 (2001) (the injury a plaintiff claims to have suffered "must be within the class of injury that the warning requirement was meant to avoid"). Plaintiffs' response does not address this aspect of Novartis's Rule 12(b)(6) motion, and Novartis therefore concludes plaintiffs do not oppose the dismissal of that portion of their complaint. See Local Rule 7.4 (failure to respond will be taken as a representation of no opposition). Novartis urges the Court to dismiss plaintiffs' warning-based claims against it.

    **5.    Plaintiffs Do Not Oppose Novartis's Motion to Dismiss Their Claim Based on the United Nations Convention on Psychotropic Substances.**

Novartis has also moved the Court to dismiss any claims plaintiffs make under Article 10 of the United Nations Convention on Psychotropic Substances, 1019 U.N.T.S. 175 (1971). See Novartis Memorandum at 15-16; see also Court's October 17, 2000 Order at 6-7 (discussing claim). Again, plaintiffs' response does not address this aspect of Novartis's Rule 12(b)(6) motion, and the proposed Second Amended Complaint

leaves the allegation unchanged. See ¶ 48. Novartis again concludes plaintiffs do not oppose the dismissal of that portion of their complaint. <u>See</u> Local Rule 7.4. Based on the lack of opposition, Novartis urges the Court to dismiss plaintiffs' claims against it based on the UN Convention.

## CONCLUSION

In their Amended and Proposed Second Amended Complaints, plaintiffs have completely failed to meet the requirements of particularity and specificity required by Rule 9(b) and dictated by the Court's October 17, 2000 Order. For this reason, Novartis urges the Court to dismiss plaintiffs' claims with prejudice. Alternatively, Novartis urges the Court to dismiss plaintiff's claims for failure to state a claim on which relief can be granted under Rule 12 (b)(6).

Dated: February 20, 2001

Respectfully submitted,

*/s/ Eduardo Roberto Rodriguez w/ permission McSwain*
Eduardo Roberto Rodriguez
State Bar No. 17144000
Federal Admissions No. 1944
Attorney-In-Charge
Mitchell C. Chaney
State Bar No. 04107500
Federal Admissions No. 1918
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

James A. O'Neal
Minnesota Bar No. 8248X
Joseph M. Price
Minnesota Bar No. 88201
Bruce Jones
Minnesota Bar No. 179553

Faegre & Benson LLP
2200 Norwest Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
(612) 336-3000
Fax (612) 336-3026

Earl B. Austin
State Bar No. 1437300
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6542
Fax (214) 953-6503

**Attorneys for Defendants CIBA-GEIGY CORP. USA AND NOVARTIS PHARMACEUTICALS CORP.**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing document was served by United States mail, via certified service, return receipt requested, to counsel of record as follows:

Frank Costilla
LAW OFFICES OF FRANK COSTILLA
5 East Elizabeth
Brownsville, Texas 78520

C. Andrew Waters
Peter Kraus
WATERS & KRAUS
4807 West Lovers Lane
Dallas, Texas 75209
Attorneys for Plaintiffs

Charles S. Siegel
LAW OFFICE OF CHARLES S. SIEGEL
3402 McFarlin, Suite 200
Dallas, Texas 75205

Robert P. Charrow
CROWELL & MORING
1001 Pennsylvania Ave., NW
Washington, DC 20004

Andrew C. Schirrmeister III
George R. Diaz-Arrastia
SCHIRRMEISTER AJAMIE, LLP
Pennzoil Place-South Tower
711 Louisiana, 21st Floor
Houston, Texas 77002

Gerald Zingone
ARENT & FOX
1050 Connecticut Ave. NW
Washington, DC 20036

Tom A. Lockhart
ADAMS & GRAHAM, L.L.P.
222 East Van Buren, West Tower
Harlingen, Texas 78550

On this <u>20th</u> day of February, 2001

_____
Eduardo Roberto Rodriguez   *w/ permission*
*/s/ Cristobal*