



# COPY

United States District Court
Southern District of Texas
FILED

MAR 1 6 2001

Michael N. Milby
Clerk of Court

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Maria Elena Hernandez, | § | |
| Miguel Angel Hernandez, | § | |
| Heather Butler, individually and | § | |
| on behalf of all others similarly | § | |
| situated, | § | |
| Plaintiffs, | § | |
| v. | § | Civil No. B-00-082 |
| | § | |
| CIBA-GEIGY Corp. USA, | § | |
| Novartis Pharmaceuticals Corp. | § | |
| Children and Adults with | § | |
| Attention-Deficit/Hyperactivity | § | |
| Disorder (CHADD), | § | |
| American Psychiatric Association, | § | |
| Defendants. | § | |

## DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY

The Court presently has pending before it all defendants' renewed motions to dismiss plaintiffs' current complaint on two grounds: (1) for failure to plead with the particularity required by Fed. R. Civ. P. 9(b); and (2) for failure to state a claim on which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). Both sides' briefing of these issues is complete, and the Court has not scheduled the motions for oral argument.

As the Court is aware from the hearing last October, some of the plaintiffs' counsel in this action have (with other plaintiffs' attorneys) also filed a putative class action complaint involving the diagnosis of ADHD and the prescription of Ritalin, against the same defendants in federal district court in the Southern District of California. Vess v. Ciba-Geigy Corp. USA, et al., Court File No. 00-CV-1839 (S.D. Cal.).  Although the plaintiff in Vess bases his claims on California statutes instead of the common law and New Jersey statutory

grounds plaintiffs urge here, the two complaints make largely the same factual allegations concerning the defendants' supposed fraudulent conduct. Specifically, the factual allegations in the First Amended Complaint in <u>Vess</u> are substantively identical to the factual allegations in the proposed Second Amended Complaint that plaintiffs here attached to their response to the pending motions. Indeed, the two complaints often track each other verbatim.

Defendants moved in <u>Vess</u> to dismiss plaintiffs' First Amended Complaint based on Rules 9(b) and 12(b)(6), making (among others) the same arguments they have made in the pending Rule 9(b) and 12(b)(6) motions here. On March 8, 2001, the Honorable Rudi M. Brewster granted defendants' motions to dismiss. (The <u>Vess</u> Court's Order also addresses defendants' motions under a specific California law known as the anti-SLAPP statute.)

Because the motions pending here seek the same relief on the same legal grounds based on the same factual allegations against the same defendants as the motions in <u>Vess</u>, defendants submit that the interests of justice would be served by affording this Court the opportunity to review the <u>Vess</u> court's rulings on these issues. This authority could not have been submitted earlier because the <u>Vess</u> court did not issue its Order until March 9, 2001, after the parties had completed the briefing of the motions pending before this Court.

For these reasons, defendants therefore respectfully move this Court for leave to submit the <u>Vess</u> Court's March 8, 2001 Order to this Court as additional authority in support of their motions to dismiss. A true and correct copy of the <u>Vess</u> Court's Order is attached to this motion as Exhibit "A." For convenience of reference, defendants also attach as Exhibit "B" a copy of the plaintiff's First Amended Complaint in the <u>Vess</u> case, to which the <u>Vess</u> Court's order of dismissal was directed.

2

Counsel for defendants APA and CHADD have specifically authorized the undersigned, for the purposes of this submission only, to represent to the Court their joinder in this motion.

Dated: March 16, 2001

Respectfully submitted,

Eduardo Roberto Rodriguez
State Bar No. 17144000
Federal Admissions No. 1944
attorney-in-charge
Mitchell C. Chaney
State Bar No. 04107500
Federal Admissions No. 1918
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

James A. O'Neal
Minnesota Bar No. 8248X
Joseph M. Price
Minnesota Bar No. 88201
Bruce Jones
Minnesota Bar No. 179553
Faegre & Benson LLP
2200 Norwest Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
(612) 336-3000
Fax (612) 336-3026

Earl B. Austin
State Bar No. 1437300
Baker Botts LLP
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6542
Fax (214) 953-6503

**Attorneys for Defendants Ciba-Geigy Corp. USA and Novartis Pharmaceuticals Corp.**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing document was served by United States mail, via certified service, return receipt requested, to counsel of record as follows:

Frank Costilla
Law Offices of Frank Costilla
5 East Elizabeth
Brownsville, Texas 78520
Attorneys for Plaintiffs

C. Andrew Waters
Peter Kraus
Waters & Kraus
4807 West Lovers Lane
Dallas, Texas 75209
Attorneys for Plaintiffs

Charles S. Siegel
Law Office of Charles S. Siegel
3402 McFarlin, Suite 200
Dallas, Texas 75205
Attorneys for Plaintiffs

Robert P. Charrow
Crowell & Moring
1001 Pennsylvania Ave., NW
Washington, DC 20004
Attorneys for American Psychiatric Association

4

Andrew C. Schirrmeister III
George R. Diaz-Arrastia
Schirrmeister Ajamie, LLP
Pennzoil Place-South Tower
711 Louisiana, 21st Floor
Houston, Texas 77002
Attorneys for American Psychiatric Association

Gerald Zingone
Arent & Fox
1050 Connecticut Ave. NW
Washington, DC 20036
Attorneys for Children and Adults with Attention
Deficit/Hyperactivity Disorder (CHADD)

Tom A. Lockhart
Adams & Graham, L.L.P.
222 East Van Buren, West Tower
Harlingen, Texas 78550
Attorneys for Children and Adults with Attention on
Deficit/Hyperactivity Disorder (CHADD)

On this 16th day of March, 2001.

Eduardo Roberto Rodriguez

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 6.A.4 the Movant has conferred with Plaintiffs' counsel and Plaintiffs' counsel does not oppose the motion.

Eduardo Roberto Rodriguez

5

CutePDF - www.tetolw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Maria Elena Hernandez, | § | |
| Miguel Angel Hernandez, | § | |
| Heather Butler, individually and | § | |
| on behalf of all others similarly | § | |
| situated, | § | |
| Plaintiffs, | § | |
| v. | § | Civil No. B-00-082 |
| CIBA-GEIGY Corp. USA, | § | |
| Novartis Pharmaceuticals Corp. | § | |
| Children and Adults with | § | |
| Attention-Deficit/Hyperactivity | § | |
| Disorder (CHADD), | § | |
| American Psychiatric Association, | § | |
| Defendants. | § | |

## ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY

Came on this day for consideration by the Court Defendants' Unopposed Motion for Leave to Submit Supplemental Authority. After reviewing Defendants' Unopposed Motion for Leave to Submit Supplemental Authority, the Court finds that said motion should in all respects be granted.

Therefore, it is hereby ordered that Defendants' Unopposed Motion for Leave to Submit Supplemental Authority be granted.

SIGNED THIS _____ day of _____, 2001.

_____
United States District Judge

# EXHIBIT "A"

CitiPDF - www.fastio.com

01 MAR -9 AM 10: 08

DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD D. VESS, a Minor, by Deborah Vess, His Guardian Ad Litem, Individually, on Behalf of Those Similarly Situated and on Behalf of the General Public of the State of California,<br><br>       **Plaintiffs,**<br><br>vs.<br><br><br>CIBA-GEIGY CORP. USA; NOVARTIS PHARMACEUTICALS CORP.; CHILDREN AND ADULTS WITH ATTENTION-DEFICIT/HYPERACTIVITY DISORDER (CHADD); AMERICAN PSYCHIATRIC ASSOCIATION, and DOES 1 through 100, inclusive,<br><br>        **Defendants.** | CIV. NO. 00CV1839-B (CGA)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 9(b) AND/OR 12(b)(6) AND DEFERRING RULING ON MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. P. § 425.16**<br><br>[Docket Nos. 83-88, 89-91, 92-94, 95-97, 98-100, 101-102] |

  Defendants' Motions to Dismiss pursuant to FED. R. CIV. P. 9(b) and/or 12(b)(6) and Defendants' Motions to Strike pursuant to CAL. CODE CIV. P. § 425.16 came on for hearing on March 5, 2001. Richard Scruggs, Esq., Peggy Reali, Esq., and Sidney Backstrom, Esq. appeared on behalf of Plaintiff Todd D. Vess. David J. Noonan, Esq. and Luther Ziegler, Esq. appeared on behalf of Defendant American Psychiatric Association ("APA"). Edward D. Chapin, Esq. and Gerald Zingone, Esq. appeared on behalf of Defendant



1 00CV1839 Order Granting Motions to Dismiss; Deferring Motions to Strike

EXHIBIT A

CSHPDF - www.fsoca.com

1   Children and Adults with Attention Deficit/Hyperactivity Disorder ("CHADD").  Bruce
2   Jones, Esq., James A. O'Neal, Esq., and Roxanne Wilson, Esq. appeared on behalf of
3   Defendants Ciba-Geigy Corp. USA ("Ciba-Geigy") and Novartis Pharmaceuticals Corp.
4   ("Novartis").  Having reviewed the matter and heard oral presentations, the Court hereby
5   enters the following Order.

6                                **I.  POSTURE OF THE CASE**

7          Plaintiff filed his original complaint on September 13, 2000.  Plaintiff moved for
8   leave to file his First Amended Complaint on January 17, 2001 and the Court granted that
9   Motion on January 26, 2001.  By the time Plaintiff moved for leave to file his First Amended
10  Complaint, all of the Defendants had moved to dismiss Plaintiff's original complaint
11  pursuant to FED. R. CIV. P. 9(b) and/or 12(b)(6) and filed Special Motions to Strike Claims
12  pursuant to CAL. CODE CIV. P. § 425.16.  The Court's Order granting leave to amend
13  invited the parties to submit revised briefing on their motions to specifically address the First
14  Amended Complaint.

15         The APA filed a revised Special Motion to Strike Claims pursuant to CAL. CODE
16  CIV. P. § 425.16 on February 2, 2001.  Defendants Ciba-Geigy and Novartis filed their
17  revised Motion to Dismiss Pursuant to FED. R. CIV. P. 9(b) and their revised Special
18  Motion to Strike Claims pursuant to CAL. CODE CIV. P. § 425.16 on February 5, 2001.
19  CHADD also moved on February 5, 2001 to dismiss the First Amended Complaint pursuant
20  to FED. R. CIV. P. 9(b) and 12(b)(6) and to strike claims pursuant to CAL. CODE CIV. P. §
21  425.16.  Finally, on the same day, the APA filed its Motion to Dismiss First Amended
22  Complaint pursuant to FED. R. CIV. P. 12(b)(6) and joined in the Rule 9(b) motions of its
23  codefendants.

24         The Defendants set their motions for the same hearing date.  The Court's analysis of
25  the motions leads the Court to consider first Defendants' Motions to Strike pursuant to CAL.
26  CODE CIV. P. § 425.16.  That analysis involves the consideration of two issues: (1)
27  Defendants' burden to demonstrate prima facie that the speech at issue is protected speech
28  relating to a public issue and, (2) Plaintiff's burden to demonstrate a probability of prevailing

CMxPDF - www.texia.com

1 on his claims.

2 ## II. STATEMENT OF FACTS

3 Plaintiff Todd D. Vess is a minor suing through his Guardian ad Litem, Deborah

4 Vess, on behalf of himself, those similarly situated, and the general public of the state of

5 California. Vess is a San Diego resident whose citizenship is diverse from all of the

6 defendants. Am. Compl. ¶¶ 4, 7-10. Plaintiff alleges that he was prescribed Ritalin in June

7 1994 when he was nine years old and that he purchased and ingested the drug for a non-

8 specified period of time. Am. Compl. ¶ 6.

