71

United States District Court
Southern District of Texas
ENTERED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

**MAY 1 7 2001**

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| **Maria Elena Hernandez, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. B-00-82** |
| **v.** | § | |
| | § | |
| **CIBA-GEIGY Corp. USA, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

BE IT REMEMBERED, that on May 17, 2001, the Court considered the various pending motions and docket filings in this action:

1) Defendant Novartis Pharmaceuticals Corp.'s ("Novartis") Motion for Bifurcation of Discovery [Dkt. No. 32] and Memorandum in support thereof [Dkt. No. 33];

2) Plaintiffs' Response to Defendant Novartis' Motion for Bifurcation of Discovery [Dkt. No. 44];

3) Novartis' Second Motion to Dismiss [Dkt. No. 53] and Memorandum in support thereof [Dkt. No. 54];

4) Defendant American Psychiatric Association's ("APA") Motion and Memorandum in Support of Motion to Dismiss Amended Complaint Pursuant to Rule 9(b) (Corrected) [Dkt. No. 56];

5) APA's Unopposed Motion for Leave to File Motion and Memorandum to Dismiss Amended Complaint Pursuant to Rule 9(b)(Corrected) [Dkt. No. 58];

6) APA's Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) [Dkt. No. 59] and Memorandum in support thereof [Dkt. No. 60];

7) Defendant Children and Adults with Attention-Deficit/Hyperactivity

1

Disorder's ("CHADD") Unopposed Motion for Leave to File Motion to
Dismiss Amended Complaint [Dkt. No. 62];

8)    CHADD's Motion to Dismiss Plaintiffs' First Amended Complaint [Dkt. No.
      63] and Memorandum in Support thereof [Dkt. No. 64];

9)    Plaintiffs' Unopposed Motion to Extend Time to Respond to Motion to
      Dismiss [Dkt. No. 61];

10)   Plaintiffs' Response to Defendants' Motions to Dismiss and attached
      Second Amended Complaint [Dkt. No. 65];

11)   CHADD's Reply Brief [Dkt. No. 66];

12)   APA's Reply Brief [Dkt. No. 67];

13)   Novartis' Reply Brief [Dkt. No. 68];

14)   Defendants' Unopposed Motion for Leave to File Supplemental Authority
      [Dkt. No. 69]; and

15)   Defendants' Second Unopposed Motion for Leave to File Supplemental
      Authority [Dkt. No. 70].

For the following reasons, the Court **GRANTS** the Defendants' Motions to Dismiss [Dkt.
Nos. 53, 56, 59 and 63].

I.    **Introduction**

      A.    **Procedural History**

      On October 17, 2000, the Court ordered the Plaintiffs to re-plead their causes of
action for common law fraud, violation of the New Jersey Consumer Fraud Act
("NJCFA"), conspiracy to commit common law fraud, and conspiracy to violate the
NJCFA to conform with the particularity requirements of Federal Rule of Civil Procedure
9(b) [Dkt. No. 45].[1]  In an effort to comply with the Court's Order, the Plaintiffs filed their

_____

      [1] However, the Court did not require the Plaintiffs to re-plead their claim under
Article 10 of the United Nations Convention on Psychotropic Substances ("the UN
Convention"), and noted that there is no caselaw that states it provides an implied
private right of action.

2

First Amended Complaint [Dkt. No. 49].  Thereafter, the Defendants filed Motions to Dismiss under both Federal Rules of Civil Procedure 9(b) and 12(b)(6) [Dkt. Nos. 53, 56, 59 and 63].  The Plaintiffs then filed a response with a Second Amended Complaint attached [Dkt. No. 65].  Defendants Novartis and CHADD addressed the deficiencies of the Second Amended Complaint in reply briefs [Dkt. Nos. 66 & 68]; however, the APA did not, arguing that the Second Amended Complaint is not properly before the Court because the Plaintiffs did not move for leave to amend [Dkt. No. 67].

> B.    **The Court considers Plaintiffs' Second Amended Complaint as their live pleading**

It is true that the Plaintiffs did not move for leave to amend its First Amended Complaint, but merely asked "[i]n the event that the Court finds the plaintiffs' allegations to be insufficiently pleaded with particularity or fail to state a cause of action," that the Court consider the attached Second Amended Complaint [Dkt. No. 65].  They also assured the Court that "[n]o further requests for leave to amend will be made...." [Id.]