9 The defendants are two non-profit groups and a manufacturer of Ritalin. Defendant

10 American Psychiatric Association is a nonprofit organization dedicated to the "advancement

11 of knowledge, education and research in the field of psychiatry as well as to improvement of

12 the diagnosis and treatment of the mentally ill." APA's Mem. to Strike at 4. The APA

13 publishes the *Diagnostic and Statistic Manual of Mental Disorders* ("DSM"). Plaintiff

14 claims that the DSM contains false and misleading information about Attention Deficit

15 Disorder (ADD), Attention Deficit Hyperactivity Disorder (ADHD), and Ritalin.

16 Defendant CHADD is a nonprofit group that provides support to parents and

17 individuals who have children or have personally been diagnosed as having Attention

18 Deficit/Hyperactivity Disorder. CHADD Mem. to Strike at p. 4. CHADD describes itself as

19 a "support and advocacy organization with over 200 local chapters and 20,000 members."

20 Id.

21 Defendant Novartis Pharmaceuticals Corp. is a Ritalin manufacturer. Novartis'

22 predecessor, Ciba-Geigy Corp., began manufacturing methylphenidate under the brand name

23 Ritalin in 1955. Novartis Mem. to Strike at 2. Ciba-Geigy's patent on Ritalin expired in the

24 1970s and there have been generic forms of the drug since. Plaintiff is suing both Novartis

25 and Ciba-Geigy. Plaintiff alleges that Ciba/Novartis has been the primary or exclusive

26 manufacturer of Ritalin since 1955. Am. Compl. ¶ 13.

27 Plaintiff alleges Ciba/Novartis has engaged in a variety of misconduct regarding

28 Ritalin. Ciba/Novartis allegedly fails to warn Ritalin users that the full range of side effects

1   has not yet been adequately studied.  Am. Compl. ¶ 33.  Ciba/Novartis allegedly failed to

2   disclose the limited effectiveness of its product and misled clinicians and the public to

3   believe Ritalin had positive benefits, despite the fact that the drug may not cause any benefits

4   at all.  Am. Compl. ¶ 34.

5         Plaintiff alleges that Ciba/Novartis conspired with the APA to "develop, promote,

6   broaden[,] and confirm the diagnoses of Attention Deficit Disorder (ADD) and Attention

7   Deficit Hyperactivity Disorder (ADHD)."  Am. Compl. ¶ 15.  Plaintiff claims that

8   Ciba/Novartis and the APA have a financial relationship.  Am. Compl. ¶ 16.  According to

9   Plaintiff, the APA included ADD in the 1980 DSM, even though ADD did not meet the

10  APA's own criteria for inclusion.  Am. Compl. ¶ 19.  Plaintiff complains that the current

11  DSM contains further misrepresentations and omits dissenting opinions.  Am. Compl. ¶¶ 23,

12  26.  In addition, Plaintiff claims that the APA has fraudulently failed to disclose Novartis'

13  role in the creation, promulgation, and revision of the DSM or the financial relationship

14  between the APA and Ciba/Novartis.  Am. Compl. ¶ 27.

15        Plaintiff claims that CHADD deliberately attempted to increase the sales of Ritalin, to

16  increase the available supply, and to reduce or eliminate laws and restrictions on the use of

17  Ritalin because of Ciba/Novartis' significant contributions to CHADD.  Am. Compl. ¶ 37.

18  Plaintiff complains that CHADD does not reveal on its website that it receives significant

19  contributions from Ciba/Novartis.  Am. Compl. ¶ 37.

20        The Defendants are sued as coconspirators.  Am. Compl. ¶ 41.  Plaintiff alleges

21  violations of the Consumer Legal Remedies Act ("CLRA"), CAL. CODE § 1770 for allegedly

22  unlawful competition, and unfair and deceptive acts.  Plaintiff sues under CAL. BUS. & PROF.

23  § 17200 for unfair competition.  And Plaintiff sues under CAL. BUS. & PROF. § 17500 for

24  false and misleading statements.  Plaintiff seeks injunctive relief, disgorgement of revenues

25  and profits, restitution, and punitive damages.

26                      **III.  SUMMARY OF FINDINGS**

27  A.    <u>Motions to Strike Pursuant to CAL. CODE CIV. P. § 425.16</u>

28        The Court finds that the Motions to Strike pursuant to CAL. CODE CIV. P. § 425.16

1    cannot be fully decided at this time. Defendants have met their burden of showing that the
2    anti-SLAPP statute applies because the speech at issue is clearly speech protected under the
3    United States and California Constitutions in connection with a public issue. CAL. CODE
4    CIV. P. § 425.16(b)(1). Plaintiff, however, has not in the Court's view commenced to show
5    that he has a possibility of prevailing on his claims because the Court finds the First
6    Amended Complaint is defective under both FED. R. CIV. P. 9(b) and 12(b)(6).

7    **B.**    <u>Motions to Dismiss Pursuant to FED. R. CIV. P. 9(b) and 12(b)(6)</u>

8       The Court grants Defendants' FED. R. CIV. P. 9(b) motions. The First Amended
9    Complaint attempts to allege a conspiracy to defraud. Plaintiff's allegations fail to show
10    misrepresentations of any material facts, by whom any misrepresentations were made, when
11    any misrepresentations were made, and where any misrepresentations were made as required
12    by the Federal Rules of Civil Procedure.

13       The Court grants Defendants FED. R. CIV. P. 12(b)(6) motions. The First Amended
14    Complaint fails to state a cause of action because of a number of defects, including the
15    absence of any allegations of causation, actionable conduct, or damage.

16       Plaintiff is given leave to amend his complaint. At such time as a cause of action is
17    stated by Plaintiff, the Court will be in a position to evaluate whether Plaintiff has shown a
18    probability of prevailing on his claims. If Plaintiff's complaint survives Rule 9(b) and Rule
19    12(b)(6) challenges, the Court will consider Defendants' Motions to Strike. If Plaintiff can
20    show a probability of prevailing under an amended complaint, the Motions to Strike will be
21    denied. If Plaintiff's final attempt at amending his complaint does not survive Rule 9(b)
22    and/or Rule 12(b)(6) challenges, the Motions to Strike pursuant to CAL. CODE CIV. P. §
23    425.16 will be granted, with prejudice, with costs and reasonable attorneys' fees to the
24    Defendants incurred prosecuting the Motions to Strike.

25                      **IV. DISCUSSION**

26                **DEFENDANTS' MOTIONS TO STRIKE**
                  **PURSUANT TO CAL. CODE CIV. P. § 425.16**
27

28    **A.**    <u>Standard of Law</u>

      CAL. CODE CIV. P. § 425.16 is California's anti-Strategic Lawsuits Against Public

1   Participation, or "SLAPP" statute.[1]  It is intended to deter lawsuits brought primarily to chill

2   the valid exercise of the constitutional rights of freedom of speech and petition for the

3   redress of grievances.  CAL. CODE CIV. P. § 425.16(a).  A SLAPP motion may be brought

4   to strike a lawsuit based on a defendant's exercise of free speech.  If a defendant prevails on

5   a SLAPP motion, he is entitled to reasonable attorney's fees and costs.  CAL. CIV. CODE §

6   425.16(c).  If a plaintiff prevails and the court finds the special motion to strike is frivolous

7   or solely intended to cause delay, the court shall award costs and reasonable attorney's fees

8   to plaintiff.  Id.

9       The anti-SLAPP statute establishes a procedure for early dismissal of meritless

10   lawsuits against public speech.  Metabolife Int'l, Inc. v. Wornick, 72 F.Supp.2d 1160, 1165

11   (S.D.Cal. 1999).  "Once the defendant establishes prima facie that the statute applies, the

12   plaintiff must show a 'reasonable probability' of prevailing on its claim."  Id. (citing Wilcox

13   v. Superior Court, 27 Cal.App.4th 809, 824-25 (1994)).  To establish defendant's prima facie

14   case, it must show that the lawsuit arises from any act "in furtherance of the person's right of

15   petition or free speech under the United States or California Constitution in connection with

16   a public issue."  CAL. CODE CIV. P. § 425.16(b)(1).

17       If the defendant makes the prima facie showing, the plaintiff must demonstrate that

18   "'the complaint is legally sufficient and supported by a prima facie showing of facts to

19   sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"  Id.

20   (quoting Wilcox, 27 Cal.App.4th at 823).  "This burden is 'much like that used to determine

21   a motion for nonsuit or directed verdict,' which mandates dismissal when 'no reasonable

22   jury' could find for plaintiff."  Id. (quoting Wilcox, 27 Cal.App.4th at 824).

23       Plaintiff must meet its burden of proving prima facie falsity of statements with

24   admissible evidence.  Id. at 1165, 1167.  In a case where discovery has not yet begun, as in

25   this case, the plaintiff must produce its own evidence, admissible under Fed. R. Evid. 702,

26   that the statements complained of are false.  Id. at 1167.

---

[1] The anti-SLAPP statute, although state law, is substantive law that supports a motion to dismiss in
federal diversity actions.  United States v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 972-73 (9th Cir.
1999).

## B.    The APA's SLAPP Motion

According to the APA, Plaintiff is asking this Court to hold a nonprofit educational and scientific association liable in damages for developing and publishing a book about unquestionably important public health issues.  APA Mem. to Strike at 1.  The DSM is a "classification and glossary of mental disorders used to provide a common language for clinicians and research investigators to communicate regarding the disorders for which they have professional responsibility." Id. at 4.

As a threshold matter, the APA explains that the anti-SLAPP statute applies to corporations as well as individuals, and has been applied to two of the causes of actions involved in this case, the Consumer Legal Remedies Act and the California Unfair Practices Act.  DuPont Merck Pharm. Co. v. Superior Court, 78 Cal.App.4th 562 (2000).

Next, the APA argues that publication of the DSM is core First Amendment speech in connection with a public issue, as is the scientific debate surrounding its publication. Publication of the DSM falls within the anti-SLAPP's definition of speech.  CAL. CODE CIV. P. § 425.16(e)(3) defines speech as "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Section 425.16(e)(4) provides an alternative definition of speech that includes petitioning activities.  The DSM is a writing made in a public forum.  And even Plaintiff admits that the DSM is a matter of public interest.  Am. Compl. at ¶ 17 (the DSM generates "great public attention").

In support, the APA cites Metabolife, 72 F.Supp.2d 1160.  In that case, the court granted defendants' anti-SLAPP motion and dismissed the case with prejudice.  The speech at issue was statements made on a television show that Metabolife was not safe.  The Court found these statements protected.  "Because the safety of Metabolife 356 remains an open question of substantial public importance, contributions to the debate are protected by the First Amendment." Id. at 1172.  The APA also cites a string of cases recognizing generally that scientific expression and debate are protected by the First Amendment.

In addition, the APA argues that its efforts to educate state, national, and international

1  governmental bodies about diagnostic categories and criteria is protected petitioning activity.

2  The APA lists as examples its collaborative activities with the World Health Organization

3  and other federal agencies. The APA has offered its views on ADD and ADHD before

4  Congressional Committees and has worked with WHO to establish uniform standards and

5  guidelines. The APA argues that Plaintiff's Amended Complaint implicates the integrity of

6  the APA's dialogue with the government.

7       After arguing its prima facie case, the APA turns to Plaintiff's probability of success.

8  The APA argues that Plaintiff's Amended Complaint fails to allege any specific facts to

9  support its charges and maintain its claims. Furthermore, the APA claims that the

10  declarations supplied by Plaintiff do not meet the threshold for admissibility prescribed by

11  Fed. R. Evid. 702 and Daubert because none of the declarants is a psychiatrist or medical

12  doctor, was involved in the development of the criteria for ADD and ADHD, identify

13  specific false or misleading statements, or provide evidence of improper financial

14  relationships.