As an initial matter, then, the Court had to decide if it would consider the Second Amended Complaint of the Plaintiffs despite the fact that it was improperly filed.  First, the Plaintiffs assured the Court that this would be their final pleading.  In addition, Defendants CHADD and Novartis addressed the merits of the Plaintiffs' Second Amended Complaint in their reply briefs.  Finally, since leave to amend is "freely given when justice so requires" [Fed. R. Civ. P. 15], as a matter of judicial economy the Court considered the Plaintiffs' Second Amended Complaint as their live pleading.  Furthermore, although Defendant APA has not addressed the merits of the Second Amended Complaint, its arguments regarding the Plaintiffs' First Amended Complaint are nevertheless applicable.

> C.    **Brief Summary of the Court's Rulings**

During the October 16, 2000 hearing, the Court pointed out the marked difference between a fraud theory based on the nonexistence of Attention Deficit

CVisPDF - www.faxiss.com

Disorder ("ADD") or Attention Deficit Hyperactivity Disorder ("ADHD"), and a fraud theory based on overgeneralized criteria for diagnosing ADD/ADHD. In response, the Plaintiffs admitted that some children can be appropriately treated with Ritalin [October 16, 2000 transcript, p. 38, ln. 16 - p. 39, ln. 2]. Therefore, it is uncontested by the Parties that a subset of children does exist who can be effectively treated with Ritalin.

Through its Order dated October 17, 2000 [Dkt. No. 45], the Plaintiffs were given the opportunity to amend their complaint to explain their fraud theory. The Court also gave a directive to specify whether the Plaintiffs "allege that their children were prescribed Ritalin when they had no medical need for the drug, or whether there was a legitimate medical need for the prescription, but they were not warned of the side effects or the limited efficacy of the drug."

It is clear from the Plaintiffs' Second Amended Complaint that they contend that their children had no medical need for Ritalin. Although they recognized that a subset of children does exist who can be treated with Ritalin, they argue that their children are improperly characterized as having ADD/ADHD as defined by the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), a widely disseminated compendium of psychiatric diagnoses. They claim that the criteria for ADD/ADHD in the DSM and its subsequent editions are too broad in scope and leads to an incorrect diagnosis of ADD/ADHD and subsequent inappropriate Ritalin prescription. Therefore some children, including their own, are inaccurately categorized as having ADD/ADHD vis a vis the overbroad DSM criteria. In short, the Plaintiffs clam that their children have been improperly swept into a group who are said to have ADD/ADHD because the DSM's criteria for diagnosing it are inappropriately overbroad.

Despite this clarification, however, the Plaintiffs have failed to re-plead the misstatement or omission element of common law fraud with particularity against Defendant Novartis as required by Federal Rule of Civil Procedure 9(b); therefore, this claim and accompanying fraud-based claims are dismissed as to Novartis. As to the Defendant APA, the Plaintiffs fail to re-plead the causation element of common law fraud with particularity, such that it and the derivatively-based fraud claims are

4

dismissed as to the APA, as well. With respect to CHADD, the Plaintiffs failed to re-plead the misstatement or omission, reliance, and causation elements of common law fraud with particularity and thus, this claim and the fraud-based claims are dismissed as to CHADD.

In addition, the Court finds that there is no private right of action under the UN Convention, such that this claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to all the Defendants.

Finally, the Plaintiffs bring new causes of action against Novartis and CHADD for failure to warn. Plaintiffs' pleading is defective under Rule 12(b)(6) as to Novartis because no reasonable inference can be made with respect to the injury element, and as to CHADD because no reasonable inference can be made that CHADD was Novartis' agent or that CHADD assumed the duty of learned intermediary. Therefore, the failure to warn claims against Novartis and CHADD are subject to dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## II. The Plaintiffs Maria Elena Hernandez, Miguel Angel Hernandez, and Heather Butler's Second Amended Complaint

The Plaintiffs attempt to plead their common law fraud and fraud-based claims, *i.e.,* violation of the NJCFA, conspiracy to commit common law fraud, and conspiracy to violate the NJCFA, with particularity in their Second Amended Complaint. These allegations are made against three Defendants: Novartis[2], the APA, and CHADD. The Plaintiffs have jettisoned their fraud theory based on the nonexistence of ADD/ADHD, and instead characterize this suit as concerning the overbroad criteria used to reach a diagnosis of ADD/ADHD in the DSM, a widely used and disseminated compendium of psychiatric diagnoses. The complaint alleges generally that the Defendants acted to

---

[2] Novartis is the successor corporation to the fourth defendant named in the Plaintiff's complaint, Ciba-Geigy Corporation USA. The Plaintiffs state in the Second Amended Complaint that Ciba-Geigy Corporation USA no longer exists.