15  C.    **CHADD'S SLAPP Motion**

16       CHADD's recent mission statement provides:

17       "CHADD works to improve the lives of people affected by AD/HD through:

18            •   Collaborative Leadership
               •   Advocacy

19             •   Research
               •   Education and

20             •   Support

21       CHADD CARES!"

22  (Cohen Decl. ¶4). To carry out these goals, CHADD publishes magazines and other printed

23  materials, holds an annual conference, and conducts outreach efforts to governmental

24  agencies and legislative bodies. (Cohen Decl. ¶ 9)

25       CHADD argues that Plaintiff is attacking its right to petition the government "to

26  reduce and eliminate laws and restrictions concerning the use of Ritalin" (Am. Compl. ¶ 37)

27  and restrain its communications with its members and the public about AD/HD and its

28  effective treatment (Am. Compl. ¶¶ 36-37, 39, 40). CHADD argues that the anti-SLAPP

1   statute protects these activities.

2   **D.      Novartis' SLAPP Motion**

3   Novartis' argues that Plaintiff's claims arise out of Novartis' participation in the

4   public discussion and development of diagnostic criteria for the serious medical conditions

5   of ADD and ADHD.  FDA approval continues for the use of Ritalin in treating ADD/ADHD.

6   Novartis does not diagnose ADD/ADHD or prescribe Ritalin to any patients.  Thus,

7   according to Novartis, Plaintiff is only attacking Novartis' speech in connection with Ritalin.

8   Novartis claims that all of Plaintiff's allegations against Novartis involve speech.  The

9   claims include Novartis' alleged promotion, support, facilitation, failure to provide

10  information, and misrepresentations in connection with Ritalin.  Am. Compl. ¶¶ 15, 31, 33,

11  34, 38, 42, 43, 48, 57.  Novartis argues that the speech relates to a public issue and a matter

12  of public interest, as evidenced by Plaintiff's own lawsuit.

13  Novartis cites DuPont-Merck in support of its argument.  In that case, a

14  pharmaceutical company was sued under CAL. CODE § 1750 and CAL. BUS. & PROF. §

15  17500 (the same statutes at issue here) based on the company's lobbying, advertising,

16  marketing, and public relations activity concerning competing versions of a drug.  The Court

17  of Appeal found that the company's speech was protected under the anti-SLAPP statute and

18  remanded the case to the trial court to determine whether plaintiffs could show a probability

19  of success on the merits.  DuPont-Merck, 78 Cal.App.4th at 564.

20  Novartis argues that Plaintiff's claims are exactly the type the anti-SLAPP statute was

21  designed to prevent.  Plaintiff is attempting to impose his view on the way doctors practice

22  medicine in California, rather than debating the current DSM standards and FTC approval in

23  the available public fora.  Novartis cites authority[2] that this Court may look at the litigation

24  history in evaluating its anti-SLAPP motion and points out that the same plaintiff's attorneys

25  have begun multiple class actions in multiple states with classes that overlap.  Furthermore,

26  some of the attorneys here sued in the late 1980s and early 1990s making some of the same

27  fraud and conspiracy allegations present here.  One of the Plaintiff's lawyers here is quoted

28

[2] Church of Scientology of Cal. v. Wollersheim, 42 Cal.App.4th 628, 649 (1996).

as saying "We're going to make it very, very costly for any company to make a profit off of this. It's going to be very, very expensive to prescribe Ritalin from now on." (Drury Decl. Ex. C).

Finally, Novartis argues that Plaintiff cannot establish a probability that he can prevail on his claims. Novartis makes the following arguments:

- Plaintiff failed to plead fraud with the particularity required by FED. R. CIV. P. 9(b). Novartis Mem. to Strike at 13.

- The allegations that Novartis contributed money and information to the APA allege nothing illegal. Id. at 13-14.

- Plaintiff has not stated a cause of action under the UN Convention because the treaty at issue does not give rise to a private right of action. Id. at 14.

- The statute of limitations bars Plaintiff's claims. The CLRA has a three year statute of limitations and the Unfair Competition Law has a four year statute of limitations. The last revision of the DSM occurred in 1994, the same year that Plaintiff alleges he was prescribed Ritalin. Id. at 15-16.

- Plaintiff cannot maintain a consumer rights action for allegedly being inadequately informed of risks where the he never experienced any related damage. Id. at 16.

- Plaintiff cannot prove that ADD does not exist or that Ritalin is not an effective treatment. Id. at 18.

E.   **Plaintiff's Omnibus Opposition**

   1.   **Plaintiff argues that California's anti-SLAPP law is inapplicable.**

Plaintiff contends that Defendants failed to prove that his lawsuit is the type of action the California legislature intended the anti-SLAPP statute to encompass. First, Plaintiff argues that his lawsuit is not generally the type the anti-SLAPP statute was designed to deter. Plaintiff points out that the anti-SLAPP statute was intended to deter lawsuits brought primarily to chill the exercise of protected speech. The hallmark of a SLAPP suit is that it lacks merit and is brought to obtain an advantage over another party by imposing litigation costs. Plaintiff contends that the parties are not the usual parties in an anti-SLAPP action, the lawsuit does not seek to weaken Defendants' litigation position or deter future litigation, and California's Legal Remedies and Unfair Practices Acts are not among the favored causes of actions in SLAPPS.

In a lengthy footnote, Plaintiff argues that Defendants' activities do not fall within the

1 | realm of protected petitioning because the Constitutional language on petitioning applies to

2 | people or groups who feel "aggrieved." Plaintiff argues that petitioning activity involves

3 | seeking redress from the government for grievances. Plaintiff cites one case including

4 | language that the right of petition "is essential to protect the ability of those who perceive

5 | themselves to be aggrieved by the activities of governmental authorities to seek redress

6 | through all the channels of government." City of Long Beach v. Bozek, 31 Cal.3d 527, 535

7 | (1982).

8 | Second, Plaintiff argues that his experts' testimony establishes that his case is not a

9 | strategic lawsuit against public participation, but is instead a lawsuit based on serious and

10 | substantial scientific problems. Plaintiff's expert Dr. Kirk reaches the conclusion that "39%

11 | of children who do not suffer from ADD/ADHD are diagnosed as having this mental

12 | disorder." Dr. Kirk goes on to attack the DSM as unscientific and reliable. In addition,

13 | Plaintiff's expert Dr. Caplan concludes that the APA's process in revising the DSM is

14 | unscientific. Moreover, Dr. Kirk claims that his research uncovered a financial connection

15 | between Ciba-Geigy and the APA.

16 | Finally, Plaintiff argues that DuPont-Merck, 78 Cal.App.4th 462, and Metabolife, 72

17 | F.Supp.2d 1160, are distinguishable. Plaintiff states that the activities at issue in DuPont-

18 | Merck were "(1) lobbying and other activities seeking to influence the decisions of

19 | regulatory and legislative bodies and (2) advertising, marketing, and public relations

20 | activities directed at the medical profession and the general public." Pl. Omnibus Opp. at 13

21 | (citing DuPont-Merck, 78 Cal.App.4th at 555-56.) Plaintiff then claims that the activities at

22 | issue here are different because they "involve[] the facilitation of and inappropriate

23 | broadening of the diagnostic criteria for ADD/ADHD ... nor does the complaint attempt to

24 | harm the ability of the defendants to freely speak of the drug Ritalin." Id.

25 | Plaintiff argues that Metabolife is distinguishable based on the "identity of the parties

26 | who claim to have been victimized by the SLAPP lawsuit." Id. at 14. According to Plaintiff,

27 | in this case a large pharmaceutical company and two national organizations claim to be the

28 | victims of an attack on their free speech and petition rights by a mere teenager. In contrast,

- 1 b0CV1839 Order Granting Motions to Dismiss; Deferring Motions to Strike

1  Metabolife involved a television broadcast.  According to plaintiff, the "anti-SLAPP was not

2  meant to assist these powerful entities in their attempts to prevent an individual from raising

3  claims about a product in the United States Judicial System." Id.

4      **2.    Plaintiff argues that he has a reasonable probability of success.**

5      First, Plaintiff quotes the elements of California Legal Remedies Act § 1770 under

6  which he is suing:

7      (a)    The following unfair methods of competition and unfair or deceptive acts or
           practices undertaken by any person in a transaction intended to result or which results
8          in the sale or lease of goods or services to any consumer are unlawful:

9      (2)    Misrepresenting the source, sponsorship, approval or certification of goods or
           services;
10

11     (3)    Misrepresenting the affiliation, connection or association with, or certification
           by another;

12     (5)    Representing that goods or services have sponsorship, approval, characteristics,
           ingredients, uses, benefits or quantities which they do not have ...;
13

14     (7)    Representing that goods or services are of a particular standard, quality, or
           grade, or that goods are of a particular style or model, if they are of another.

15  CAL. CODE § 1770(a)(2), (3), (5), (7).

16     Next, Plaintiff makes the following points in support of his argument against the

17  APA:

18     •      The process by which the DSM is constructed is scientifically flawed and not
            based upon empirical evidence. Pls. Omnibus Opp. at 19.
19

20     •      The APA has engaged in a pattern and practice of misrepresenting to the public
            that the DSM is grounded in empirical evidence since 1980. Id. at 20.

21     •      Ritalin use is much higher in the United States than in European countries and
            the DSM can account for this difference. Id. at 21.
22

23     •      Plaintiff is a victim of the ever-broadening ADD/ADHD diagnoses. Id. at 23.

24     •      The APA misrepresents its affiliation, connection, or association with another
            by failing to disclose its dependancy on pharmaceutical companies for
            contributions. Id. at 24.
25

26     Finally, Plaintiff makes the following points in support of his argument against

27  Ciba/Novartis:

28     •      Ciba/Novartis acted in concert with the APA in improperly broadening the
            criteria for ADD/ADHD. Id.

- 12 -  00CV1839 Order Granting Motions to Dismiss; Deferring Motions to Strike

1  • Ciba/Novartis engaged in improper funding of the APA. Id. at 25.

2  Plaintiff does not make any additional arguments against CHADD.

3  **3.  Plaintiff asks the Court to grant discovery if it finds Defendants' SLAPP
   motions meritorious.**

4
5  Plaintiff argues that this Court should find Section 425.16 inconsistent with the

6  federal policy of granting discovery before ruling on summary judgment.

7  **F.  CAL. CODE CIV. P. § 425.16 Applies to All of the Speech at Issue.**

8  **1.  Defendants have carried their prima facie burden.**

9  According to the First Amended Complaint, the APA's speech at issue is publication

10  of the DSM. First Am. Compl. ¶¶ 15-23, 25-27, 35. CHADD's speech at issue is

11  government lobbying regarding the laws on Ritalin and general dissemination of allegedly

12  false information through undisclosed fora. First Am. Compl. ¶¶ 37, 40. Novartis' speech

13  at issue is speech promoting Ritalin to the APA and to the public. First Am. Compl. ¶ 38.

14  Plaintiff concedes that the issue is one of public importance.

15  CAL. CODE CIV. P. § 425.16(e)(3) specifically provides that speech protected by the

16  anti-SLAPP statute includes, "any written or oral statement or writing made in a place open

17  to the public or a public forum in connection with an issue of public interest." Defendants

18  have prima facie shown that the speech at issue is protected.