5

CVisPDF – www.faxina.com

further their economic interest in broadening the diagnostic criteria of ADD/ADHD to increase the sale of Ritalin, a drug manufactured by Novartis.

Regarding Novartis, the Plaintiffs keep most of their original allegations, and add a cause of action for failure to warn. The Plaintiffs allege that Novartis failed to warn them that the full range of side effects of Ritalin had not been adequately studied. In addition, they allege that Novartis failed to disclose the limited effectiveness of its product and misled clinicians and the public to believe that Ritalin would improve academic performance. Moreover, they allege that Novartis failed to disclose that improvements may result regardless of undergoing treatment.

The Plaintiffs plead most of their new allegations against the APA, the entity that is responsible for publishing the DSM and its subsequent editions. The Plaintiffs allege that the APA has undertaken efforts to expand the diagnostic criteria for ADD/ADHD in the DSM and its updated editions, such that the APA misrepresented an "arbitrary set" of criteria to arrive at a false diagnosis of ADD/ADHD. The Plaintiffs also allege that the APA allowed Novartis to participate in the drafting of the diagnostic criteria in the DSM and its subsequent editions because of the financial support given to the APA by Novartis. In addition, Plaintiff Heather Butler asserts that she would not have accepted the diagnosis or prescription of Ritalin had she known of the purportedly broad nature of the diagnostic criteria for ADD/ADHD. She also claims that she was unaware of the financial contributions from Novartis to the APA, but that she would not have accepted the diagnosis or Ritalin prescription had she known of the financial relationship.

As to CHADD, the Plaintiffs Maria and Miguel Hernandez claim that they "reviewed literature published by CHADD and paid for by Novartis and considered the representations found therein in accepting the diagnosis and agreeing to a prescription of Ritalin." On the other hand, Plaintiff Heather Butler had "not reviewed literature published by CHADD and paid for by Novartis." The Plaintiffs repeat many of the same background allegations from its Original Complaint, and have added that CHADD's website does not reveal that it has received contributions from Novartis for the purpose of increasing the sale of Ritalin. As such, the Plaintiffs alleged that CHADD has

6

damaged the class by promoting a drug where none was needed.  Finally, the Plaintiffs
assert a failure to warn claim against CHADD as either the agent of Novartis or as
having assumed the duty as learned intermediary.

III.     **The Defendants' Motions to Dismiss for failure to plead with particularity as
         pursuant to Federal Rule of Civil Procedure 9(b) [Dkt. Nos. 53, 56 and 63]**

   A.     **An overview of Federal Rule of Civil Procedure 9(b)**

        Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or
mistake, the circumstances constituting fraud or mistake shall be stated with
particularity.  Malice, intent, knowledge, and other condition of mind of a person may be
averred generally."  Rule 9(b) was formulated to ensure that defendants can effectively
respond to plaintiffs' allegations, to prevent the filing of baseless complaints to obtain
discovery on unknown wrongs, and to protect defendants from unfounded allegations of
wrongdoing which might injure their reputations.  See Melder v. Morris, 27 F.3d 1097,
1100 (5th Cir. 1994); Frith v. Guardian Life Ins. Co. of America, 9 F.Supp.2d 734, 742
(S.D. Tex. 1998); Mitchell Energy Corp. v. Martin, 616 F.Supp. 924, 927 (S.D. Tex.
1985).  Rule 9(b) motions to dismiss are treated in essence like Rule 12(b)(6) motions
to dismiss for failure to state a claim.  See United States ex rel. Thompson v.
Columbia/HCA Healthcare Corp., 125 F.3d 899, 901 (5th Cir.1997).

        The Fifth Circuit has fleshed out the contours of Rule 9(b)'s particularity
requirement through a long line of case law.[3]   While the exact pleading requirements of
Rule 9(b) are case-specific, there are some essential core requirements that can be
distilled from Fifth Circuit precedent.  See Guidry v. Bank of LaPlace, 954 F.2d 278, 288
(5th Cir.1992).  In every case based on fraud, Rule 9(b) requires the plaintiff to allege
as to each individual defendant "the nature of the fraud, some details, a brief sketch of
how the fraudulent scheme operated, when and where it occurred, and the
participants."  See Askanase v. Fatjo, 148 F.R.D. 570, 574 (S.D. Tex.1993); Hart v.