19  Plaintiff's arguments to the contrary are unpersuasive. The anti-SLAPP law does not

20  specify that it only applies to certain types of parties or specific causes of action. In fact, it

21  specifically provides that "this section shall be construed broadly." CAL. CODE CIV. P. §

22  425.16(a). Furthermore, Plaintiff's declarations do not provide any support for Plaintiff's

23  argument that this lawsuit does not fall within the anti-SLAPP provisions.

24  **2.  The Court cannot make a finding as to Plaintiff's probability of prevailing
   on the claim because Plaintiff has not yet stated a claim.**

25  As described in detail herein in connection with the Defendants' motions to dismiss,

26  Plaintiff has not alleged any causal connection to these Defendants. He has not alleged that

27  he, his parents, or his physician relied on the DSM in misdiagnosing him with ADD; he has

28  not alleged that he, his parents, or his physician have ever seen any CHADD literature; he

- 13 - 00CV1839 Order Granting Motions to Dismiss; Deferring Motions to Strike

has not alleged that Novartis misdiagnosed him or that he even suffered any damages as the

result of taking Ritalin.  Because Plaintiff has not yet stated a claim, the Court cannot yet

rule whether there is a probability that Plaintiff will eventually prevail on any claims.

### 3.  Discovery is not appropriate.

An express purpose of the anti-SLAPP statute is to avoid imposing litigation costs,

including discovery, on Defendants protected by the statute.  CAL. CODE CIV. P. §

425.16(g) specifically stays discovery.  The Court may order specified discovery,

notwithstanding 425.16(g), only upon noticed motion and for good cause shown.  Id.  The

Court finds that Plaintiff has not shown good cause for lifting the stay and granting

discovery.  Plaintiff's lawsuit is based on alleged misrepresentations by the Defendants.

Plaintiff should be able to specifically allege the content, source, and date of those

misrepresentations and provide its own competent evidence why it believes the

representations were false.  Plaintiff does not need discovery from Defendants to allege its

claims in accordance with the Federal Rules of Civil Procedure.

## DEFENDANTS' MOTIONS TO DISMISS
## PURSUANT TO FED. R. CIV. P. 9(b)

### A.  Standard of Law

FED. R. CIV. P. 9(b) requires that "[i]n all averments of fraud or mistake, the

circumstances constituting the fraud or mistake shall be stated with particularity."  As the

Ninth Circuit explained in Bly-Magee v. California, 236 F.3d 1014 (9th cir. 2001):

> Rule 9(b) serves not only to give notice to defendants of the specific fraudulent
> conduct against which they must defend but also 'to deter the filing of
> complaints as a pretext for the discovery of unknown wrongs, to protect
> [defendants] from the harm that comes from being subject to fraud charges,
> and to prohibit plaintiffs from unilaterally imposing upon the court, the parties
> and society the enormous social and economic costs absent some factual basis.'

Id. at 1018 (quoting In re Stac Elec. Sec. Litig., 89 F.3d 1399, 1405 (9th Cir. 1996)).

Rule 9(b) imposes a burden beyond FED. R. CIV. P. 8(a)'s pleading requirement that

the plaintiff need only give the defendant fair notice of its claim.  Rule 9(b) requires

particularized allegations of the circumstances constituting fraud.  Plaintiff must set forth an

explanation as to why the statement or omission complained of was false or misleading.  In

re Glenfed, Inc. Secur. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Plaintiff must include statements regarding the time, place, and nature of the alleged fraudulent activities. Id.

**B.      Defendants' Rule 9(b) Arguments[3]**

   **1.      The Defendants argue that Rule 9(b) applies to the causes of action alleged by Plaintiff.**

FED. R. CIV. P. 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Defendants provide binding authority that Plaintiff's causes of action must be pled with particularity. See Haskell v. Time, Inc., 857 F.Supp. 1392, 1398 n.9 (E.D.Cal. 1994) (Sections 17200 and 17500 unfair business practices and false advertising must be pled in accordance with FED. R. CIV. P. 9(b)); Khoury v. Maly's of Cal., Inc., 14 Cal.App.4th 612, 619 (1993) (dismissing a complaint that failed to describe the manner in which customers were misled, explaining that a plaintiff suing under Section 17200 "must state with reasonable particularity the facts supporting the statutory elements of the violation"); Outboard Marine Corp. v. Superior Court, 52 Cal.App.3d 30, 37 (1975) (Consumer Legal Remedies Act Section 1770 is a fraud cause of action).

Moreover, Ciba/Novartis argue that FED. R. CIV. P. 9(b)'s pleading requirement applies because Plaintiff's allegations sound in fraud, such as misrepresentation, deception, and inducement.

   **2.      Defendants argue that the First Amended Complaint does not meet the pleading requirements provided by Rule 9(b).**

Defendants complain that Plaintiff's allegations fail to explain the time, place, and nature of the alleged fraud beyond broad generalizations. CHADD argues that Plaintiff's Amended Complaint does not identify even one false, misleading, or deceptive statement made by CHADD. CHADD also points out that Plaintiff has not identified any advertisements.

Ciba/Novartis argue that they are not on notice of their apparent misrepresentations

---

[3]CHADD and Novartis specifically moved to dismiss pursuant to FED. R. CIV. P. 9(b). The APA joined in both motions.

1 and that Plaintiff's allegations are insufficient to justify discovery. Ciba/Novartis argue that

2 if Plaintiff is in a position under Rule 11 to allege that he has been deceived by passages of

3 the DSM, misrepresentations, or advertising, he should be in a position to state what

4 passages, facts, or advertisements misled him.

5      Ciba/Novartis brought to the Court's attention that the Southern District of Texas

6 found that FED. R. CIV. P. 9(b)'s pleading requirement applies to a complaint brought by

7 the same plaintiffs' attorneys alleging facts virtually identical to the instant Amended

8 Complaint when it dismissed plaintiff's complaint with leave to amend.

9

C.   **Plaintiff Contends That He Is Not Required to Comply with FED. R. CIV. P.**

10     **9(b), but Has Done So, in Any Event.**

11      Plaintiff claims that FED. R. CIV. P. 9(b) does not apply to his consumer rights based

12 causes of action. Plaintiff says that Rule 9(b) only applies to common law fraud and

13 mistake. Plaintiff objects that the Defendants' authority only discussed the application of

14 Rule 9(b) in dicta.

15      In any event, Plaintiff argues that he has met Rule 9(b)'s mandates. Plaintiff says he

16 has pled the best he can without the benefit of discovery and that this Court should be

17 hesitant to dismiss the Amended Complaint before discovery. Plaintiff claims that the

18 following allegations sufficiently plead fraud:

19     a.   CHADD received contributions from Ciba/Novartis without disclosing the

20 contributions,

21     b.   CHADD has attempted to increase the supply of Ritalin,

22     c.   CHADD's activities have led to a substantial increase in the amount of Ritalin
taken by school children,

23     d.   CHADD has distributed misinformation.

24      In specific response to Ciba/Novartis' Motion, Plaintiff argues that the following

25 allegations plead fraud with particularity:

26     a.   Novartis maintained financial relationships with CHADD and the APA,

27     b.   Novartis failed to disclose the financial relationships,

28     c.   Novartis took steps to increase the use of Ritalin,

- 16 -   00CV1839 Order Granting Motions to Dismiss; Deferring Motions to Strike

d.      Novartis failed to warn consumers that inadequate studies have been performed on side effects,

e.      Novartis has misled the public about the limited effectiveness of Ritalin.

## D.      Discussion

Plaintiff failed to plead fraud with the particularity required by FED. R. CIV. P. 9(b). Plaintiff does not persuasively distinguish the binding authority that FED. R. CIV. P. 9(b) applies to his claims and is incorrect that Rule 9(b) only applies to common law causes of action.

In addition, allegations of a financial relationship between Novartis, CHADD, and the APA do not state an actionable claim. Plaintiff failed to plead any allegations of specific representations that were false, when the representations were made, where the representations were made, and by whom. Finally, Plaintiff has not alleged any causal connection to the Defendants or any damages. Plaintiff should be able to point out some specific misrepresentations to support Plaintiff's claims, but failed to do so. The Court hereby grants Defendants' Rule 9(b) motions.

## DEFENDANTS' MOTIONS TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

## A.      Standard of Law

A motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim can only be dismissed with prejudice if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). The court need not, however, accept every allegation in the complaint as true; rather, the court "will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).

1     "Generally, a district court may not consider any material beyond the pleadings in ruling

2 on a Rule 12(b)(6) motion." Hal Roach Studios v. Richard Feiner and Co., 896 F.2d 1542, 1555

3 n.19 (9th Cir. 1990) (citing Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 552

4 (9th Cir. 1984)). "However, material which is properly submitted as part of the complaint may

5 be considered." Hal Roach Studios, 896 F.2d at 1555 n. 19 (citing Amfac Mtg Corp. v. Arizona

6 Mall of Tempe, 583 F.2d 426 (9th Cir. 1978)). In addition, a court may, on a motion to dismiss,

7 take judicial notice of facts outside the pleadings as allowed pursuant to Federal Rule of

8 Evidence 201. Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986)

9 (abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S.

10 104 (1991)). Therefore, "on a motion to dismiss a court may properly look beyond the

11 complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to

12 one for summary judgment." Mack, 798 F.2d at 1282.

13 **B.**   **Defendants' Arguments in Support of their Rule 12(b)(6) Motions to Dismiss**[4]

14     The APA and CHADD argue that their activities are not the sort of "unlawful" or "unfair"

15 consumer or business activity covered by the California consumer protection statutes under

16 which Plaintiff sues. The DSM states that it is not intended for consumers, but is instead to be

17 applied by professional psychiatrists, physicians, and psychologists. Moreover, neither the APA

18 nor CHADD actually markets or sells Ritalin. Nowhere does the Amended Complaint allege

19 a transaction between the APA and Plaintiff, CHADD and Plaintiff, that Plaintiff purchased or

20 read the DSM, that Plaintiff ever read any CHADD literature, or that Plaintiff saw or relied on

21 any APA or CHADD advertisements.

22     **1.**   **The APA contends that it is protected by a California safe harbor doctrine**
23         **because California laws incorporate the DSM.**

24     The APA's primary contention is that the DSM is protected under a California law "safe

25 harbor" because the State of California has adopted the DSM language verbatim as part of

26 several statutes, therefore the DSM language may not be considered unlawful. For example, to

27 obtain MediCal coverage for a mental disorder, the disorder must be diagnosed in accordance

28 _____

[4]Novartis did not move to dismiss under FED. R. CIV. P. 12(b)(6).

1   with the DSM.  The MediCal regulations specifically include the DSM definition for ADD.

2        The APA cites <u>Cal-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal.4th 163

3   (1999) in support of its safe harbor argument.  In that case, cellular phone manufacturers sued

4   L.A. Cellular for selling phones below cost.  In relevant part, Plaintiffs alleged that L.A. Cellular

5   violated the CAL. BUS. & PROF. § 17200's proscription on unfair competition, which is defined

6   as "any unlawful, unfair or fraudulent business act or practice."

7        The <u>Cal-Tech</u> court explained that 17200 is "sweeping," but not unlimited.  <u>Id</u>. at 182.

8   "When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair

9   competition law to assault that harbor."  <u>Id</u>.  "To forestall an action under the unfair competition

10  law, another provision must actually 'bar' the action or clearly permit the conduct."  <u>Id</u>. at 183.