---

        [3]  See the Court's Order dated October 17, 2000 [Dkt. No. 45].

Bayer Corp., 199 F.3d 239, 248 n.6 (5ᵗʰ Cir. 2000); Williams v. WMX Technologies, Inc.,
112 F.3d 175, 177-78 (5th Cir. 1997); Zuckerman v. Foxmeyer Health Corp., 4
F.Supp.2d 618, 622 (N.D. Tex.1998) ("[T]he plaintiff is obligated to distinguish among
those they sue and enlighten each defendant as to his or her part in the alleged fraud"
(citations omitted)); In re Urcarco Secs. Litigation, 148 F.R.D. 561, 569 (N.D. Tex.
1993). The plaintiff must also explain why the statements or omissions of the
defendant were fraudulent. See Williams, 112 F.3d at 177.

>   B.    **The Plaintiffs fail to re-plead fraud with particularity as required by
>         Federal Rule of Civil Procedure 9(b)**

Rule 9(b) applies to all allegations that sound in fraud. In other words, Rule 9(b)
looks beyond how the plaintiff phrases his or her complaint, and applies "to all cases
where the gravamen of the claim is fraud even though the theory supporting the claim is
not technically termed fraud." Frith, 9 F.Supp.2d at 742 (citing Toner v. Allstate Ins.
Co., 821 F.Supp. 276, 283 (D. Del.1993) (citations omitted)). To prevail on a common
law fraud cause of action, a plaintiff must prove that the defendant made: (1) a
mistatement or omission (2) of a material fact (3) with intent to defraud (4) on which the
Plaintiffs relied, and (5) which proximately caused him or her injury. See Williams, 112
F.3d at 177. Rule 9(b) requires the Plaintiffs to plead all of the elements of common
law fraud with particularity, with one exception. The text of Rule 9(b) explicitly states
that intent to defraud "may be averred generally."

>        i.    **The Plaintiffs fail to re-plead the misstatement or
>              omission element of fraud with particularity with respect
>              to Novartis**

The Plaintiffs argue that Novartis actively promoted Ritalin as the "drug of
choice" through misleading sales and promotional literature. However, the Plaintiffs do
not cite one statement that was made in any alleged literature. Thus, the Plaintiffs fail
to re-plead the misstatement element of common law fraud with particularity as required

8

by Rule 9(b).

In addition, the Plaintiffs claim that Novartis made the following omissions: failure to disclose Ritalin's limited effectiveness, misleading clinicians and the public to believe that Ritalin would improve academic performance, and failure to disclose that improvement may result regardless of undergoing treatment.  However, the Plaintiffs fail to allege the circumstances that would necessitate making such disclosures, such as when and where these disclosures should have been made.  Therefore, the Plaintiffs fail to re-plead the omission element of common law fraud with particularity as required by Rule 9(b).[4]

Since the Plaintiffs have fail to allege misstatement or omission with particularity under Rule 9(b), their claim for common law fraud and their derivative claims for violation of the NJCFA, conspiracy to commit common law fraud, and conspiracy to violate the NJCFA are **DISMISSED** with respect to Defendant Novartis.[5]

---

[4] The Plaintiffs have also made allegations that Novartis financially supported CHADD and the APA.  However, these allegations still do not support a common law fraud cause of action because the Plaintiffs have fail to re-plead the causation element of common law fraud with particularity with respect to CHADD and the APA, discussed infra.

[5] Regarding the NJCFA violation:
Causes of action alleged under the NJCFA are subject to Rule 9(b) if they sound in fraud [see Dkt. No. 45].  Thus, the Court instructed the Plaintiffs to explicitly differentiate whether it was alleging violations of the NJCFA that sound in fraud or violations that fall outside of Rule 9(b)'s pleading requirements [see id.]  However, the Plaintiffs failed to do so, and merely repeat their allegations under the NJCFA from their Original Complaint in their Second Amended Complaint.  Therefore, since the Court is left to presume that the Plaintiffs intend to bring claims under the NJCFA that sound in fraud, this cause of action, too, fails for insufficient pleading with particularity as required by Rule 9(b).

Regarding the conspiracy to commit fraud and conspiracy to violate NJCFA:
The Court had previously determined that a civil conspiracy to commit a tort that sounds in fraud must be pleaded with particularity [see Dkt. No. 45].  Thus, the Court ordered that the Plaintiffs' conspiracy claims, to the extent they relied on common law fraud and violations of the NJCFA that sounded in fraud, must comply with Rule 9(b).