11       The court recognized a safe harbor where another statute provided that "providers of

12  cellular services shall be permitted to sell cellular telephones below cost" under defined

13  circumstances  <u>Id</u>.   The court remanded the case to determine whether those defined

14  circumstances were present.[5]

15      **2.**    **The APA and CHADD argue that the scope of the relevant statutes does not**
16            **encompass the their not-for-profit activities.**

17       The CLRA forbids certain unfair and deceptive practices that are "undertaken by any

18  person in a transaction intended to result or which results in the sale or lease of goods or services

19  to any consumer."  CAL. CIV. CODE § 1770.  Transaction is defined as "an agreement between

20  a consumer and any other person."  <u>Id</u>. § 1761(e).  Likewise, Section 17200 covers "business

21  act[s] or practice[s]" designed to deceive consumers or competitors.  CAL. BUS. & PROF.

22  § 17200.  "[T]he statute only applies to activities that can properly be called a business

23  practice."  <u>Isuzu Motors Ltd. v. Consumers Union, Inc.</u>, 12 F.Supp.2d 1035, 1048 (C.D.Cal.

24  1998).  The APA and CHADD argue that these provisions are limited to transactions between

25  a buyer and seller in the sale of consumer goods.

26       In support, the APA cites <u>Boyd v. Keyboard Network Magazine</u>, 2000 WL 274204 (N.D.

27       [5]The APA also cites <u>Schnall v. The Hertz Corp.</u>, 78 Cal.App.4th 1144 (2000).  In that case, a statute
28  provided that "a rental company may charge for an item or service provided" if certain conditions were met.  The
    court upheld dismissal of Plaintiff's 17200 unfair business practice claim based on a rental agreement that met
    the statute's requisite conditions, finding the agreement was protected by the statute's safe harbor.

1  Cal. March 1, 2000). In that case, the plaintiff attempted to hold a magazine liable for a good
2  purchased through an advertisement in the magazine. Plaintiff sued under two of the statutes
3  at issue here, CAL. BUS. & PROF. § 17500 and CAL. CIV. CODE § 1770. The court found that
4  a publisher has no duty to investigate or otherwise warn readers of a potentially misleading
5  advertisement.

6      The court explained that Section 17500 was inapplicable because that section only applies
7  to two classes of defendants: "those who harbor the 'intent directly or indirectly to dispose of
8  real or personal property or to perform services ... or to induce the public to enter into any
9  obligations relating thereto ...'; and those who 'make or disseminate or cause to be so
10  disseminated [untrue or misleading statements] as part of a plan or scheme with the intent not
11  to sell that personal property or those services ...'" Id. at *3. The court found neither category
12  applied because a third party defrauded plaintiff and plaintiff did not allege that the magazine
13  attempted to induce plaintiff to purchase or contract for goods or services.

14      The court found Section 1770 similarly inapplicable because the defendants' actions were
15  not intended to result in the sale or lease of consumer goods or services. Nor did they occur in
16  the context of a transaction in which consumer goods or services were leased or sold. The APA
17  argues that the CLRA has even less applicability here, where the DSM is intended to guide
18  physicians in diagnosis, not in the use of any specific treatment program or purchase or sale of
19  any product. Plaintiff nowhere contends that CHADD engages in any transactions, business
20  activities, or advertising of Ritalin that bring it within the scope of these statutes.

21      The APA also argues that the legislative history makes clear that the CLRA only provides
22  a remedy for consumers who have been deceived by unethical merchants in sales transactions,
23  which is not at issue here.

24      **3.**    **The APA argues that the alleged affirmative misrepresentations are not
   actionable.**
25
26  The CLRA makes illegal: "misrepresenting the source, sponsorship, approval, or
   certification of goods or services" and "misrepresenting the affiliation, connection, or
27
   association with, or certification by, another." CAL. CIV. CODE § 1770(a)(2) & (3). The APA
28
   contends that Plaintiff's allegation that the APA failed to disclose Novartis' contributions does

1  not fall under either category.  The APA provides legislative history that the former category

2  forbids industries from labeling their products as being at the top of a grading standard when no

3  grading standard actually exists.  The latter category forbids the labeling of a product as

4  approved by a celebrity, when the celebrity does not in fact endorse the product.

5       **4.**    **The APA argues there is not the requisite causal link.**

6       The CLRA applies to damages "as a result of the" unlawful practice.  CAL. CIV. CODE

7  § 1780.  The APA argues that Plaintiff cannot maintain his claim unless he can link the APA's

8  alleged activity with a specific injury, such as the misdiagnosis or wrong prescription of the

9  named plaintiff caused by the DSM.  The Amended Complaint does not contain any allegations

10  of whether or how the DSM played a role in Plaintiff's diagnosis.

11       **5.**    **The APA and CHADD argue that they cannot be held liable for false advertising because they do not advertise Ritalin.**

12

13       Neither the APA nor CHADD markets or sells pharmaceutical products and the Amended

14  Complaint does not allege that the APA or CHADD sold Ritalin.  Plaintiff's cause of action is

15  based on the allegation that "untrue and misleading advertising" presents "a continuing threat

16  to members of the general public of California" because the "prescription and use of the drug

17  methylphenidates presents the serious threat of health consequences." Am. Compl. ¶ 65.  The

18  APA and CHADD contend that this claim cannot be maintained against them.

**C.**    <u>Plaintiff's Opposition to the 12(b)(6) Motions</u>

19       **1.**    **Plaintiff argues that there is no safe harbor protecting the DSM because**

20            **California's adoption of DSM language in other statutes is irrelevant.**

21       Plaintiff argues that the California legislature did not specifically consider or decide

22  whether the APA could be sued for publication of the DSM.

23       **2.**    **Plaintiff argues the consumer protection statutes encompass the APA's and CHADD's activities.**

24

25       In response to the APA's argument, Plaintiff argues that the DSM is widely published and

26  available and there is no language prohibiting consumers from using it, so it falls within the

27  consumer protection statutes.  Second, Plaintiff argues that the sale of the DSM is the consumer

28  transaction at issue, not the sale of Ritalin, so it is irrelevant that the APA does not sell Ritalin.

Finally, Plaintiff claims that the misrepresentation at issue is the DSM's misrepresentation that

1   its diagnostic criteria for ADD is scientifically reliable. Plaintiff argues that this

2   misrepresentation is proscribed under Section 1770(a)(5) (the DSM claims to have qualities

3   which it does not actually have) and Section 1770 (a)(7) (the DSM is of a particular quality).

4       Plaintiff argues that CHADD's activities fall within the consumer protection statutes.

5   First, Plaintiff argues that CHADD failed to rebut his allegations that CHADD has not fully

6   disclosed the source of its financial contributions. Second, Plaintiff responds that the CLRA

7   should be liberally construed to promote its purpose of protecting consumers against unfair and

8   deceptive business practices. Plaintiff alleges that CHADD sells its magazines and other printed

9   materials. Plaintiff cites a 1954 case to argue that a business practice is anything done habitually

10  that becomes a custom in arguing that both the APA and CHADD engage in business practices.

11      Finally, Plaintiff argues that virtually any representation made in any manner in

12  connection with the sale of goods, services, or credit is advertising. Plaintiff argues that his

13  allegations that CHADD and the APA made misrepresentations are sufficient to maintain his

14  cause of action for false advertising.

15      **3.    Plaintiff argues there is a causal connection.**

16      Plaintiff claims that the misrepresentations at issue against the APA are:

17      a.    Misrepresentation as to the source and sponsorship of the DSM;

18      b.    Misrepresentation of the APA's affiliation, connection, or association with others
    including Novartis and CHADD;

19

20      c.    Misrepresenting that the DSM has sponsorship, approval, and characteristics that
    it does not;

21      d.    Misrepresenting that the DSM is of a particular standard when it is not.

22  After asserting these grounds, Plaintiff asserts, "[t]hus, the causal link between Plaintiff and the

23  APA's misrepresentations has been adequately alleged."

24      **4.    Plaintiff claims that the false advertising at issue is the advertising of the DSM
    and CHADD's alleged misstatements.**

25

26      Plaintiff claims that this count against the APA applies to the DSM because the DSM

27  misleads the public into believing it is based on valid science, when in fact it is not. And

28  Plaintiff argues that this Count against CHADD is based on CHADD's public

    misrepresentations.

1   **D.    Discussion of the APA's and CHADD's 12(b)(6) Motions**

2         There is no causal connection between the APA and this Plaintiff, nor between CHADD

3   and this Plaintiff.  Plaintiff does not allege that he, his doctor, or his parents ever read the DSM

4   or any CHADD literature.  Nor does he allege that he suffered damages that directly resulted

5   from any alleged misstatements in the DSM or in CHADD literature.  Plaintiff's late contention

6   that the sale at issue in his claims against the APA is the sale of the DSM is disingenuous and

7   found nowhere in the Amended Complaint.  In any event, Plaintiff alleges no misrepresentations

8   in connection with the sale of the DSM or CHADD literature.  If the issue is the APA's and

9   CHADD's acceptance of donations, Plaintiff has cited no APA or CHADD statement that it does

10  not accept Novartis' contributions, or even any statement listing some donors, while omitting

11  Novartis.  Finally, Plaintiff has not identified any advertisements.  The Court hereby grants the

12  APA's and CHADD's 12(b)(6) Motions to Dismiss.

13                         **V.  CONCLUSION**

14        The Court hereby GRANTS Defendant American Psychiatric Association's Motion to

15  Dismiss Plaintiff's First Amended Complaint Pursuant to FED. R. CIV. P. 12(b)(6).  The Court

16  hereby GRANTS Defendant CHADD Inc.'s Motion to Dismiss the Complaint Pursuant to Rules

17  9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  The Court hereby GRANTS

18  Defendants Novartis and Ciba-Geigy's Motion to Dismiss Pursuant to Federal Rules of Civil

19  Procedure 9(b).  Plaintiff is granted leave to amend.  If he elects to do so, he must file his

20  Second Amended Complaint on or before April 16, 2001.  If no amended complaint is filed by

21  April 16, 2001, the Court will dismiss Plaintiff's First Amended Complaint with prejudice and

22  grant each Defendant's Motion to Strike pursuant to CAL. CODE CIV. P. § 425.16 with

23  reasonable attorney's fees and costs.

24        If the Plaintiff elects to amend his complaint, the Defendants shall appear as they deem

25  appropriate within twenty days of service.  If the Court finds that the Second Amended

26  Complaint states a claim, the Court will then complete its consideration of Defendant's Motions

27  to Strike under CAL. CODE CIV. P. § 425.16.  Defendants may supplement or replace their

28  Motions to Strike the First Amended Complaint with briefing that specifically addresses the

1  Second Amended Complaint and Plaintiff may respond accordingly.   The Defendants have

2  already met their prima facie burden of showing that their speech is protected.   Thus, the only

3  issue before the Court, once a claim is stated, will be whether Plaintiff has shown a probability

4  of prevailing on his claims.