9

ii.   **The Plaintiffs fail to re-plead the omission and causation elements of fraud with particularity with respect to the APA**

The Plaintiffs claim that the APA failed to inform them and others that Novartis made financial contributions to the APA.  However, the Plaintiffs have cited no APA statement in which it denies that it accepted Novartis' contributions, or even any statement listing certain donors, while omitting Novartis [see also Order Granting Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 9(b) and/or 12(b)(6), Civ. No. 00CV18390B, Dkt. No. 69, Exh. A].  Indeed, the APA may openly acknowledge Novartis as a contributor [see id.].  Furthermore, the Plaintiffs allege that they would not have accepted the diagnoses or Ritalin prescription had they known of this financial connection.  However, this allegation is insufficient to adequately plead causation with particularity pursuant to Rule 9(b), because the crucial causal allegation would be that the children's physician used the DSM to diagnose ADD/ADHD and subsequently prescribe Ritalin, discussed below.

The crux of the Plaintiffs' contentions with respect to the APA is that it promulgated overbroad criteria in the DSM for the diagnosis of ADD/ADHD, resulting in the promotion of Ritalin treatment.  However, the Plaintiffs fail to plead an essential link in the causal chain which would connect the DSM to any misdiagnosis and subsequent Ritalin prescription.  The necessary allegation to plead causation with particularity would be the physician's reliance upon the DSM's allegedly overbroad criteria in the diagnosing of ADD/ADHD.

In other words, for the DSM's "overbroad" criteria to cause injury, the children's treating physician had to have found that the children had ADD/ADHD according to its definition in the DSM.  If their diagnosing physician did not rely on the DSM or any subsequent edition, then it could not have proximately caused the harm regardless of

---

Since the Plaintiffs have failed to plead the underlying fraud claim with particularity, their conspiracy claims based on common law fraud and violation of the NJCFA fail for insufficient pleading with particularity as well.

10

whether the Plaintiffs knew about the DSM's allegedly overbroad diagnostic criteria for ADD/ADHD.  It is the treating physician who diagnoses ADD/ADHD and prescribes Ritalin, yet the Plaintiffs do not identify a single treating physician in the Second Amended Complaint.  Since the Plaintiffs have not made such an allegation, they have not alleged causation with particularity under Rule 9(b).  Failure to include any reference to a diagnosing physician after two attempts to amend their pleadings, in combination with their assurance that they would no longer seek to amend their complaint, demonstrates that the Plaintiffs are unable to plead causation with the particularity required by Rule 9(b).

Since the Plaintiffs fail to plead the elements of omission and causation of common law fraud with particularity, this claim and the derivative claims for violation of the NJCFA, conspiracy to commit common law fraud, and conspiracy to violate the NJCFA are **DISMISSED** with respect to the Defendant APA.[6]

> iii.   **The Plaintiffs fail to re-plead the elements of misstatement or omission, reliance and causation with respect to CHADD**

Despite the allegations that the Plaintiffs Maria and Miguel Hernandez reviewed the literature published by CHADD, the Plaintiffs do not cite what statements were made in the literature.  Thus, the Plaintiffs fail to re-plead the misstatement element of common law fraud with particularity as required by Rule 9(b).  Moreover, Plaintiff Heather Butler admits that she did not read any CHADD literature; thus, the reliance element of common law fraud is also inadequately plead with respect to her claims.

The Plaintiffs repeat much of the same allegations as to CHADD as plead in their Original Complaint.  The only allegation which may be characterized as a possible omission is that CHADD's website fails to reveal that Novartis has made financial contributions to CHADD.  However, as with the APA, the Plaintiffs have cited no

---

[6] See footnote 6, supra.

11

CHADD statement in which they deny that they accept Novartis' contributions, or even any statement listing certain donors, while omitting Novartis [see _also_ Order Granting Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 9(b) and/or 12(b)(6), Civ. No. 00CV18390B Dkt. No. 69, Exh. A].  CHADD, like the APA, may openly acknowledge Novartis as a contributor [see id.].  Furthermore, the Plaintiffs again fail to allege how the lack of awareness with respect to contributions by Novartis to CHADD caused any injury, since the crucial causal allegation is that the children's physicians use of the DSM or any subsequent edition to diagnose ADD/ADHD and subsequently prescribe Ritalin [see section B(ii) of this Order, infra].  Therefore, since the Plaintiffs fail to re-plead with particularity their common law fraud claim with respect to the elements of misstatement or omission, reliance and causation, their common law fraud claim and their accompanying fraud-based claims for violation of the NJCFA, conspiracy to commit common law fraud, and conspiracy to violate the NJCFA are **DISMISSED** with respect to Defendant CHADD.[7]

IV.   **The Defendants' Motions to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. Nos. 53, 59 and 63]**

With respect to the Plaintiffs' claim pursuant to the UN Convention, the Court did not require the Plaintiffs to re-plead the allegations in connection therewith.  However, the Court finds that there is no private right of action under the UN Convention, such that the claim is subject to dismissal as to all Defendants under Rule 12(b)(6).