5      IT IS SO ORDERED.

6

7  DATED: _3-8-01_          _____

8                          UNITED STATES SENIOR DISTRICT JUDGE

9

10  cc:   **All Parties**
          **Magistrate Judge**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 - 00CV1839 Order Granting Motions to Dismiss; Deferring Motions to Strike

# EXHIBIT "B"

CutePDF - www.fastio.com

COPY

1    Donald F. Hildre; SBN 066188
     Thomas Haklar; SBN 169039
2    Peggy J. Reali; SBN 153102
     DOUGHERTY, HILDRE, DUDEK & HAKLAR
3    2550 Fifth Avenue, Suite 600
     San Diego, CA 92103
4    (619) 232-9131;  Fax (619) 232-7317

5    John P. Coale
     Julia W. McInerny
6    COALE COOLEY LIETZ McINERNY
     818 Connecticut Avenue, N.W., Suite 857
7    Washington, D.C. 20006
     (202) 887-4770; Fax (202) 887-4778
8

9    Richard Scruggs
     Sidney A. Backstrom
     Robin Reid Boswell
10   SCRUGGS, MILLETTE, BOZEMAN & DENT, PA
     P.O. Drawer 1425
11   Pascagoula, Mississippi 39568-1425
     (228) 762-6068; Fax (228) 762-1207
12

     Additional attorneys listed on signature page
13

14                **UNITED STATES DISTRICT COURT**

15            **SOUTHERN DISTRICT OF CALIFORNIA**

16

17   TODD D. VESS, a Minor, by DEBORAH VESS,    )  **CASE NO. 00-CV-1839**
     his Guardian ad Litem, individually, on behalf of   )
18   those Similarly Situated and on behalf of the      )  **FIRST AMENDED CLASS ACTION**
                                          )   **COMPLAINT FOR**
19   General Public of the State of California,        )  **VIOLATION OF THE CONSUMER**
                                          )  **LEGAL REMEDIES ACT**
        Plaintiffs,                        )  **[CALIFORNIA CIVIL CODE  SECT.**
20                                          )  **1750 et.  seq. ]**
                                         )
21   v.                                       )  **and**
                                         )
22   CIBA-GEIGY CORP. USA; NOVARTIS       )
     PHARMACEUTICALS CORP.; CHILDREN     )  **COMPLAINT FOR RESTITUTION**
23   AND ADULTS WITH ATTENTION-DEFICIT/   )  **AND INJUNCTIVE RELIEF UNDER**
     HYPERACTIVITY DISORDER (CHADD);     )  **CALIFORNIA BUSINESS AND**
24   AMERICAN PSYCHIATRIC ASSOCIATION,   )  **PROFESSIONS CODE  SECTION**
     and DOES 1 through 100, inclusive,        )  **17200 AND SECTION 17500**
25                                          )
          Defendants.                  )  **and**
26                                          )
                                         )  **DEMAND FOR JURY TRIAL**
27                                          )

28

EXHIBIT B          1

Individual and representative Plaintiff TODD D. VESS, by and through DEBORAH VESS as his Guardian ad Litem, on behalf of the general public on behalf of those similarly situated, alleges on personal knowledge those facts which pertain to the named Plaintiff or to his attorneys and further alleges on information and belief as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because the amount in controversy exceeds Seventy-Five Thousand dollars ($75,000.00) and because there is complete diversity of citizenship between plaintiff and all defendants.

2.      Venue is appropriate pursuant to 28 U.S.C. Section 1391.

3.      At all relevant times, Defendants have done and continue to do business in the State of California and County of San Diego.  They have made contracts to be performed in whole or in part in California.  Defendants' products have been manufactured, tested, sold, offered for sale, supplied or placed in the stream of commerce in California.  In the course of business, Defendants have materially participated with other Defendants in performing the acts described above.  They have received and continue to receive substantial compensation and profits from the sale of Ritalin in California and San Diego County as well as the sale and use of the diagnostic criteria for ADD/ADHD.  Defendants have made material omissions and misrepresentations in California.  The wrongful acts and conduct, in furtherance of a conspiracy, are the basis of the claims that have occurred and continue to occur in California and San Diego County.

## PARTIES

**A.      Plaintiff (and Those Similarly Situated)**

4.      TODD D. VESS, individually, through his Guardian ad Litem, DEBORAH VESS, is a minor who resides in the State of California,  County of San Diego and County, and appears individually with respect to all causes of action, and also appears on behalf of those individuals similarly situated with respect to the First Cause of Action.

/ / /

/ / /

/ / /

Case No. 00-CV-1839 B (CGA)
First Amended Class Action Complaint

**B.**     **Plaintiff (and the General Public)**

5.     With respect to the Second and Third Causes of Action, plaintiff, a resident of the State of California, brings this action pursuant to California Business and Professions Code Section 17204, individually and  as a private attorney-general on behalf of the members of the general public of California.

6.     Plaintiff  was prescribed, and purchased and ingested, the drug Ritalin in June, 1994, when he was nine years of age.

**C.**     **Defendants**.

7.     Defendant CIBA-GEIGY CORP. USA is a corporation with its principal place of business in New Jersey and its corporate headquarters in the State of New York.  It may be served through its registered agent in the state of California.  The Prentice-Hall Corporation System, Inc., 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.  This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

8.     Defendant NOVARTIS PHARMACEUTICALS CORP. is a corporation with its principal place of business and corporate headquarters in New Jersey.  It may be served through its registered agent in the State of California.  Corporation Service Company, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.  This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

9.     Defendant CHILDREN AND ADULTS WITH ATTENTION-DEFICIT / HYPERACTIVITY DISORDER (CHADD) is an unincorporated association with its principal office in Maryland.  It may be served by serving its registered agent in California.  Larry Komar, 1104 East Walnut Creek, Covina, California 91724.  This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

10.     Defendant AMERICAN PSYCHIATRIC ASSOCIATION is a nonprofit corporation with its principal place of business in Washington, D.C.  It may be served by serving its registered agent in California.  Paracorp Incorporated, 1130 K Street, Suite LL60, Sacramento, California  95814.  This defendant has, at all times material hereto, transacted substantial and continuous business in the State of California.

11.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, the true names and capacities, whether individual, corporate, associate or otherwise of defendants DOES 1 through 100, inclusive, are unknown at this time to plaintiff who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein by such fictitious names were involved in the distribution, manufacturing, promotion and/or sale of Ritalin, and were in some way legally responsible for the events and happenings herein referred to which were a legal cause and substantial factor in bringing about injuries and damages to plaintiff as alleged. Plaintiff will amend this complaint to allege the true names and capacities of the DOE defendants when ascertained.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.     Ritalin is a psycho stimulant drug. It is the trade name for a pharmacological substance known as methylphenidate. Methylphenidate, and therefore Ritalin, are Class II or Schedule II controlled substances under the Controlled Substance Act. See 21 U.S.C. ?812; 21 C.F.R. 1308.12.

13.     From approximately 1955 through 1995, the exclusive or primary manufacturer and supplier of Ritalin in this country was defendant Ciba-Geigy Corp., USA (Ciba). In 1996, Ciba merged with Sandoz Pharmaceuticals Corp. to become defendant Novartis Pharmaceutical Corp. (Novartis). Upon information and belief, Novartis is presently, and has been since 1996, the sole or primary manufacturer and supplier of Ritalin in the United States. Ciba, however, continues as a separate corporate entity. For ease of reference, defendants Ciba and Novartis are sometimes referred to in this complaint as Ciba/Novartis.

14.     Ciba/Novartis has manufactured, marketed and sold Ritalin since approximately 1955. The product was promoted, beginning in the 1960's, by Ciba as an antidepressant which brightens moods and improves performance. Defendant also claimed effectiveness for depression, chronic fatigue and psychoneurosis. From 1955 until the late 1970's, Ciba aggressively sought applications and markets for Ritalin in an effort to boost sales and profits.

///

///

15.    Ciba/Novartis, in combination with the American Psychiatric Association (APA), planned, conspired, and colluded to develop, promote, broaden and confirm the diagnoses of Attention Deficit Disorder (ADD) and Attention Deficit Hyperactivity Disorder (ADHD) in a highly successful effort to increase the market for its product Ritalin. Previously recognized in a much more narrow fashion and under another name, Attention Deficit Disorder was first listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM) in 1980. ADD was further and inappropriately broadened in 1987 when it became known as ADHD.

16.    Ciba/Novartis and APA maintained financial relationships, either directly, or through agency of members of the relevant committees that constructed the DSM criteria for ADD and ADHD  These relationships and their nature were not disclosed to the class.

17.    The DSM is currently and has been a widely used and disseminated compendium of psychiatric diagnoses. Listing of a diagnosis in the DSM provides an official-seeming, medical imprimatur to a particular set of symptoms or behaviors that may, in fact, be entirely normal. A new official diagnosis in the DSM, however, generates vast numbers of new prescriptions, increased insurance coverage, and great public attention.

18.    In 1980, the APA published a new diagnostic manual called the Diagnostic and Statistical Manual, 3d edition. The hallmark of this endeavor was the alleged scientific basis for the diagnoses and the criteria by which those diagnoses were to be made.

19.    Although the manual set forth standards by which the diagnostic criteria were to be judged as valid and therefore included in the manual, the diagnosis of ADD was included in the manual despite failing to meet those standards. In so doing, the APA fraudulently and falsely claimed and represented that the diagnostic criteria for ADD was scientifically reliable.

20.    In an effort to cover up this fraud, the APA improperly clustered the data from tests of the ADD diagnostic criteria with data supporting other unrelated conditions whose reliability was established. The intended and ultimate effect of such improper clustering was to inappropriately legitimize the unproven and arbitrary ADD diagnostic criteria.

///

///

Case No. 00-CV-1839 B (CGA)
First Amended Class Action Complaint

21. In addition to the above, the APA also purposefully and fraudulently failed to include the use of any objective criteria in the creation and promulgation of the ADD diagnostic criteria (despite there being overwhelming evidence supporting the inclusion of the same).

22. In presenting the criteria in the guise of a scientific endeavor, APA misrepresented a fundamentally arbitrary set of criteria as a scientifically validated diagnostic set, misleading both clinicians, patients, the general public, and the class.

23. These efforts by the APA, to improperly expand the diagnostic criteria for ADD are revealed in the current version of the DSM, the DSM IV-TR. In it, for example, the APA added the diagnosis of ADHD "not otherwise specified" which allows for the diagnosis to be imposed on those who even fail to meet the general criteria.

24. The inappropriate vagueness and breadth of the diagnostic criteria for ADD and ADHD has been critically noted by the American Academy of Pediatrics that, in a paper produced in connection with their 2000 annual meeting specifically referred to the "lack of definitive diagnostic criteria." Likewise, the NIH (National Institutes of Health) in Consensus Development Conference Statement #58, noted that "an important research need is the investigation of standardized age and gender specific diagnostic criteria."

25. In addition, in versions of the DSM after DSMIII –R the pretense of field testing was eliminated, and the lack of objective measures was improperly continued.

26. From the inception of the DSM, the APA has improperly failed to address or include dissenting opinion and failed to fully address or actually obscured the scientific literature that advances the position that the diagnosis of ADD is properly made only as a diagnosis of exclusion, a view emphasized by the American Academy of Child and Adolescent Psychiatry in their 1997 practice parameters for the diagnosis of ADHD which prominently states: "By definition, the diagnosis of ADHD cannot be made if the symptoms occur exclusively in the presence of a pervasive developmental disorder, schizophrenia, or other psychotic disorder or if they are better accounted for by another psychiatric disorder." This view is similarly shared by the AMA in its Council of Scientific Affairs, Report 5, which says: "The goals of the actual examination of the child are to determine whether he or she meets the diagnostic criteria and to look for conditions

1    other than ADHD that might simulate it."

2        27.    In all editions of DSM and since the inception of the DSM, the APA has fraudulently

3    failed to disclose, through misrepresentations and omissions, the role of the drug industry and, in

4    particular, Novartis, in the creation, promulgation and revisions of the DSM or the financial

5    connection between its committee members and Ciba.

6        28.    Such a connection is clearly present. One need only review the November 17, 2000

7    issue of Psychiatric News, the official publication of the APA, and in particular a statement by its

8    current president who decries the APA's dependence upon the drug industry stating "[The] APA

9    is overly-dependent on pharmaceutical companies. Approximately one third of APA's income is

10    derived from the pharmaceutical industry."

11        29.    Further, direct solicitations from the APA to drug companies have been customary.