In addition, the Court finds that the Plaintiffs' failure to warn claims against Novartis and CHADD are also subject to Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted, as discussed infra.

A.   **Motion to Dismiss Standard**

When considering a motion to dismiss for failure to state a claim under Federal

---

[7]   See footnote 6, supra.

Rule of Civil Procedure 12(b)(6), a district court must accept all well-pleaded facts as true, and construe them in favor of the plaintiff. See Conley v. Gibson, 335 U.S. 41, 45-46 (1957); Petta v. Rivera, 143 F.3d 895, 897 (5th Cir. 1998); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992). The plaintiff is only required to plead sufficient information to outline the elements of his or her cause of action or to permit reasonable inferences to be drawn that these elements exist.[8]  See General Star Indemnity, Co. v. Vesta Fire Ins., Corp., 173 F.3d 946, 950 (5th Cir. 1999); Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir. 1994). See also  5 C. WRIGHT & C. MILLER, FEDERAL PRACTICE & PROCEDURE § 1216 (2d ed.1990).  In other words, the complaint must simply provide the opposing party with fair notice of the plaintiff's claim and the grounds upon which it is based. See Conley, 355 U.S. at 47.  The Supreme Court has stated, and the Fifth Circuit has repeatedly cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Walker v. South Bell Central, 904 F.2d 275, 276 (5th Cir. 1990), citing Conley, 355 U.S. at 45-46; see also Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000); Tuchman, 14 F.3d at 1067; Mahone v. Addicks Utility Dist. of Harris County, 836 F.2d 921, 926 (5th Cir. 1988).  Ambiguities or doubts regarding the sufficiency of the claim must be resolved in favor of the plaintiff in order "to do substantial justice." Fed R. Civ. Pr. 8(f). See Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

While the law disfavors motions to dismiss for failure to state a claim, there are of course situations in which a complaint should and must be dismissed. See Mahone,

---

[8] "A complaint need not outline all the elements of a claim.  It must be possible, however, for an inference to be drawn that these elements exist." Walker v. South Central Bell Telephone Co., 904 F.2d 275, 277 (5th Cir. 1990). However, the plaintiff cannot supplement the complaint with factual allegations contained outside the four corners of the pleadings in order to establish the elements of his or her claim. See McCartney v. First City Bank, 970 F.2d 45, 47 (1992).

13

836 F.2d at 926; <u>Clark v. Amoco Prod. Co.</u>, 794 F.2d 967, 970 (5th Cir. 1986).  The Court cannot allow a complaint to survive if it only alleges legal conclusions, or is devoid of any factual allegations.  <u>See</u> <u>Fernandez-Montes</u>, 987 F.2d at 284; <u>Walker</u>, 904 F.2d at 277.  In addition, if no reasonable inference can be made on an element, the plaintiff cannot proceed.  <u>See</u> <u>Blackburn v. City of Marshall, Tex.</u>, 42 F.3d 925, 931 (5th Cir. 1995).

> **B.      There is no private right of action under the UN Convention**

By making financial contributions to CHADD, the Plaintiffs claim that Novartis repeatedly violated the UN Convention.

"For a private individual to enforce a private right of action, the treaty must be self-executing, that is, it must prescribe rules by which private rights may be determined."  <u>See</u> <u>Abi Jaoudi and Azar Trading Corp. v. Cigna Worldwide Insurance Co.</u>, 1992 WL 392583, 2 (E.D. Pen. 1992).  However, "[t]he Convention is not self-executing, and the obligations of the United States thereunder may only be performed pursuant to appropriate legislation." 21 U.S.C. § 801a(2).  Since legislation implementing the Convention states that it is not self-executing, the Plaintiffs have no standing to bring a claim under the UN Convention.  Therefore, this claim is **DISMISSED** as to the Defendants pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