12        30.    Ciba/Novartis deliberately, willfully, intentionally, and negligently failed to disclose

13    its financial relationship with the APA and CHADD when it knew that such information would be

14    important to those diagnosed with ADD/ADHD and those who were subsequently prescribed

15    Ritalin.

16        31.    In addition to its actions and involvement with the inappropriate broadening of the

17    ADD and ADHD diagnoses, Ciba/Novartis took steps to promote and dramatically increase the

18    sales of Ritalin by way of the following:

19            a.    Actively promoting and supporting the concept that a significant percentage

20                of children suffer from a disease which required narcotic treatment/therapy;

21            b.    Actively promoting Ritalin as the drug of choice to treat children diagnosed

22                with ADD and ADHD;

23            c.    Actively supporting groups such as Defendant CHADD and the APA, both

24                financially and with other means, so that such organizations would promote

25                and support (as a supposed neutral party) the ever-increasing implementation

26                of the ADD/ADHD diagnosis as well as directly increasing Ritalin sales;

27    ///

28    ///

32.    As the DSM definitions were promulgated, publicized and progressively reformulated to ever broaden the characterization of ADD/ADHD, there has been a corresponding rise in the use of Ritalin. Such use has damaged the class economically, physically and emotionally. *The Agency for Health Care Policy and Research (AHCPR)* in its Technical Report Number 3 referenced DSM III and DSM III-R as a "significant contributor" to the increased diagnosis rates of ADHD.

33.    Ciba/Novartis while listing side effects on its package insert has failed to warn that the full range of side effects has not yet been adequately studied. It is noted by the AHCPR Technical Report Number 11 that "Studies are required to assess the severity of most adverse effects associated with stimulant medication and to evaluate, explicitly, the tradeoff between improvement in ADHD symptoms and signs and adverse effects." and " However, data are inadequate on the long-term effects and severity of the adverse effects of most interventions. No comparative studies were identified with data on important adverse effects of interest, including potential for abuse of stimulants . . ."

34.    Ciba/Novartis failed to disclose the limited effectiveness of its product and misled clinicians and the public to believe that Ritalin would improve academic performance and long-term outcomes in those who took Ritalin and that improvement may be in spite of taking medication. The AHCPR Technical Report Number 11 notes: "These studies show a trend to general improvement over time regardless of treatment and support the need for long-term placebo-controlled studies. MPH appears to reduce behavioral disturbance in ADHD children as long as it is taken. However, there is no information on the reasons so many children discontinue medication. The studies available provide little evidence for improvement in academic performance with stimulants, even though MPH treatment appears to produce consistent behavior improvement."

35.    APA failed to disclose that although the DSM in its various editions refers to much clinical literature on ADD/ADHD, almost all of this research is of poor quality. The AHCPR Technical Report Number 11 notes: "The small sample size of most studies limited their power to detect meaningful clinically important differences among the interventions. Ninety-seven percent of the reports of RCTs did not describe the method of randomization. Ninety-five percent did not

1 describe efforts to conceal allocation from the investigators who recruited the patients into the
2 study (e.g., allocation codes were obtained by telephone after a patient accepted to enter the study).
3 Eighty-seven percent did not describe the number of withdrawals and dropouts and the reasons for
4 such in each of the groups. These limitations increased the likelihood of biased results."

5       36.     Defendant CHADD (Children and Adults with Attention-Deficit/Hyperactivity
6 Disorder) is an unincorporated association formed in 1987 with a stated purpose of "representing
7 individuals with AD/HD, for education, advocacy and support." On its website, it alleges to be "the
8 leading non-profit organization for children and adults with AD/HD;" and notes that it is
9 continue[d] to be run by volunteers, with the support of a small national staff."

10       37.     Nowhere in its website does CHADD reveal that it has received significant if not life
11 sustaining contributions from CIBA. For example, CHADD does not disclose that it received
12 $748,000 from Ciba/Novartis in the period 1991 to 1994 alone. During the periods when CHADD
13 received funding from Ciba/Novartis, CHADD deliberately attempted to increase the sales of
14 Ritalin, and to increase the supply of methylphenidate available in the United States, and to reduce
15 or eliminate laws and restrictions concerning the use of Ritalin and methylphenidate in the United
16 States, all at the request of CIBA upon information and belief, and obviously to the financial
17 benefit, of Ciba/Novartis.

18       38.     Ciba/Novartis made such financial contributions with the purpose of advertising and
19 promoting sales of Ritalin - an internationally controlled substance. Ciba/Novartis has thus
20 repeatedly violated Article 10 of the United Nations Convention on Psychotropic Substances, 1019
21 U.N.T.S. 175 (1971).

22       39.     CHADD's activities nationwide have led to a significant increase in the amount of
23 Ritalin taken by school children and have directly resulted in enormous profits to Ciba/Novartis. In
24 so doing, CHADD has damaged the class by over promoting a drug where none was needed. In so
25 doing, CHADD has acted as an agent of, and/or has aided and abetted Ciba/Novartis in its efforts to
26 increase sales and earn additional profits from the sale of Ritalin.

27 ///
28 ///

Case No. 00-CV-1839 B (CGA)
First Amended Class Action Complaint

40.    CHADD has distributed misinformation. This year it has been reported in the Journal of the American Academy of Child and Adolescent Psychiatry that "Family associations, such as Children and Adults With Attention Deficit Disorder (CHADD), Federation of Families, and National Alliance for the Mentally Ill (NAMI), are not systematically connected to the research community to ensure that dissemination of new information is rapid, efficient, and accurate."

## CO-CONSPIRATORS

41.    Each Defendant is sued individually as a primary violator and as a co-conspirator. The liability of each Defendant arises from each Defendant's agreement to commit unlawful acts and the performance of those acts, in concert, to further the agreement. The conspiracy began as early as the 1970s and continues to the present.  Defendants each knowingly and willfully entered into and pursued a common course of conduct, by agreement with the other Defendants and third parties, to commit all or part of the unlawful acts alleged herein.  Such unlawful acts were committed intentionally, knowingly, maliciously and without legal justification or excuse.

42.    All Defendants conspired, combined and colluded to promote and dramatically increase the sales of Ritalin by way of the following:

        a.    Actively promoting and supporting the concept that a significant percentage of children suffer from a ADD/ADHD which required narcotic treatment/therapy;

        b.    Facilitating the inappropriate broadening  of  new diagnostic criteria for ADD/ADHD in the DSM.

43.    The interrelationship between Ciba/Novartis, the drug industry as a whole, and the APA caused and contributed to the APA's assistance, support, aid, and collusion with Ciba/Novartis that could be, and ultimately was, applied to a large percentage of children in the United States, and for which the APA, in combination with other defendants, continued and presently continue to promote the prescription, use and sale of Ritalin.

/ / /

/ / /

/ / /

# CLASS ACTION ALLEGATIONS

### By Plaintiff on Behalf of All Others Similarly Situated
### (Relating to Count One - Violation of California Civil Code Section 1750 *et. seq.*)

44.     Plaintiff brings this Class action, individually and on behalf of others similarly situated, as a Class action pursuant to Federal Rule of Civil Procedure, Rule 23 and Section 1781 of the California Civil Code.  The Class which Plaintiffs seek to represent is:

The class shall be composed of all California residents who purchased and/or ingested the drug Ritalin as treatment for ADD/ADHD.

45.     Specifically excluded from the Plaintiff Class are Defendants herein, any entity in which any of the Defendants has a controlling interest, any officers, directors or employees of any of the Defendants and legal representatives, heirs, successors, and assignees of any of the Defendants.  Also excluded are any federal, state or local entities.

46.     This action is brought and may properly be maintained as a Class action pursuant to Federal Rule of Civil Procedure 23.  The community of interest in the litigation is well defined and the proposed Class is easily ascertainable.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of this provision.  In addition this action may be brought under California Civil Code Section 1781.

47.     <u>Numerosity of the Class</u>.  The Class is so numerous that the individual joinder of all Members is impractical under the circumstances of this case.  While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff believes that at a minimum, there are thousands of Class Members located throughout the State of California.

48.     <u>Common Questions Predominate</u>.  Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Members of the Class.  These common legal and factual questions arise from various issues, which do not vary among Class Members:

a.     All Defendants conspired, combined and colluded to promote and dramatically
increase the sales of Ritalin by way of the following:

///

i.  Actively promoting and supporting the concept that a significant percentage of children suffer from ADD/ADHD which required narcotic treatment/therapy;

ii.  Facilitating the inappropriate broadening of new diagnostic criteria for ADD/ADHD in the DSM.

b.  Despite information in the medical and scientific literature concerning these side effects of Ritalin use, Defendants failed in all respects to advise potential consumers, doctors, and/or schools, teachers or other interested parties of the nature and extent of such side effects.

c.  Furthermore, Defendant CHADD similarly failed to provide adequate information to interested parties concerning the nature and extent of potential side effects.

49.  <u>Typicality of Claims</u>.  Plaintiff's claims are typical of the claims of Members of the Class, all of whom have purchased and/or ingested the drug Ritalin as treatment for ADD/ADHD, which was manufactured, distributed, and marketed by Defendants.  Plaintiff and all Class Members have sustained, and will continue to sustain damages, injuries and irreparable harm arising out of Defendants' common course of conduct.

50.  <u>Adequacy of Representation</u>.  Plaintiff, by Deborah Vess, his Guardian ad Litem, will fairly and adequately protect the interest of Members of the Plaintiff Class.  Plaintiff resides in California and purchased and/or ingested Defendants' products for treatment of ADD/ADHD in California during the Class period.  Plaintiff is a representative Member of the Class, whose members are united by a common interest, and Plaintiff is an adequate representative since he has no interests that are adverse to the interests of absent Class Members.  Plaintiff has retained counsel who are both competent and experienced in the prosecution of complex consumer fraud, mass tort and class actions.  Plaintiff and his counsel intend to prosecute this action vigorously for the benefit of the Class.  Plaintiff and his counsel will fairly and adequately protect the interests of the Members of the Class.

/ / /

/ / /

51.     <u>Superiority and Substantial Benefit</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of Class Members' claims is impractical.  Even if all Class Members could afford individual litigation, the court system could not.  It would be unduly burdensome for the courts to adjudicate identical legal and factual issues in hundreds of thousands of cases.  Individual litigation increases delay and expense to all parties, and especially the court system, associated with the resolution of the complex legal and factual issues of the case.  The prosecution of separate actions by the individual Members of the Class would create a risk of inconsistent adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants.  The prosecution of separate actions would create a risk of adjudications that would be dispositive of the interests of the other Class Members who are not parties to such adjudications, thus substantially impairing the ability of such non-party Class Members to protect their interests.  Individual litigation of this case presents a great potential for inconsistent or contradictory judgments.

52.     Class action treatment is a superior method of adjudication and provides a substantial benefit to the litigants and the courts since it presents far fewer management difficulties and provides the benefits of a single adjudication and comprehensive supervision by a single court.  Furthermore, as the damages suffered by each individual Member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual Members of the Class to redress the wrongs done to them.  An important public interest will be served by addressing the matter as a class action.  Notice of the pendency and of any resolution of this class action can be provided to Class Members by publication and broadcast.

53.     Furthermore, Plaintiff's claims are certifiable as a Class action because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

/ / /

/ / /

/ / /

54. Plaintiff, by Deborah Vess, his Guardian ad Litem, is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. Accordingly, the proposed Class fulfills the certification criteria of California law and certification of the above-defined Class is appropriate under one or more of the provisions of California law.

## FIRST CAUSE OF ACTION

**CLASS ACTION FOR VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT**
**[California Civil Code Section 1750, et seq.]**
**(By All Plaintiffs Against All Defendants)**

55. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

56. California Civil Code Section 1770 provides, in relevant part:

The following unfair methods of competition and unfair or deceptive

acts or practices undertaken by any person in a transaction intended

to result or which results in the sale or lease of goods or services to

any consumer are unlawful: . . .