> **C.      No reasonable inference can be drawn that the Plaintiffs' children suffered any injuries or side effects of which Novartis allegedly failed to warn**

For cases involving a drug manufacturer's duty to warn, Texas courts apply the "learned intermediary" doctrine. <u>See</u> <u>Skotak v. Tenneco Resins, Inc.</u>, 953 F.2d 909, 912 (5th Cir. 1992), <u>citing</u> <u>Alm v. Aluminum Co. of America</u>, 717 S.W.2d 588, 591-92 (Tex.1986).  Under that doctrine, a physician stands as an intermediary between a product manufacturer and the patient. <u>See</u> <u>Porterfield v. Ethicon, Inc.</u>, 183 F.3d 464,

CVisPDF - www.taedsw.com

467 (5th Cir. 1999).  The manufacturer satisfies its duty by warning the physician of the
dangers of the drug.  See Skotak, 953 F.2d at 912.  The product manufacturer relies on
the physician to pass on its warnings.  See Porterfield, 183 F.3d at 468.  The physician,
relying on his medical training, experience, and knowledge of the individual patient,
then chooses the type and quantity of drug to be prescribed.  See Morgan v. Wal-Mart
Stores, Inc., 30 S.W.2d 455, 462 (Tex. App. -- Austin 2000).  "[O]nce the physician is
warned, the choice of which drugs to use and the duty to explain the risks become that
of the physician."  See Skotak, 953 F.2d at 912.

However, "when the warning to the intermediary is inadequate or misleading, the
manufacturer remains liable for injuries sustained by the ultimate user."  See Porterfield,
183 F.3d at 468.  In order to recover for failure to warn under the learned intermediary
doctrine, a plaintiff must show: (1) that the warnings provided by the manufacturer to
the prescribing physician failed to adequately disclose the potential side effects
complained of by the plaintiff, and (2) the failure to warn was a producing cause of the
particular injuries or side effects alleged by the plaintiff.  See In re Norplant
Contraceptive Products Liability Litigation, 955 F.Supp. 700, 710 (E.D. Tex. 1997),
citing Skotak, 953 F.2d at 912; see also Porterfield, 183 F.3d at 468.

The Plaintiffs have adequately pled the first prong of a failure to warn claim
because they allege that Novartis issued defective warnings.  The Plaintiffs plead that
Novartis negligently failed to warn of the side effects of Ritalin and its lack of efficacy,
and that such inadequate warning caused them and others to make needless
purchases of Ritalin.

However, the Plaintiffs make no allegation regarding the second prong because
they do not plead that the children suffered any injuries or side effects of which Novartis
allegedly failed to warn.  Although the Plaintiffs claim that there are "many significant
hazards" of Ritalin use and list some of the side effects of Ritalin treatment [Dkt. No. 65,
Second Amended Complaint, ¶ 61.5], no where do the Plaintiffs allege that their
children suffered from these side effects.  Indeed, the Second Amended Complaint is
completely devoid of any allegation that the Plaintiffs' children suffered any injury from

15

Ritalin treatment.  As such, no reasonable inference can be drawn as to the existence of facts to support the second prong of a failure to warn cause of action.

Since the Plaintiffs fail to allege any injury, the Court hereby **DISMISSES** the failure to warn cause of action against Novartis for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

### D.    Plaintiffs fail to state a claim against CHADD for failure to warn

#### i.    Plaintiffs have not alleged how CHADD is an agent of Novartis

Agency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control.  See Happy Indust. Corp. v. American Specialties, Inc., 983 S.W.2d 844, 852 (Tex. App. -- Corpus Christi 1998), citing Schultz v. Rural/Metro Corp., 956 S.W.2d 757, 760 (Tex.App.--Houston 1997, no writ) and Lone Star Partners v. NationsBank Corp., 893 S.W.2d 593, 599 (Tex.App.--Texarkana 1994, writ denied).  Agency will not be presumed.  Id., citing Schultz, 956 S.W.2d at 760.

To prove agency, evidence must establish that the principal has both the right (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task.  Id., citing Johnson v. Owens, 629 S.W.2d 873, 875 (Tex.App.--Fort Worth 1982, writ ref'd n.r.e.).

The Plaintiffs claim that "CHADD's activities nationwide have led to a significant increase in the amount of Ritalin taken by school children and have directly resulted in enormous profits to Ciba/Novartis."  However, the Plaintiffs fail to allege that Novartis had the right to assign its task, *e.g.,* warning of Ritalin's side effects, to CHADD.  Moreover, they do not allege that Novartis had control of the means and details of the process by which CHADD accomplished any task.  There is no claim of contract, no description of control, and no allegation of the manner in which CHADD was paid to act as Novartis' agent.