(2)     Misrepresenting the source,

sponsorship, approval or certification

of goods or services;

(3)     Misrepresenting the affiliation, connection or

association with, or certification by, another;

. . .

(5)     Representing that goods or services have sponsorship,

approval, characteristics, ingredients, uses, benefits or quantities

which they do not have or that a person has a sponsorship, approval,

status, affiliation, or connection which he or she does not have.

. . .

///

///

(7)     Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

57.     Defendants have committed, and continue to commit, an unlawful method of competition, and unfair and deceptive acts in violation of Civil Code Section 1770 by their commission of deceptive acts which have deceived and continue to deceive the consuming public, including Plaintiff.   In particular, Defendants affirmatively misrepresented material facts and failed to disclose material facts to the Plaintiff, including but not limited to the following:

a.     Actively promoting and supporting the concept that a significant percentage of children suffer from ADD/ADHD which required narcotic treatment/ therapy;

b.     Facilitating the inappropriate expansion of the  diagnostic criteria for ADD/ADHD in the DSM.

58.     Plaintiff, pursuant to California Civil Code? Section 1780 seeks an order of this court enjoining such methods, acts and practices and an order requiring the Defendants to undertake the following:

a.     Disgorge all revenues and profits acquired as a result of the unlawful methods, acts and practices;

b.     Provide restitution resulting from the unlawful method, acts and practices of defendants;

c.     Pay exemplary damages; and

d.     Any other relief this Court deems proper.

## SECOND CAUSE OF ACTION

**UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200**
**(Against All Named Defendants)**

59.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

/ / /

60.     Plaintiff hereby brings this action individually and on behalf of the general public pursuant to Section 17200 et. seq. of the Business and Professions Code of the State of California, the Unfair Competition Act.

61.     The acts complained of in each of the preceding paragraphs of this complaint, and each of them, constitute unfair and/or unlawful acts in competition in violation of Section 17200 of the California Business and Professions Code.  Such acts and violations have not abated and will continue to occur unless enjoined.

62.     These violations have injured Plaintiff, the General Public, and fair and lawful competition.  These violations have coextensively unjustly enriched the defendants.  Plaintiff and the general public are entitled to injunctive, disgorgement/restitution, and other equitable relief.

## THIRD CAUSE OF ACTION

### INDUCEMENT THROUGH FALSE AND MISLEADING STATEMENT UNDER BUSINESS AND PROFESSIONS CODE SECTION 17500
### (Against All Defendants)

63.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

64.     Plaintiff hereby brings this action individually and on behalf of the general public pursuant to Section 17500 et seq. of the Business and Professions Code of the State of California, the Unfair Competition Act.

65.     The acts of untrue and misleading advertising by defendants, and each of them, as described above presents  a continuing threat to members of the general public of California in that their prescription and use of the drug methylphenidate presents the serious threat of health consequences.

66.     The general public of the State of California have no other adequate remedy of law in that individual lawsuits  would prove too time consuming and burdensome and would not properly address the monetary damage and equitable relief requested herein.

/ / /

/ / /

/ / /

67.    As a direct and proximate result of the aforementioned acts, Defendants received and continue to receive in excess of a billion dollars in sales from the sale of Ritalin to members of the General Public of California who were prescribed and who ingested Ritalin as treatment for ADD/ADHD to their detriment.

68.    These violations have injured the General Public and fair and lawful competition. These violations have coextensively unjustly enriched defendants, and each of them. The General Public is entitled to disgorgement of profits, restitution and other equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, jointly and severally, as follows:

### For the First Cause of Action:

1.    Plaintiff prays for injunctive and declaratory relief as a result of Defendants' violation of California Civil Code Section 1750 et. seq., as follows:

    a.    Injunctive relief to halt unlawful methods, acts and practices engaged in by defendants;

    b.    Requiring Defendants to disgorge all revenues and profits acquired as a result of their unlawful methods, acts and practices;

    c.    Requiring Defendants to provide restitution resulting from unlawful methods, acts and practices of defendants;

    d.    Requiring Defendants to pay exemplary damages; and

    e.    Any further relief this Court deems proper.

### For the Second and Third Causes of Action:

1.    Plaintiff prays for equitable relief for violations of Section 17200 and Section 17500 of the Business and Professions Code as hereinabove alleged. Such relief includes:

    a.    Injunctive relief to halt prior violations of law and to assure fair and lawful competition, including court orders regulating advertising, marketing, and production practices;

    b.    Restitution to plaintiff and the general public who have been injured or otherwise disadvantaged by defendants' unfair and unlawful acts in competition;

1         c.      Restitution sufficient to fully disgorge the revenues obtained from plaintiff and

2 the general public for unfair and unlawful acts in competition;

3         d.      For attorneys' fees as provided by statute and/or pursuant to the "common fund"

4 doctrine and/or pursuant to equitable principles of contribution.

5 **For All Causes of Action:**

6      1.      For Plaintiff's reasonable attorneys' fees and costs.

7      2.      For prejudgment interest as provided by law.

8      3.      For costs of suit incurred herein.

9      4.      For such other and further relief as this Court deems equitable, just and proper.

10                           **JURY DEMAND**

11       Plaintiff herein demands a trial by jury.

12 DATED: January 17, 2001      DOUGHERTY, HILDRE, DUDEK & HAKLAR

14                By:   _Peggy J. Reali_

15                        Donald E. Hildre; SBN 066188
Thomas D. Haklar; SBN 169039
Peggy J. Reali; SBN 153102
DOUGHERTY, HILDRE, DUDEK & HAKLAR
2550 Fifth Ave., Suite 600
San Diego, CA 92103
(619) 232-9131; Fax (619) 232-7317
Attorneys for Plaintiff Todd Vess, a Minor, by and through
Deborah Vess, his Guardian ad Litem,
individually and on Behalf of Those Similarly
Situated and on behalf of the General Public.

John P. Coale
Julia W. McInerny
COALE COOLEY LIETZ McINERNY
818 Connecticut Avenue, N.W., Suite 857
Washington, D.C. 20006
(202) 887-4770; Fax (202) 887-4778

Richard F. Scruggs
Sidney A. Backstrom
Robin Reid Boswell
SCRUGGS, MILLETTE, BOZEMAN & DENT, P.A.
P.O. Drawer 1425
Pascagoula, Mississippi 39568-1425
(228) 762-6068; Fax (228) 762-1207

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Marc C. Saperstein
Kevin Decie
DAVIS, SAPERSTEIN & SOLOMON
375 Cedar Lane
Teaneck, NJ 07666
(201)907-5000; Fax (201) 692-0444

C. Andrew Waters (CA Bar No. 147259)
Tex. State Bar No. 20911450
Charles S. Siegel
WATERS & KRAUS
3219 McKinney Ave.
Dallas, Texas 75204
(214) 357-6244; Fax (214) 522-9286

1   Donald F. Hildre; SBN 066188
    Thomas Haklar; SBN 169039
2   Peggy J. Reali; SBN 153102
    DOUGHERTY, HILDRE, DUDEK & HAKLAR
3   2550 Fifth Avenue, Suite 600
    San Diego, CA 92103
4   (619) 232-9131, FAX (619) 232-7317

5   John P. Coale; SBN 212662
    Julia W. McInerny
6   COALE LIETZ McINERNY BROADUS
    818 Connecticut Avenue, N.W., Suite 857
7   Washington, D.C. 20006
    (202) 887-4770; Fax (202) 887-4778
8
    Richard Scruggs
9   SCRUGGS, MILLETTE, BOZEMAN & DENT P.A.
    P.O. Drawer 1425
10  Pascagoula, Mississippi 39568-1425
    (228) 762-6068
11

12                  UNITED STATES DISTRICT COURT

13                  SOUTHERN DISTRICT OF CALIFORNIA

14

15  TODD D. VESS, a Minor, by DEBORAH VESS,     )    CASE NO.  00CV1839B (CGA)
    his Guardian ad Litem, individually, on behalf of  )
16  those Similarly Situated and on behalf of the      )
    General Public of the State of California,         )
17                                                     )
                    Plaintiffs,                        )    PROOF OF SERVICE BY MAIL
18                                                     )
                                                       )
19              v.                                     )
                                                       )
20  CIBA-GEIGY CORP. USA; NOVARTIS                     )
    PHARMACEUTICALS CORP.; CHILDREN                    )
21  AND ADULTS WITH ATTENTION-DEFICIT/                 )
    HYPERACTIVITY DISORDER (CHADD);                    )
22  AMERICAN PSYCHIATRIC ASSOCIATION,                  )
    and DOES 1 through 100, inclusive,                 )
23                                                     )
                    Defendants.                        )
24
    _____
25          I, CAROLYN FLAUGHER, certify as follows:

26          I am over the age of eighteen years and not a party to the action; I am employed in the County

27  of San Diego, State of California, within which county the subject mailing occurred; my business address

28  is 2550 Fifth Avenue, Suite 600, San Diego, California 92103; I am familiar with this firm's practice for

1 | collecting and processing correspondence for mailing with the United States Postal Service pursuant to

2 | which practice all correspondence will be deposited with the United States Postal Service the same day

3 | in the ordinary course of business.

4 |     I served the following document(s):  **FIRST AMENDED COMPLAINT**

5 | by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each

6 | such addressee respectively as follows:

7 | FAEGRE & BENSON LLP
James A. O'Neal
8 | Bruce Jones
Joseph M. Price
9 | Bridget M. Ahmann
2200 Wells Fargo Center
10 | 90 South Seventh Street
Minneapolis, MN 55402
11 |     Attorney for Novartis Pharmaceuticals Corp and Ciba-Geigy Corp. USA

12 | ARTER & HADDEN LLP
Roxanne M. Wilson
13 | 725 S. Figueroa Street, Suite 3400
Los Angeles, CA 90017-5434
14 |     Attoney for Novartis Pharmaceuticals Corp and Ciba-Geigy Corp. USA

15 | CROWELL & MORING LLP
Laurel Pyke Malson
16 | Luther Zeigler
William L. Anderson
17 | 1001 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2595
18 |     Attorney for American Psychiatric Association

19 | ARENT FOX KINTNER PLOTKIN & KAHN, PLLC
Gerald Zingone, D.C.
20 | 1050 Connecticut Avenue, N.W.
Washington D.C. 20036-5339
21 |     Attorney for CHADD

22 | ARTER & HADDEN LLP
Michael Drury
23 | 550 W "C" Street, 16th Floor
San Diego, CA 92101-3568
24 |     Attorney for Novartis Pharmaceuticals Corp and Ciba-Geigy Corp. USA

25 | / / /

26 | / / /

27 | / / /

28 |

Case No. 00-CV-1839 B (CGA)
PROOF OF SERVICE

1  POST KIRBY NOONAN & SWEAT LLP
   David J. Noonan
2  American Plaza
   600 West Broadway, 11th Floor
3  San Diego, CA 92101
        Attorney for American Psychiatric Association
4
   CHAPIN SHEA MCNITT & CARTER
5  Edward D. Chapin
   501 West Broadway, 15th Floor
6  San Diego, CA 92101-3541
        Attorney for CHADD
7

8        I then sealed each envelope and placed each for collection and mailing on February 22, 2001,

9  following ordinary business practices.

10       I declare under penalty of perjury under the laws of the State of California that the foregoing is

11 true and correct.

12       Executed on February 26, 2001.

13

14                                        Carolyn Flaugher

15                              Carolyn Flaugher

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 00-CV-1839 B (CGA)
PROOF OF SERVICE