16



ii.   **Plaintiffs have not alleged how their children suffered physical injury or how CHADD undertook a duty for the children's benefit**

The Plaintiffs allege that CHADD assumed a learned intermediary's duty to warn of the side effects of Ritalin when it advertised and promoted Ritalin to increase sales for the financial benefit of Novartis.

Texas common law has recognized a cause of action against a party which did not manufacture the product and was not involved in its chain of distribution based on breach of an assumed duty to warn. See AMERICAN JURISPRUDENCE (2d) PRODUCTS LIABILITY, § 1135 (1997), citing Diaz v. Southwest Wheel, Inc., 736 S.W.2d 770, 773 (Tex. App. -- Corpus Christi 1987). An independent duty to use reasonable care has been recognized in the RESTATEMENT (2d) of TORTS, § 323 (1966), which provides:

> [O]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (1) his failure to exercise such care increases the risk of such harm, or (2) the harm is suffered because of the other's reliance upon the undertaking.

See Riley v. Champion International Corp., 973 F.Supp. 634, 644-45 (E.D. Tex. 1997); Beard v. McDonnell Douglas Corp., 939 F.2d 280, 283 (5th Cir. 1991)(citations omitted). Although the rule of the Restatement requires that the plaintiff suffer physical harm, it has also been applied to cases involving economic injury if the undertaking is pursued for the benefit of the injured person. See Peterson v. Mutual Sav. Inst., 646 S.W.2d 327, 329 (Tex. Ct. App. 1983), citing Colonial Savings Association v. Taylor, 544 S.W.2d 116, 119-20 (Tex.1976).

The Plaintiffs assert that CHADD assumed a learned intermediary's duty to warn of the side effects of Ritalin. However, the Plaintiffs have failed to allege that their children suffered any physical injury from CHADD's failure to warn of Ritalin's side effects. Although the Plaintiffs have alleged economic injury from making "needless

17

purchases of Ritalin" [Dkt. No. 65, Second Amended Complaint, ¶ 59], they fail to allege that CHADD undertook to advertise or promote Ritalin for the benefit of the Plaintiffs' children.  Instead, the Plaintiffs plead that CHADD was acting for the benefit of Novartis to increase Ritalin sales [Id. at ¶¶ 46, 47, 49, and 53].  Therefore, the Plaintiffs fail to allege that CHADD assumed the duty to warn to recover for either physical or economic injury.

Therefore, because the Plaintiffs fail to allege how CHADD undertook the duty to warn either by (1) acting as an agent of Novartis, or (2) assuming the duty, the Court **DISMISSES** the failure to warn cause of action against CHADD for failure to state a claim upon which relief may be granted under Rule 12(b)(6).

## V.    Conclusion

In conclusion, the Court made the following rulings in this Order for the reasons stated herein:

1)    **GRANTED** Novartis' Second Motion to Dismiss [Dkt. No. 53];

2)    **GRANTED** APA's Motion Pursuant to Rule 9(b) [Dkt. No. 56];

3)    **GRANTED** APA's Unopposed Motion for Leave to File Motion and Memorandum to Dismiss Amended Complaint Pursuant to Rule 9(b) (Corrected) [Dkt. No. 58];

4)    **GRANTED** APA's Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) [Dkt. No. 59];

5)    **GRANTED** CHADD's Unopposed Motion for Leave to File Motion to Dismiss Amended Complaint [Dkt. No. 62];

6)    **GRANTED** CHADD's Motion to Dismiss Plaintiffs' First Amended Complaint [Dkt. No. 63];

7)    **GRANTED** Plaintiffs' Unopposed Motion to Extend Time to Respond to Motion to Dismiss [Dkt. No. 61]; and

8)    **GRANTED** Defendants' Unopposed Motion for Leave to File Supplemental Authority [Dkt. No. 69]; and

18

9)    **GRANTED** Defendants' Second Unopposed Motion for Leave to File
Supplemental Authority [Dkt. No. 70].

The Court also hereby **DECLARES** as **MOOT** Novartis' Motion for Bifurcation of
Discovery [Dkt. No. 32].  A separate filing will be entered reflecting final judgment in this
case.

DONE at Brownsville, Texas, this 17 day of May 2001.

_____

Hilda G. Tagle
United States District Judge

19